# 25-2381-cv

## United States Court of Appeals

*for the*

## Second Circuit

SELENA STALEY, VIVIAN HOLMES, OLIVE IVEY,
on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants,*

– v. –

FOUR SEASONS HOTELS AND RESORTS, HOTEL 57, LLC, TY WARNER
HOTELS AND RESORTS LLC, H. TY WARNER, FSR INTERNATIONAL
HOTEL INC., d/b/a Four Seasons Hotels and Resorts, HOTEL 57
SERVICES, LLC,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**SUPPLEMENTAL APPENDIX**
**Volume 2 of 2 (Pages SA-248 to SA-504)**

JAMES J. BOLAND
SMITH, GAMBRELL & RUSSELL, LLP
155 North Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 360-6000

KATHRYN T. LUNDY
MARC B. ZIMMERMAN
SMITH, GAMBRELL & RUSSELL, LLP
1301 Avenue of the Americas,
    15th Floor
New York, New York 10019
(212) 907-9700

*Attorneys for Defendants-Appellees Hotel 57, LLC, Ty Warner Hotels
and Resorts LLC, H. Ty Warner and Hotel 57 Services, LLC*

CP COUNSEL PRESS    (800) 4-APPEAL • (389758)

i

# TABLE OF CONTENTS

**Page**

Answer and Defenses to First Amended Complaint,
by Defendants Hotel 57 Services, LLC, Hotel 57,
LLC, Ty Warner Hotels & Resorts LLC and
H. Ty Warner (the "Warner Defendants"), dated
May 3, 2024 .......................................................... SA-1

Declaration of Marc B. Zimmerman, for Warner
Defendants, in Support of Motion for an Order
to Take Judicial Notice of Certain Facts, dated
May 31, 2024 ......................................................... SA-54

Exhibit A to Zimmerman Declaration -
Cover Page of *The New York Times*, dated
December 19, 2020 ................................................ SA-57

Exhibit B to Zimmerman Declaration -
Cover Page of *The New York Times*, dated
January 19, 2020 ................................................... SA-59

Exhibit C to Zimmerman Declaration -
NPR.com Article titled, "Worried About Catching
The New Coronavirus? In the U.S., Flu Is Bigger
Threat," dated January 29, 2020 ............................ SA-61

Exhibit D to Zimmerman Declaration -
*Los Angeles Times* Article titled, "Should you
panic about the coronavirus from China? Here's
what the experts say," dated January 24, 2020 ...... SA-67

Exhibit E to Zimmerman Declaration -
World Health Organization Director-General's
Opening Remarks at the Media Briefing on
COVID-19, dated March 11, 2020 ........................ SA-79

**ii**

                                                               Page

Exhibit F to Zimmerman Declaration -
Notice on the Continuation of the National
Emergency Concerning the Coronavirus
Disease 2019 (COVID-19) Pandemic, dated
February 10, 2023 .................................................... SA-84

Exhibit G to Zimmerman Declaration -
Various New York State Executive Orders
Concerning COVID-19........................................... SA-86

Exhibit H to Zimmerman Declaration -
Four Seasons Hotel Press Release, dated
August 3, 2023....................................................... SA-135

Local Rule 56.1 Statement of Undisputed Facts,
by Warner Defendants, dated May 31, 2024.......... SA-137

Memorandum of Law, by Warner Defendants, in
Support of Motion for Summary Judgment,
dated May 31, 2024 ............................................... SA-159

Joint Opposition, by Defendants, to Plaintiffs'
Motion to Certify Class, dated May 31, 2024 ....... SA-191

Declaration of Elizabeth Ortiz, for Warner
Defendants, in Opposition to Plaintiffs' Motion to
Certify Class, dated May 30, 2024 ........................ SA-237

Declaration of Cathy Hwang, for Warner
Defendants, in Opposition to Plaintiffs' Motion to
Certify Class, dated May 30, 2024 ........................ SA-245

Memorandum of Law, by Plaintiffs, in Opposition
to Warner Defendants' Motion for Summary
Judgment, dated August 8, 2024............................ SA-248

Declaration of Elizabeth Ortiz, for Warner
Defendants, in Opposition to Plaintiffs' Motion to
Approve Class Notice, dated August 12, 2024 ...... SA-279

**iii**

**Page**

Exhibit A to Ortiz Declaration -
Letter from Elizabeth Ortiz, dated
July 19, 2024 .......................................................... SA-282

Supplemental Memorandum of Law, by Plaintiffs,
in Opposition to Warner Defendants' Motions for
Summary Judgment, dated September 16, 2024 ... SA-284

Exhibit A to Supplemental Memorandum -
Transcript of Oral Argument before the
Honorable Jed S. Rakoff, dated
September 6, 2024 ................................................... SA-300

Exhibit B to Supplemental Memorandum -
12 NYCRR 921 — New York State Worker
Adjustment and Retraining Notification (WARN)
Requirements .......................................................... SA-360

Joint Supplemental Memorandum of Law, by
Defendants, in Further Support of Motions for
Summary Judgment, dated September 16, 2024 ... SA-405

Declaration of Kathryn T. Lundy, for Warner
Defendants, in Support of Motions for Summary
Judgment, dated September 16, 2024 .................... SA-418

Exhibit A to Lundy Declaration -
Transcript of Oral Argument before the
Honorable Jed S. Rakoff, dated
September 6, 2024
(Reproduced herein at pp. SA-300-SA-359)

Exhibit B to Lundy Declaration -
Complaint, dated August 9, 2022 .......................... SA-420

**iv**

**Page**

Joint Memorandum of Law, by Defendants,
   in Response to Plaintiffs' Supplemental
   Memorandum of Law, dated
   September 18, 2024 ................................................  SA-457

Response, by Plaintiffs, to Defendants' Joint
   Memorandum of Law Concerning Their
   Obligation to Provide Multiple WARN Notices,
   dated September 16, 2024.....................................  SA-465

Proposed Joint Pretrial Consent Order, dated
   August 4, 2025.......................................................  SA-482

   Exhibit 1 to Proposed Pretrial Order -
   Plaintiffs' Trial Exhibit List ..................................  SA-490

   Exhibit 2 to Proposed Pretrial Order -
   Hotel 57 Services, LLC's Trial Exhibit List .........  SA-499

SA-248

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SELENA STALEY, VIVIAN HOLMES, and OLIVE IVEY, on behalf of themselves and all others similarly situated, | Case No. 22-CV-6781 (JSR) |
| Plaintiffs, | |
| -- against -- | |
| FOUR SEASONS HOTELS AND RESORTS, HOTEL 57 SERVICES, LLC, HOTEL 57, LLC, TY WARNER HOTELS & RESORTS LLC, and H. TY WARNER, | |
| Defendants, | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS
HOTEL 57 SERVICES, LLC, HOTEL 57, LLC,
TY WARNER HOTELS & RESORTS LLC, and H. TY WARNER'S,
MOTION FOR SUMMARY JUDGMENT**

RISMAN & RISMAN, P.C.
299 Broadway, 17th Floor
New York, New York 10007
(212) 233-6400

BRUSTEIN LAW PLLC
299 Broadway, 17th Floor
New York, New York 10007
(212) 233-3900

BROMBERG LAW OFFICE,
P.C.
352 Rutland Road, #1
Brooklyn, New York 11225
(212) 248-7906

SA-249

**Table of Contents**

*Introduction*..................................................................................................... *1*

*Argument*.......................................................................................................... *1*

   I.   Legal standard on motion for summary judgment................................................. 1

   II.   Summary judgment should be denied on Plaintiffs' WARN Acts claims......................... 2
      A.   Hotel 57 Services, LLC, Hotel 57, LLC, and Ty Warner Hotels & Resorts, LLC have not established that they are not liable as a "single employer" for violations of the Federal and New York WARN Acts ...................................................................... 2
         1.   Common ownership and common directors and/or officers support a finding of "single employer" ................................................................................... 4
         2.   *De Facto* control supports a finding of a "single employer" ...................... 4
         3.   Unity of personnel policies supports a finding of a "single employer".................... 6
         4.   Dependency of operations supports a finding of a "single employer" .................... 6
         5.   The publicly filed portions of the HMA support a finding of single employer for Hotel 57 LLC ................................................................................... 8
      B.   Proper notice under the WARN Acts was never given.................................... 9
         1.   Defendants have not established as a matter of law that the "unforeseen business exception" to the WARN Acts apply...................................................... 13
            a.   Defendants' failure to comply with the WARN Acts notice requirements precludes Defendants from claiming an exception to the WARN Acts applies ........... 13
            b.   Defendants' failure to provide a brief statement for the reduced notification period prevents them from claiming the unforeseen business exception applies ......... 13
            c.   The mass layoffs were foreseeable before they sent the August 5, 2020 communication to Plaintiffs ........................................................... 15

   III.   Triable issues of fact exist for Plaintiffs' breach-of-contract claim ............................ 17
      A.   Disputed issue of fact exists as to if Plaintiffs' employment was terminated on June 25, 2021 under EmPact ................................................................................... 17
      1.   The Warner Defendants' repeated representations that Plaintiffs still maintained their No Fault Separation Pay benefit as of June 25, 2021, and remain current employees of the Hotel with all their benefits intact precludes them from simultaneously arguing that Plaintiffs were permanently laid off because of a national emergency beyond their control and are not entitled to No Fault Separation Pay ...................................................... 18
      2.   The Warner Defendants have not established that Plaintiffs' no-fault terminations were beyond their control .................................................................................... 19
      3.   C.A.R.E. is not a condition precedent to No Fault Separation Pay ............................ 20
         4.   Even if compliance with C.A.R.E. was a condition precedent, Defendants' actions prevented Plaintiffs from using the C.A.R.E. steps .......................................... 21

*Conclusion* ....................................................................................................... *25*

SA-250

## Table of Authorities

**Page(s)**

**Cases**

*A.H.A. Gen. Constr., Inc. v. N.Y. City Housing Auth.*,
  92 N.Y.2d 20 (1998) ........................................................................................................23

*Alarcon v. Keller Indus., Inc.*,
  27 F.3d 386 (9th Cir. 1994) ........................................................................................13, 15

*Amnesty Am. v. Town of W. Hartford*,
  361 F.3d 113 (2d Cir.2004)................................................................................................2

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)......................................................2

*Barnett v. Jamesway Corp. (In re Jamesway Corp.)*,
  235 B.R. 329 (Bankr. S.D.N.Y. 1999)..............................................................................13

*Carlberg v. Guam Indus. Servs.*,
  No. 14 Civ. 00002, 2017 WL 4381667 (D. Guam Sept. 30, 2017) ..................................13

*Childress v. Darby Lumber Inc.*,
  126 F. Supp. 2d 1310 (D. Mont. 2001)..............................................................................15

*Conn v. Dewey & LeBoeuf LLP (In re Dewey & LeBoeuf LLP)*,
  507 B.R. 522 (Bankr. S.D.N.Y. 2014)..........................................................................13, 15

*Farah v. Emirates & Emirates Severance Plan*,
  No. 21-CV-05786-LTS, 2024 WL 1374762 (S.D.N.Y. Mar. 31, 2024)........................10, 11

*Gonzalez v. City of Schenectady*,
  728 F.3d 149 (2d Cir. 2013)................................................................................................1

*Greenfield v. Philles Records, Inc.*,
  98 N.Y.2d 562 (2002) ......................................................................................................21

*Grimmer v. Lord Day & Lord*,
  937 F. Supp. 255 (S.D.N.Y. 1996).....................................................................................13

*Guippone v. BH S&B Holdings LLC*,
  737 F3d 221 (2d Cir. 2013).........................................................................................*passim*

*Hampton v. Navigation Capital Partners, Inc.*,
  64 F.Supp.3d 622 (D. Del .2014).....................................................................................5, 6

*Huminski v. Corsones*,
    396 F.3d 53 (2d Cir.2005)..............................................................................................1

*Knipe v. Skinner*
    999 F.2d 708 (2d Cir. 1993)...........................................................................................1

*Kooleraire Serv. & Installation Corp. v. Bd. of Educ. of the City of N.Y.*,
    28 N.Y.2d 101, 320 N.Y.S.2d 46, 268 N.E.2d 782 (1971).........................................23

*In re Organogenesis Inc.*,
    316 B.R. 574 (Bankr. D. Mass. 2004), aff'd 331 B.R. 500 (D. Mass. 2005)...........13

*Pearson v. Component Tech. Corp.*,
    247 F.3d 471 (3d Cir.), *cert. denied*, 534 U.S. 950, 122 S.Ct. 345, 151 L.Ed.2d
    261 (2001) ...........................................................................................................3, 4, 6, 7

*Presser v. Key Food Stores Co-Op.*,
    01-CV-8059, 2006 WL 2086346 (E.D.N.Y. July 25, 2006)......................................11

*Sides v. Macon Cnty. Greyhound Park, Inc.*,
    725 F.3d 1276 (11th Cir. 2013) ...................................................................................15

*Spanos v. Skouras Theatres Corp.*,
    364 F.2d 161 (2d Cir.1966) (en banc) (Friendly, J.)...................................................23

*Staley v FSR International Hotel Inc.*,
    2024 WL 1704931 (S.D.N.Y. April 19, 2024) .............................................................1

*Staley v. Hotel 57 Services, LLC*,
    2024 WL 1090816 (2d Cir. Mar. 13, 2024)................................................................23

*In re Transcare Corp.*,
    614 B.R. 187 (Bankr. S.D.N.Y. 2020).......................................................................2, 3

*Varela v. AE Liquidation, Inc. (In re AE Liquidation, Inc.)*,
    866 F.3d 515 (3d Cir. 2017).........................................................................................13

*Young v. Fortis Plastics, LLC*,
    2013 WL 5406276 (N.D.Ind. Sept. 24, 2013) ..............................................................6

**Statutes**

Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, *et seq.* ................. *passim*

N.Y. Labor Law § 860, *et seq.* ............................................................................................. *passim*

**Other Authorities**

*Corbin on Contracts* § 947 ....................................................................................................23

SA-252

Fed. R. Civ. P. 56(a) ...................................................................................................1

Lord, Richard A., *Williston on Contracts* § 63:26 (4th ed. 2006) ...............................................23

SA-253

### Introduction[1]

Incredibly, the Warner Defendants have moved for summary judgment claiming that more than 52 months after being furloughed, the Plaintiffs' layoffs are still "temporary" and as such, Plaintiffs are not entitled to their No Fault Separation Pay and no damages are owed to them under the WARN Acts. Not only is this defense illogical, but it is proven false by then Hotel General Manager, Rudy Tauscher's March 19, 2020 email which warned: "Because of legal issues, please use the term 'temporary' closing at all times and in any communication going forward. This can/should never...be misconstrued as a  permanent' closure."[2]  Accordingly, the Warner Defendants' motion for summary judgment should be denied.

Further, as the Warner Defendants have not moved for summary judgment with respect to alter-ego liability for Defendant H. Ty Warner ("Warner"), "[P]laintiffs are free to argue… at trial, that the corporate veil should be pierced…" [3]  Defendants cannot raise this issue on reply.[4]

### Argument

#### I.    Legal standard on motion for summary judgment

A court may grant summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] The moving party bears the burden of showing that they are entitled to summary judgment.[6] The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of

---

[1] Plaintiffs direct the Court to their Counter 56.1 Statement in Response to Warner Defendants' 56.1 Statement ("Pl. 56.1") for a Recitation of the Relevant Facts.
[2] *Id.*, at ¶136.
[3] *Staley v FSR International Hotel Inc.*, 2024 WL 1704931, at *1 (S.D.N.Y. April 19, 2024).
[4] *Knipe v. Skinner* 999 F.2d 708, 711 (2d Cir. 1993).
[5] Fed. R. Civ. P. 56(a); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013).
[6] *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir.2005).

that party, and to eschew credibility assessments."[7]

## II.   Summary judgment should be denied on Plaintiffs' WARN Acts claims

### A.  Hotel 57 Services, LLC, Hotel 57, LLC, and Ty Warner Hotels & Resorts, LLC have not established that they are not liable as a "single employer" for violations of the Federal and New York WARN Acts

An entity that is not the employer of record of the affected employees in a layoff may be liable under WARN Acts as a "single employer" with the company conducting the layoff, typically when such entity acts as an employer or assumes control of the employer.[8] The U.S. Department of Labor ("DOL") has set out five factors to be considered when evaluating the "single employer" doctrine under WARN: (i) common ownership; (ii) common directors and/or officers; (iii) de facto exercise of control; (iv) unity of personnel policies emanating from a common source; and (v) dependency of operations.[9]  Similarly, the New York WARN Act §921-1.1(e)(2) uses the same five factors as the DOL to determine a "single employer."[10]

In *Guippone v. BH S&B Holdings*,[11] the Second Circuit adopted the DOL's five-factor test, noting that "application of these factors requires a fact-specific inquiry, no one factor set out by the DOL is controlling, and all factors need not be present for liability to attach."[12] The single employer liability test is "an inquiry into whether the two nominally separate entities operated at

---

[7] *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir.2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir.1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

[8] *Guippone v. BH S&B Holdings LLC*, 737 F3d 221 (2d Cir. 2013).

[9] 20 CFR §639.3(a)(2).

[10] *In re Transcare Corp.*, 614 B.R. 187, 211 (Bankr. S.D.N.Y. 2020).

[11] *Guippone*, 737 F3d 221.

[12] *Guippone*, 737 F.3d at 226.

arm's length."[13] Although not necessary for liability, disputed issues of fact exist for each aspect

five-factor test with respect to Hotel 57 Services LLC ("Hotel 57 Services"), Hotel 57, LLC

("Hotel 57"), and Ty Warner Hotels & Resorts, LLC ("TWHR") (collectively, the "Warner

Entity Defendants").

Instead of addressing these five factors, the Warner Defendants generally dismiss the test

and instead cite to four disputed issues of fact in support of their motion, without substantively

addressing each of the factors. It is a disputed issue of fact as to whether Hotel 57 and/or TWHR

are Plaintiffs' employer. For example, each of the Warner Entity Defendants were involved in

decisions about shutting down the Hotel and furloughing the Plaintiffs and Elizabeth Ortiz

("Ortiz"), the Director of Human Resources for the Four Seasons Hotel New York (the "Hotel"),

even admitted that all of the Warner Entity Defendants were "joint employers."[14]

It is also a disputed issue of fact that Hotel 57 and/or TWHR do not have a contractual

responsibility to Plaintiffs' employment with Hotel 57 Services. For example, in EmPact itself,

Hotel 57, the Owner of the Hotel, is referred to as being bound along with the employee to

confidentiality of employee privacy. On page 27 of EmPact, it specifically reads: "The Four

Seasons Hotel New York believes that each of us is entitled to keeping certain information

private as between the Four Seasons Hotel New York, the owner(s) of the hotel, and me."[15]

Additionally, as discussed below, the Hotel Management Agreement ("HMA"), sets forth

contractual obligations with respect to the Hotel and its operations, and Hotel 57 is a party to that

---

[13] *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 495 (3d Cir.), *cert. denied*, 534 U.S. 950, 122 S.Ct. 345, 151 L.Ed.2d 261 (2001); *In re Transcare Corp.*, 614 B.R. 187, 204 (Bankr. S.D.N.Y. 2020).
[14] Pl. 56.1, at ¶¶ 143, 204, 209, 223, 224
[15] *Id., at* ¶¶ 332-333

contract.[16]  TWHR sent notice to their co-defendant FSR International Hotels, Inc. ("FSR")

terminating the HMA with Hotel 57.[17]  Warner also admitted that the main barrier to reopening

the Hotel is the HMA dispute.[18]  Therefore, there is a clear issue of fact related to TWHR and

Hotel 57 concerning their interests in the Hotel and its business, operations, and labor relations.

The Warner Defendants' silence on the five-factor test is fatal to their motion.

### 1.    Common ownership and common directors and/or officers support a finding of "single employer"

There is no disputed issue of fact that the Warner Entity Defendants were ultimately all

owned by H. Ty Warner.[19]  The Warner Entity Defendants each have Warner as president,

Cathy Hwang ("Hwang") as vice president, treasurer and secretary and Joseph Hicks ("Hicks")

as assistant secretary as the officers in the same roles.[20]  Hwang was appointed an officer in

more than 30 Warner entities simultaneously, including each of the Warner Entity Defendants.[21]

As such, under *Guippone*, both common ownership and common officers and directors support

a finding of single employer for the Warner Entity Defendants.

### 2.    *De Facto* control supports a finding of a "single employer"

The *de facto* control factor can be established "if the [entity] was the decision-maker

responsible for the employment practice giving rise to the litigation."[22] As explained by the

Second Circuit in *Guippone*: "Thus, the 'de facto exercise of control' prong allows the factfinder

to consider whether the [entity] has specifically directed the allegedly illegal employment

---

[16] *Id.,* at ¶ 334
[17] *Id.,* at ¶ 187
[18] *Id.,* at ¶ 245
[19] *Id.,* at ¶ 138
[20] *Id..,* at ¶ 157
[21] *Id.,* at ¶150
[22] *Pearson*, 247 F.3d at 503–04.

4

practice that forms the basis for the litigation."[23] Similarly, in *Hampton v. Navigation Capital Partners*,[24] the District of Delaware refused to dismiss a putative class action that former employees of a company brought against a private equity firm for mass layoffs finding *de facto* control, where the private equity firm had installed "the same executives in the same important positions in the other companies… including positions involving closely overseeing the operations, finances, and strategy," much like the Warner Entity Defendants have done here.[25] "In reaching this conclusion, the Court disagrees with Defendant's contention that facts which satisfy the first two prongs cannot also be relied on to show that the third prong, de facto control, is satisfied as well."[26]

Here, everything from shutting down the Hotel to furloughing the employees, to decisions about paying employee benefits, to keeping the Hotel closed were decided collaboratively with the Warner Entity Defendants.[27] Ortiz and Rudy Tauscher ("Tauscher") reported to people outside Hotel 57 Services for decisions about the operation of the Hotel and the Hotel employees. For example, Tauscher regularly emailed Hwang at her TWHR email address for the approval of Warner on employee matters confirming approval or denial of various decisions about the operations of the Hotel.[28] Similarly, Antoine Chahwan ("Chahwan"), who oversaw the Hotel from FSR, testified that TWHR has the final decision

---

[23] *Guippone* citing *Pearson*, 247 F.3d at 491.
[24] *Hampton v. Navigation Capital Partners, Inc.*, 64 F.Supp.3d 622 (D. Del .2014).
[25] Pl. 56.1*, at* ¶629.
[26] *Id.,* at ¶628.
[27] *Id.*, at ¶¶177, 204, 208, 209, 223, 224, 233
[28] *Id.,* at ¶205

about paying employees of the Hotel.[29]  Warner's approval was also needed for decisions at the

Hotel on all scales, even for matters costing as little as 50 cents.[30]

### 3. Unity of personnel policies supports a finding of a "single employer"

The fourth factor cited in *Guippone* is "analogous to a determination of whether the

companies had a centralized control of labor operations."[31] As evidenced by the communications

between Hwang and Ortiz and Tauscher, personnel decisions were not made solely by Hotel 57

Services.[32]  "In the context of the WARN Act, the decision to effect a mass layoff is the single

most important personnel policy."[33] Here, the Warner Entity Defendants "collaboratively" made

the decisions with respect to laying off the employees, keeping the Hotel closed, and even

monitoring which former employees might return.[34]  Warner was also directly involved in

personnel decisions related to the funding of employee benefits and reducing headcount at the

Hotel.[35]  The Warner Defendants fail to establish that there is no disputed issue of fact as to

whether the Warner Entity Defendants shared a unity of personnel policies, and as such, this

factor supports a finding of "single employer" liability for the Warner Entity Defendants.

### 4. Dependency of operations supports a finding of a "single employer"

To establish the final factor in the *Guippone* test, Plaintiffs must prove that Defendants

had the right to direct and control the manner in which Hotel 57 Services undertook its duties.[36]

---

[29] *Id.,* at ¶206

[30] *Id.,* at ¶¶ 167-171

[31] *Young v. Fortis Plastics, LLC,* 2013 WL 5406276, at *6 (N.D.Ind. Sept. 24, 2013); *Hampton,* 64 F. Supp. 3d at 627.

[32] Pl. 56.1, at ¶¶177, 204, 208, 209, 223, 224, 233

[33] *Vogt,* 318 F. Supp.2d at 143; accord *Garner,* 260 F.Supp.3d at 377.

[34] Pl. 56.1, at ¶261.

[35] *Id.,* at ¶218.

[36] *See Pearson*, 247 F.3d at 501.

"In other words, for such an all-encompassing factor such as 'dependency of operations'—a factor, which, by its nature, looks to the daily functioning of the two companies—the plaintiffs must establish the existence of ... a 'master-servant' agency relationship."[37] In assessing whether such a relationship exists, courts look to whether the two companies shared administrative or purchasing services, interchanged employees or equipment, or commingled finances.[38]

Here, Hotel 57 and Hotel 57 Services both share the same business address as TWHR, TWHR funded the operations of the Hotel and the payment of the employees, and the profits from the bank accounts for the different entities were not clearly separate.[39][40]  Hotel 57 Services admitted that: (1) Hotel 57 Services generates no revenue and makes no profit; (2) when benefits are provided to furloughed employees and the employer gets a tax credit refund, that refund goes as a tax credit to Hotel 57; (3) Hotel 57 is the corporate entity that generates revenue from the Hotel; (4) Hotel 57 Services has no budget; (5) TWHR funds Hotel 57 Services;  (6)  Hwang did not know who Ortiz and Tauscher were employed by because of the "complicated legal entity structure"; and, (7) TWHR would fund any judgment in this lawsuit against Hotel 57 Services.[41]

In addition to sharing the same owner, officers, and directors, TWHR made decisions about the operations and management of the Hotel and negotiated and entered into contracts on behalf of the Hotel.[42]  While Hotel 57 LLC did not have its employees do work for the Hotel, that is simply because Hotel 57 LLC had NO employees.[43]  TWHR also provided funding to pay

---

[37] *Id*.
[38] *See Vogt*, 318 F. Supp. 2d at 143 (citing *Pearson*, 247 F.3d at 500).
[39] Pl. 56.1, at ¶¶ 148, 152, 163, 165, 182, 183, 193.
[40] Mr. Warner was pled guilty to tax evasion on October 2, 2013 for having people open a bank account for him under a different name in Switzerland, where Mr. Warner hid over $100 million to avoid his financial obligations.  Pl. 56.1*., at ¶¶*335, 336.
[41] *Id.*, at ¶¶189-195
[42] *Id.*, at ¶¶ 196, 198
[43] *Id.*, at ¶197

the employees of Hotel 57 Services - which is further proof of the interconnectedness and dependance of operations of the Warner Entity Defendants.[44]  As the Warner Defendant Entities shared resources and commingled funds for a common purpose, this factor also weighs in favor of a finding of "single employer" and denying summary judgment on this issue.

### 5. The publicly filed portions of the HMA support a finding of single employer for Hotel 57 LLC

To fully comprehend the dependance of operations of the Warner Entity Defendants, it is important to understand the controlling Hotel Management Agreement ("HMA"). Hotel 57 is the "owner" of the Hotel. Hotel 57 entered into a HMA with FSR and Four Seasons Hotels Limited to manage the Hotel.[45]  While the Warner Defendants attempt to argue that only Hotel 57 Services has liability, that is directly contradicted by the HMA.

Notably, the indemnification section of the publicly filed HMA includes the following: "Owner hereby indemnifies and holds Operator and its Affiliates and any of their respective… agents and representatives (collectively, the 'Indemnified Parties') harmless from and against any and all liabilities, fines, suits, claims, obligations, damages, penalties, demands, actions, costs and expenses of any kind or nature (including without limitation, legal fees …".[46]

In the publicly filed portion of the HMA, Hotel 57 agreed to indemnify FSR and any of its agents.  As such, at a minimum, FSR is covered by this indemnification-provision and it is a disputed issue of fact as to whether Hotel 57 Services and TWHR are also covered by the HMA indemnification provision since they are "agents" that would be covered under the agreement. This means that Hotel 57 could be responsible for all of the legal liabilities for FSR and the Warner Defendants, including Hotel 57 Services, which does not receive profits from the Hotel.

---

[44] *Id.*, at ¶197
[45] *Id.*, at ¶¶144, 145.
[46] *Id.*, at ¶146.

8

As such, to the extent "single employer" liability is established for TWHR and/or Hotel 57 Services, it remains a disputed issue of fact as to whether Hotel 57 should also be considered a "single employer." The HMA agreement further supports a finding of single employer under prongs three, four, and five of the *Guippone* test.

### B.  Proper notice under the WARN Acts was never given

The notice requirement, both in terms of timing and content, "provides protection to workers, their families and communities" and "some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market."[47]

The "Notice" must contain: (1) the name and address of the employment site where the plant closing or mass layoff will occur, and the name and telephone number of a company official to contact for further information; (2) a statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect; (3) the expected date of the first separation and the anticipated schedule for making separations; and (4) The job titles of positions to be affected and the names of the workers currently holding affected jobs.[48]

Under the NY WARN Act, employers must provide 90-day written advance notice of mass layoffs, relocation, or employment loss.[49]  Aside from the 90-day notice requirement, the NY WARN Act largely mirror the US WARN Act and regulations.[50]  "At a minimum, under NY

---

[47] 20 C.F.R. § 639.1(a).

[48] *See* CFR 639.7; NY Labor Law § 860-B (2).

[49] NYLL § 860-b(1).

[50] See NYLL § 860-b(2) ("An employer required to give notice of any mass layoff, relocation, or employment loss under this article shall include in its notice the elements required by the federal Worker Adjustment and Retraining Notification Act (29 U.S.C. 2101 et seq.).").

WARN, "notice must be specific" and must meet certain enumerated requirements.[51] The August 5, 2020 letter clearly failed to meet NY WARN's strict notice requirements.[52]

Here, Defendants' purported "WARN Notices" do not satisfy the first requirement as no address is listed for the employment site; and after Tauscher (the Hotel general manager) resigned from the Hotel in January 2021, no supplemental "WARN Notice" was ever provided advising the furloughed workers of the name and telephone number of a company official to contact for further information.[53]  Defendants also failed to comply with the third requirement of the WARN Acts by not listing an anticipated schedule for making separations.[54]  They also failed to include the fourth requirement identifying the job titles and positions to be affected and the names of the workers currently holding the affected jobs.[55]  Defendants purported "WARN Notices" were also defective because they failed to comply with either the 60-day or 90-day advance notice requirement and instead provided "notice" more than 100 days after the furloughs had begun.[56]

Not only were the initial "WARN Notices" defective, but the Warner Entity Defendants were required to give proper "WARN Notices" any time their employees "may reasonably be expected to experience an employment loss."[57]  Similarly, employers are required to give additional notices each time layoff less than six months is "extended beyond six (6) months due to business circumstances (e.g., changes in price or cost) not reasonably foreseeable at the time

---

[51] N.Y.C.R.R. tit. 12 § 921-2.1, 2.3.
[52] *See Farah v. Emirates & Emirates Severance Plan*, No. 21-CV-05786-LTS, 2024 WL 1374762, at *8 (S.D.N.Y. Mar. 31, 2024).
[53] Pl. 56.1, at ¶¶337, 338
[54] *Id.*, at ¶ 339
[55] *Id.*, at ¶ 340
[56] *Id.*, at ¶ 341
[57] CFR 639.6 (B)

10

of the initial layoff … as it becomes reasonably foreseeable that an extension is required."[58]

Defendants' reliance on *Presser v. Key Food Stores Co-Op.,*[59] is totally misplaced, as that case does not rule out a requirement for multiple WARN Notices. *Presser* actually provides support that multiple WARN notices should be provided pursuant to the WARN Acts. Contrary to the Warner Defendants' argument, "[i]f an employer must extend temporary furloughs into permanent layoffs due to 'business circumstances . . . not reasonably foreseeable at the time of the initial layoff,' the employer is required to give notice 'as soon as it becomes foreseeable that an extension is required.' Id. § 921-31."[60]

Why would a company hold itself out as an employer, after an undeniable employment loss under the WARN Acts? Tauscher explained it best back on March 19, 2020. "Because of legal issues, please use the term 'temporary' closing at all times and in any communication going forward. This can/should never...be misconstrued as a permanent' closure." Admitting the layoffs were permanent would have not just entitled the Plaintiffs to WARN Act pay, but also No Fault Separation Pay under EmPact. Thus, the Warner Defendants refused to call the layoffs permanent, even as they exceeded not just six months, but twelve months and longer. So here we are, more than 52 months later, and the Warner Defendants still call the Plaintiffs "current employees." Nothing in the WARN Acts precludes a company from remaining as the employer after an employment loss. Similarly, nothing in the WARN Acts precludes a finding that an employee has suffered multiple employment losses at the hands of that same company.

Under the WARN Acts, layoffs exceeding six months are treated as an employment loss

---

[58] NYLL §921-3.1.

[59] *Presser v. Key Food Stores Co-Op.,* 01-CV-8059, 2006 WL 2086346 (E.D.N.Y. July 25, 2006).

[60] *Farah*, 2024 WL 1374762, at *8.

SA-264

and require proper notice. The Warner Defendants' claim that the Plaintiffs remain current employees, not just beyond the initial six-month layoff but even as of today, more than 52-months later, does not lessen their obligations under the WARN Acts.[61]  Rather, after each employment loss, the Warner Defendants' continued communication to the Plaintiffs that they were current employees, necessitated more paid notices under the WARN Acts.[62]  Their failure to comply with giving proper notice of the additional layoffs exceeding six months, subjects the Warner Defendants to additional damages.  The fact that Plaintiffs suffered multiple layoffs exceeding six months makes it reasonable for a jury to conclude that they are entitled to damages for multiple WARN Acts violations[63]

---

[61] See Warner Def. Mot., at p. 10.

[62] For example, on October 5, 2020, Tauscher sent a letter on Four Seasons Hotel New York letterhead to the Plaintiffs which began "Dear Four Seasons Family;" Pl. 56.1, at ¶277. Then on December 3, 2020, also on Four Seasons Hotel New York letterhead, Tauscher again wrote the Plaintiffs: "Dear Four Seasons New York Family…. Throughout this pandemic, we have worked hard to ensure we are communicating with you as transparently as possible.  We know this time of uncertainty is stressful and we appreciate your continued patience and support…. The Hotel will remain temporarily closed with an anticipated re-opening date of late April 2021… we will remain available to support you and will continue to be in touch with updates… please do not hesitate to contact People & Culture or me directly…". *Id.*, at ¶278.  On March 25, 2021, Ortiz sent the Plaintiffs a letter on Four Seasons Hotel New York letterhead which read: "Dear Four Seasons New York Family… We look forward to connecting with next week at our Virtual Town Hall…. Although we still have not confirmed a reopening date, we do want to connect and share relevant updates with you…. We empathize with you on the hardship and impact this situation has had on all of our team members….we want to continue to be here for you." *Id.*, at ¶280; Then on June 25, 2021, Ortiz wrote the Plaintiffs on Four Seasons Hotel New York letterhead: "Good afternoon Four Seasons New York Family…We know everyone is keen to reopen the Hotel and begin welcoming back guests.  At this time we will remain closed, as the Hotel will be undergoing substantial infrastructure and maintenance work that is expected to last well into 2022.  We will reassess our reopening plans in the early Spring of 2022 based upon the progress of this work.  Upon reopening, we are committed to recalling employees, as business levels rebound…". *Id.*, at ¶281. On June 11, 2024, Elizabeth Ortiz sent an email to Plaintiff Holmes to advise that "Ownership and Four Seasons have completed agreements with plans to reopen Four Seasons Hotel New York in September of 2024." *Id.*, at ¶322

[63] While Plaintiffs have claimed that they were terminated under EmPact on June 25, 2021, if a jury believed that Plaintiffs employment was not terminated under EmPact, Plaintiffs submit that

12

    **1.** **Defendants have not established as a matter of law that the "unforeseen business exception" to the WARN Acts apply**

        **a.** **Defendants' failure to comply with the WARN Acts notice requirements precludes Defendants from claiming an exception to the WARN Acts applies**

An employer relying on a WARN Acts exception bears the burden of persuasion.[64] To rely on the unforeseen business exception, the employer must still "give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period."[65] The statement must "give some indication of the factual circumstances that made an exception to the statutory notice requirement applicable, providing an adequate, specific explanation to affected workers."[66][67] The shortened notice must also be in writing.[68] An employer cannot rely on the defenses afforded by the exceptions if it failed to provide the brief statement for the shortened notice or the other information required by 20 C.F.R. § 639.7(d).

        **b.** **Defendants' failure to provide a brief statement for the reduced notification period prevents them from claiming the unforeseen business exception applies**

---

the Warner Defendants would be liable for at least eight sets of WARN Act damages as of today, and potentially more by the time of trial, since their purported layoffs would have already exceeded 52 months.

[64] 20 C.F.R. § 639.9.

[65] 29 U.S.C. § 2102(b)(3).

[66] *Alarcon v. Keller Indus., Inc.*, 27 F.3d 386, 390 (9th Cir. 1994); accord *Grimmer v. Lord Day & Lord*, 937 F. Supp. 255, 257 (S.D.N.Y. 1996).

[67] See 20 C.F.R. § 639.9; *Varela v. AE Liquidation, Inc. (In re AE Liquidation, Inc.)*, 866 F.3d 515, 524 (3d Cir. 2017); *Alarcon*, 27 F.3d at 389; *Carlberg v. Guam Indus. Servs.*, No. 14 Civ. 00002, 2017 WL 4381667, at *3 (D. Guam Sept. 30, 2017).

[68] *Conn v. Dewey & LeBoeuf LLP (In re Dewey & LeBoeuf LLP)*, 507 B.R. 522, 531-34 (Bankr. S.D.N.Y. 2014); *In re Organogenesis Inc.*, 316 B.R. 574, 584 (Bankr. D. Mass. 2004) (employer that "admitted its failure to give any written notice whatsoever under the WARN Act to the Claimants" "cannot rely on the asserted defenses that require an employer to have given reduced notice as soon as practicable") (emphasis in original), aff'd 331 B.R. 500 (D. Mass. 2005); *Barnett v. Jamesway Corp. (In re Jamesway Corp.)*, 235 B.R. 329, 342 (Bankr. S.D.N.Y. 1999) ("[T]he statute and regulations clearly provide that an employer cannot invoke either exception without giving some written WARN notice.").

13

SA-266

The "unforeseeable business circumstances exception" (the "Exception") provides:

> An employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required.[69]

Because Defendants' August 5, 2020 communication ("Purported WARN Notice"), which the Warner Defendants purport to be their "WARN Notice," did not comply with the requirements for notice under the WARN Acts, as described above, the Warner Defendants cannot claim the Exception.  Even if the Warner Defendants had complied with all of the other requirements of the WARN Acts, the Purported WARN Notice still failed to provide a sufficient basis for shortening the 60-day and/or 90-day notice period, as required for companies to qualify for the Exception.[70] The Purported WARN Notices did not provide "a brief statement of the basis for reducing the notification period" and no "indication of the factual circumstances that would make the unforeseeable business circumstances exception apply."[71]

The Warner Defendants claim they are entitled to summary judgment on this issue and claim an Exception because, in August 2020, they were "surprised" by the COVID-19 pandemic.[72] But the regulations make clear that "[a]n important indicator of a business circumstance that is not reasonably foreseeable is that the circumstance is caused by some ***sudden, dramatic, and unexpected action or condition outside the employer's control***."[73]

Here, not only did the Warner Defendants not provide: (1) advanced notice; (2) a basis for not providing advance; and (3) not satisfy all of the requirements for a WARN notice, but

---

[69] 29 U.S.C. § 2102(b)(2)(A).
[70] Pl. 56.1, at ¶342
[71] *Id.*, at ¶343
[72] *See* Warner Defendants' Motion, at pp. 18 – 19.
[73] 20 C.F.R. § 639.9(b)(1) (emphasis added).

14

incredibly, they also waited more than 100 days after the Hotel closed in March 2020 before sending the Purported WARN Notices.[74]  "Congress' purpose in requiring a brief statement must have been to provide employees with information that would assist them in determining whether the notice period was properly shortened."[75] The statement "must give some indication of the factual circumstances that made an exception to the statutory notice requirement applicable, providing an adequate specific explanation to affected workers."[76] The requirement also exists "to prohibit employers who have failed to provide the requisite 60-day notice from asserting litigation-convenient but factually post hoc justifications for their actions."[77]  An employer's failure to set forth the statutorily-required "brief statement of [that] basis for reducing the notification period,"[78] disqualifies it from protection under the "unforeseen business circumstance" exception,[79] and as such summary judgment must be denied.

### c.  The mass layoffs were foreseeable before they sent the August 5, 2020 communication to Plaintiffs

While the Warner Defendants claim that it was unforeseeable before August 5, 2020 that notice was required, Courts have held that although an exception may apply, at least some notice must be provided.[80] "An employer relying on this subsection shall give as much notice as is

---

[74] 29 U.S.C. § 2102(b)(3); Pl. 56.1, at ¶340.

[75] Alarcon v. Keller Industries, Inc., 27 F.3d 386, 389 (9th Cir. 1994).

[76] Id. at 390; see, e.g., Childress v. Darby Lumber Inc., 126 F. Supp. 2d 1310, 1318 (D. Mont. 2001) (holding that notice was inadequate since it only stated that the company had "sustained tremendous losses" and was forced to make "some serious decisions").

[77] Sides, 725 F.3d at 1285-86.

[78] 29 U.S.C. § 2102(b)(3).

[79] See In re Dewey & LeBoeuf LLP, 507 B.R. 522, 533 (Bankr. S.D.N.Y. 2014) ("even under dire circumstances, employers must deliver written WARN notices containing the necessary brief statements to qualify for the WARN Exceptions").

[80] See, e.g., Sides v. Macon Cnty. Greyhound Park, Inc., 725 F.3d 1276, 1284 (11th Cir. 2013) ("it is manifest that a WARN Act employer attempting to circumvent the 60–day notice requirement must still give some notice in accord with 29 U.S.C. § 2102(b)(3). The

practicable and at that time shall give a brief statement of the basis for reducing the notification period."[81] The Warner Defendants failed to timely provide this required notice. While they claim it was unforeseeable before August 5, 2020, this is refuted by a March 24, 2020 letter drafted by the Warner Defendants, which was never sent, but read in relevant part:

> This is to inform you that due to unforeseen business circumstances and major economic downturn stemming from the COVID-19 virus pandemic and consequent travel and tourism disruptions outside the employer's control (and the mandated closures of bars and restaurants) causing the expedited time frame for this notice, the (Company), will temporarily layoff on 03/21/2020… approximately 398 employees, including yourself. The layoff of employees at the above employment site is expected to be temporary, and the date of your layoff will occur on or about March 21, 2020… This notice is supplied to you pursuant to the WARN Act as well and has been supplied to the appropriate governmental agencies.[82]

While that March 2020 Draft letter was never sent out, two days later, the Warner Defendants sent the Union a detailed letter indicating that they were shortening the notice-period because the COVID-19 pandemic "was not reasonably foreseeable at the time that notice would have been required."[83]  Instead of sending the Plaintiffs a WARN notice in March 2020, the Warner Defendants waited until August 5, 2020 to send letters, which as discussed above did not satisfy the WARN Acts requirements.[84]

Moreover, the Warner Defendants offered no explanation for their delay in providing the Purported WARN Notices months after the March 2020 furloughs.[85]  Even though the Warner

---

unforeseeable business circumstances defense does not jettison this absolute requirement under the WARN Act; even where the defense is properly invoked, some notice must be given.").

[81] 29 U.S.C. § 2102(b)(3).

[82] Pl. 56.1, at ¶219

[83] *Id.*, at ¶220

[84] WarnerDEF_001100.

[85] *See generally* Warner Defendants' Motion

16

Defendants provided an explanation for the shortened the notice period in March 2020, they did not provide any excuse in the Purported WARN Notices.[86]

As less information, not more was included in the Purported WARN Notices as compared to the March 24, 2020 draft "notice," the Warner Defendants cannot argue that the information provided in the August 5, 2020 letters was not known to them back on March 24, 2020. Not only is the Exception unavailable because the Warner Defendants did not provide proper notice, but the facts themselves also do not support the Exception. At a minimum, issues of material fact exist with respect to Plaintiffs' WARN Acts Claims, and summary judgment should be denied.

### III.    Triable issues of fact exist for Plaintiffs' breach-of-contract claim

#### A.    Disputed issue of fact exists as to if Plaintiffs' employment was terminated on June 25, 2021 under EmPact

"The term of EmPact is one year and is automatically renewed unless the following occurs:… I am permanently laid off…."[87]  At the June 25, 2021 Teams Meeting, Ortiz advised the Plaintiffs that the Hotel would remain closed for more than one year due to renovations.[88] One of the obligations in EmPact was that Four Seasons Hotel New York would pay compensation and benefits to the employees during the one-year term of their contracts.[89]  Prior to June 25, 2021, the Hotel had never told the Plaintiffs that their furloughs would be extended more than one year at a time, but rather had continuously extended their furlough  every few months.[90]  On June 25, 2021 that changed when the Hotel announced that it would remain closed for more than another year, and the Plaintiffs would remain on unpaid furlough for that time

---

[86] Pl. 56.1, at ¶¶219, 343
[87] *Id.*, at ¶275.
[88] *Id.*, at ¶284
[89] *Id.*, at ¶286
[90] *Id.*, at ¶¶276-280

17

period, which was longer than the one-year term of EmPact.[91]  As it was known by both the

Warner Defendants and the Plaintiffs on June 25, 2021 that for the next year, the Warner

Defendants had no intention of paying them their compensation and benefits, as EmPact

required, Plaintiffs' layoffs under EmPact became permanent and their employment was

effectively terminated for No Fault under EmPact.[92]  Thus, on June 25, 2021, the layoffs became

permanent and No Fault Separation Pay was owed to the Plaintiffs.

It is undisputed that the Hotel announced on June 25, 2021 that it would remain closed

for more than one year and that the employees had not been paid their compensation and benefits

for the year prior, nor would they be paid compensation and benefits for the year ahead.[93]

Furthermore, Plaintiffs Staley and Holmes both received paystubs after June 25, 2021, which

categorized some of the payments as "severance."  As such, a disputed issue of fact exists as to

whether the Hotel's announcement on June 25, 2021 of its intention to not reopen within the

coming year constituted a No Fault termination of Plaintiffs' employment under EmPact.

**1. The Warner Defendants' repeated representations that Plaintiffs still maintained their No Fault Separation Pay benefit as of June 25, 2021, and remain current employees of the Hotel with all their benefits intact precludes them from simultaneously arguing that Plaintiffs were permanently laid off because of a national emergency beyond their control and are not entitled to No Fault Separation Pay**

The Warner Defendants and their counsel have repeatedly represented to this Court that

Plaintiffs are "current employees" of the Hotel and still maintain their employment benefits.[94]

During the June 25, 2021 call, Ortiz admitted that the employees still maintained their No Fault

Separation Pay benefit and the only reason it had not been paid to them was because they

---

[91] *Id.*, at ¶346
[92] *Id.*, at ¶347
[93] *Id.*, at ¶348
[94] *Id.*, at ¶243; Warner Defendants' Local Civil Rule 56.1 Statement, at ¶128.

18

intended to recall the employees and considered them to be on temporary layoffs.[95]  According to EmPact, in order to claim an exception from the No Fault Separation Pay, two things must occur: (1) the employee suffer a permanent layoff; and, (2) the permanent layoff must result from a cause beyond the control of Four Seasons, including a national emergency.[96]  As the Warner Defendants claim that Plaintiffs have not suffered a permanent layoff, they cannot also claim that it is undisputed that Plaintiffs' permanent layoff resulted from something beyond the Four Seasons control.[97]

To invoke this exception clause in EmPact, the Warner Defendants must concede or admit that Plaintiffs' employment suffered a permanent layoff.  The Warner Defendants cannot claim both that Plaintiffs were not permanently laid off and simultaneously argue that the reason Plaintiffs were permanently laid off was "beyond the Four Seasons' control."  Summary judgment is only appropriate when there are no material disputed facts. The Warner Defendants can either argue that it is undisputed that Plaintiffs suffered a permanent layoff but are not entitled to No Fault Separation Pay because of the exception, or that Plaintiffs did not suffer a permanent layoff. As the Warner Defendants have chosen to make both arguments simultaneously, both arguments must fail at the summary judgment stage.

### 2. The Warner Defendants have not established that Plaintiffs' no-fault terminations were beyond their control

Even if Defendants conceded that the Plaintiffs suffered a permanent layoff, it would still be a disputed issue of fact as to whether the permanent layoff was "beyond the Four Seasons control." First, Warner admitted that he had the power to open the Hotel when he wanted to.[98]

---

[95] *Id.*, at ¶287
[96] *Id.*, at ¶288
[97] *Id.*, at ¶288
[98] *Id.*, at ¶171

Second, Warner admitted that the reason the Hotel was closed was the management dispute.[99]

Third, the Hotel was exempt from the executive orders, which required other business to close, as

evidenced by the Hotel opening for the medical personnel.[100]   Fourth, the Warner Defendants

admitted that the Four Seasons could have paid the employees, including Plaintiffs if they wanted

to.[101]  Fifth, the Downtown Four Seasons was open by the summer of 2020.[102] Sixth, a reopening

plan existed for the Hotel during the summer of 2020, even though it was not implemented.[103]

For each of these reasons, the Warner Defendants have not established that an exception

to No Fault Separation Pay applies, and summary judgment should be denied on this issue.

### 3.  C.A.R.E. is not a condition precedent to No Fault Separation Pay

The Warner Defendants misleadingly claim that Plaintiffs have not complied with a

condition precedent, as there is no condition precedent for these claims. EmPact does not require

employees to complete steps 1 through 5 of C.A.R.E. prior to bringing a lawsuit for No Fault

Separation Pay. The Warner Defendants do not and cannot cite to anywhere in EmPact for the

proposition that Plaintiffs must comply with conditions precedent before bringing a lawsuit for

No Fault Separation Pay.[104]

In fact, a plain reading of the contract makes clear that C.A.R.E. does not apply to

"permanent layoffs." On page 60 of EmPact, there are four different ways that EmPact does not

automatically renew: (1) voluntary resignation; (2) permanent layoff; (3) involuntary

termination; (4) choosing to remain an "At Will" employee.[105] Of those options, only

---

[99] *Id.*, at ¶351
[100] *Id.*, at ¶¶171, 249
[101] *Id.*, at ¶253
[102] *Id.*, at ¶255
[103] *Id.*, at ¶250
[104] *See* EmPact (ECF#43-1); Warner Defendants' Memorandum in Support (ECF#99).
[105] Pl. 56.1., at ¶312

involuntary termination states that an employee can "still pursue my rights under C.A.R.E."[106] The logical interpretation of EmPact's silence on an employee's right to use C.A.R.E. as a result of a permanent layoff is that C.A.R.E. does not apply to permanent layoffs.[107]

Further, the No Fault Separation Pay section of EmPact states that the "mediation/arbitration provisions of C.A.R.E." do not apply.[108] EmPact defines C.A.R.E. as Complaint, Arbitration & Review for Employees.[109] As such, the very title of C.A.R.E. is about complaints and arbitration, and each one of the steps in C.A.R.E. is part of the mediation and arbitration provisions.[110] Steps 1 through 5 involve mediating disputes at the hotel level before escalating the dispute in step 6 to an outside mediator or arbitrator.[111] Plaintiffs' claims for No Fault Separation Pay are specifically excluded from C.A.R.E. Arbitration and Mediation.[112] The Opt-Out specifically states: "I understand that if I should decide to opt out of C.A.R.E., I will continue to be subject to and fully obligated to comply with all of the other provisions of my EmPact."[113] According to the Opt-Out, the steps of C.A.R.E. are not separate from C.A.R.E. Arbitration. As claims for No Fault Separation Pay are excluded from C.A.R.E. arbitration, there is no condition precedent for Plaintiffs' to have complied with prior to going to Court.[114]

**4. Even if compliance with C.A.R.E. was a condition precedent, Defendants' actions prevented Plaintiffs from using the C.A.R.E. steps**

---

[106] *Id.*, at ¶313

[107] *See Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002) ("[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.").

[108] Pl. 56.1, at ¶315

[109] *Id.*, at ¶316

[110] *Id.*, at ¶317

[111] *Id.*, at ¶318

[112] *Id.*, at ¶319

[113] *Id.*, at ¶320

[114] *Id.*, at ¶350

Even assuming, *arguendo,* that they were required to comply with Steps 1 through 5 prior to bringing this lawsuit, which Plaintiffs dispute, they nevertheless complied. Ortiz, the Director of Human Resources, was responsible for facilitating and managing C.A.R.E.[115] After hundreds of employees were furloughed from the Hotel, neither the Warner Defendants nor Ortiz provided any updated information to employees about how to engage in C.A.R.E. or if they even had a direct supervisor while they were on unpaid furlough.[116] Therefore, Plaintiffs had no ability to complete Step 1 as they did not have immediate supervisors.[117] Further, once the Hotel General Manager Tauscher resigned, there was no Hotel General Manager to whom Plaintiffs could lodge a complaint.[118] Again, assuming they would have been required to skip straight to Step 2, during the June 25, 2021 Teams meeting complaints had to be made in writing by using "chat" to message human resources, which Plaintiffs and their colleagues did during the June 25, 2021 Teams meeting.[119] Some of the written complaints were read aloud including questions about the legality of the "furloughs," No Fault Separation Pay, and requests for a meeting with Ownership.[120] While some questions were asked on an individual basis such as about "COBRA coverage," most of the questions were asked on behalf of the "employee team," as it was noted during the call that "there's just some general feedback that this doesn't sit well with the team on the call… can you please schedule a call with Ownership?" But Ortiz did not comply with Defendants' obligations under C.A.R.E.[121] Ortiz refused to admit that complaints about not

---

[115] *Id.*, at ¶304
[116] *Id.*, at ¶305
[117] *Id.*, at ¶306
[118] *Id.* at ¶309
[119] *Id.*, at ¶289
[120] *Id.*, at ¶290
[121] *Id.*, at ¶349

22

receiving severance warranted any kind of investigation.[122]  Ortiz further admitted that "400-plus

employees that have had concerns over the last three years…" but no investigation into the non-

payment of No Fault Separation Pay was done because "they are eligible for recall, and we were

temporarily closed."[123] Nor did she do anything to escalate the written complaints.[124]

New York law applies to EmPact.[125] The doctrine of "prevention" stands for the general

proposition that "a party to a contract cannot rely on the failure of another to perform a condition

precedent where he has frustrated or prevented the occurrence of the condition."[126] The New

York Court of Appeals has described prevention as follows:

> A condition precedent is linked to the implied obligation of a party
> not to "do anything which will have the effect of destroying or
> injuring the right of the other party to receive the fruits of the
> contract." Thus, it is a "well-settled and salutary rule that a party
> cannot insist upon a condition precedent, when its non-
> performance has been caused by himself."[127]

---

[122] *Id.*, at ¶292

[123] *Id.* at ¶¶ 293, 302

[124] *Id.,* at ¶294

[125] *See Staley v. Hotel 57 Services, LLC*, 2024 WL 1090816, at *2 (2d Cir. Mar. 13, 2024) (summary order).

[126] *Kooleraire Serv. & Installation Corp. v. Bd. of Educ. of the City of N.Y.*, 28 N.Y.2d 101, 106–07, 320 N.Y.S.2d 46, 268 N.E.2d 782 (1971); *see also Corbin on Contracts* § 947 ("To one who is sued for nonperformance of his promise it is a defense if he can prove that his performance was prevented or substantially hindered by the plaintiff."); Lord, Richard A., *Williston on Contracts* § 63:26 (4th ed. 2006) ("[T]here is generally in a contract subject to either an express or an implied condition an implied promise not to prevent or hinder performance of the contract.").

[127] *A.H.A. Gen. Constr., Inc. v. N.Y. City Housing Auth.*, 92 N.Y.2d 20 (1998) (quoting *Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87 (1933); *Young v. Hunter*, 6 N.Y. 203, 207 (1852)); accord *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 169 (2d Cir.1966) (en banc) (Friendly, J.) ("'One who unjustly prevents the performance or the happening of a condition of his own promissory duty thereby eliminates it as such a condition. He will not be permitted to take advantage of his own wrong, and to escape from liability for not rendering his promised performance by preventing the happening of the condition on which it was promised.'" (quoting 3A Corbin, *Contracts* § 767, at 540 (1960))).

The Warner Defendants' claims are contradicted by the June 25, 2021 Teams meeting, where employees complained to Ortiz about the legality of indefinite furloughs. During the Teams meeting, employees wrote complaints in the Teams chat box about not being paid their No-Fault Separation Pay and their never-ending furlough status.[128] Rather than investigate the complaints, Ortiz responded that "we wouldn't be paying out that severance at this juncture, only because we do consider you to be furloughed, we do anticipate reopening, and we do anticipate recalling you to work once we do reopen."[129] When Ortiz was questioned by the employees if what the Hotel was doing was legal, Ortiz responded "There is no limitations on how long employees can be on furlough. There are thoughts that there are timeframes on that, but from a legal perspective, there isn't a length of time."[130] The furloughed employees tried to go over Ortiz's head by requesting a meeting be scheduled with ownership present, but the Warner Defendants refused to schedule such a meeting to hear the employees' complaints.[131] Either way, the evidence shows that the Warner Defendants frustrated and prevented Plaintiffs' use of the "C.A.R.E. dispute resolution procedure."

Accordingly, assuming that any conditions precedent ever existed for No Fault Separation Pay, which Plaintiffs submit they did not, through their actions, the Warner Defendants prevented Plaintiffs from complying or waived any requirement that Plaintiffs comply with the Steps.

---

[128] Pl. 56.1, at ¶¶290, 295.
[129] *Id.*, at ¶296
[130] *Id.*, at ¶297
[131] *Id.*, at ¶300

24

SA-277

**Conclusion**

Respectfully, this Court should deny Defendants' Motion for Summary Judgment, and

grant such other or further relief as the Court deems appropriate.

Dated:  August 8, 2024
New York, New York

Respectfully Submitted,

*/s/ Evan Brustein*
Evan Brustein
One of Plaintiffs' Attorneys

Attorneys for Plaintiffs
RISMAN & RISMAN, P.C.
299 Broadway, 17th Floor
New York, New York 10007
(212) 233-6400

BRUSTEIN LAW PLLC
299 Broadway, 17th Floor
New York, New York 10007
(212) 233-3900

BROMBERG LAW OFFICE, P.C.
352 Rutland Road, #1
Brooklyn, New York 11225
(212) 248-7906

25

**Certificate of Service**

I hereby certify that on this date a copy of the foregoing document was electronically filed using the Court's CM/ECF system, which will automatically send copies of same to counsel of record below:

Brian Lewis Bromberg, Esq.

Evan Craig Brustein, Esq.

Hayden R. Pace, Esq.

James J. Boland, Esq.

John R. Hunt, Esq.

Kathryn Lundy, Esq.

Marc Brian Zimmerman, Esq.

Maya Risman, Esq.

Paul Eric Wagner, Esq.

Dated: Brooklyn, New York
       August 8, 2024

/s/ Brian L. Bromberg
Brian L. Bromberg

SA-279

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
SELENA STALEY, VIVIAN HOLMES, and OLIVE        :
IVEY, on behalf of themselves and all others similarly     :
situated,        :
        :    Case No.: 22-CV-6781 (JSR)
Plaintiffs,        :
v.        :    **DECLARATION OF**
        :    **ELIZABETH ORTIZ**
FSR INTERNATIONAL HOTEL INC. d/b/a FOUR        :
SEASONS HOTELS AND RESORTS, HOTEL 57        :
SERVICES, LLC, HOTEL 57, LLC, TY WARNER        :
HOTELS & RESORTS, LLC, and H. TY WARNER        :
        :
Defendants.        :
-------------------------------------------------------------- X

I, Elizabeth Ortiz, pursuant to 28 U.S.C. § 1746, state and declare as follows:

1.      I am the Director of People & Culture for defendant Hotel 57 Services, LLC. I have personal knowledge of the matters set forth in this Declaration.

2.      I submit this declaration in connection with Defendants' joint response to Plaintiffs' Motion to Approve Class Notice.

3.      I am employed by Hotel 57 Services, LLC as Director of People & Culture and have I have personal knowledge of Hotel 57 Services, LLC's business operations at the Four Seasons Hotel New York, located at 57 East 57th Street in New York City (the "Hotel") from March 2020 through the present day. I am a custodian of Hotel 57 Services, LLC's employment business records for operations at the Hotel.

4.      All of Hotel 57 Services LLC's non-union employees who work at the Hotel (including Selena Staley, Vivian Holmes and Olive Ivey), who have not previously transferred or resigned their employment, are Hotel 57 Services, LLC employees who remain on furlough with

SA-280

a right to recall to their employment, with their accrued seniority, pay level and benefits, when the Hotel reopens.

5.    Since March 2020 and continuing through the present day, I have received numerous phone calls from Hotel 57 Services, LLC employees inquiring about the Hotel's re-opening and expressing interest to be re-called to work at the Hotel when the Hotel re-opens.

6.    Hotel 57 Services, LLC has begun the process of addressing its staffing needs at the Hotel, consistent with the Hotel's announcement of its re-opening in Fall 2024.

7.    To assess whether Hotel 57 Services, LLC's non-union employees who presently are on furlough (who have not previously transferred or resigned their employment) are interested in being recalled to their employment at the Hotel, Hotel 57 Services, LLC e-mailed a letter to such non-union employees on July 23, 2024, stating, in relevant part:

> We are thrilled to announce our plans to re-open the Four Seasons New York this Fall. While we have not yet finalized the precise reopening date, we are actively preparing to do so. In light of this exciting development, we want to give you as much notice as possible to consider your recall to your position at Four Seasons New York, as many of our team members have engaged in other pursuits during their temporary furlough.
>
> If you are interested in being recalled to your position at the hotel, please email me at Elizabeth.Ortiz@fourseasons.com by July 29, 2024 to let me know whether or not you are interested in recall to your position so we can properly assess any additional staffing needs the hotel may have prior to reopening. **Please note, regardless of the information you share with the hotel concerning your present interest in being recalled to your position, we will nonetheless issue to you a formal notice of recall notifying you of your right to recall to your position on a date certain once we establish a firm hotel reopening date.**
>
> Your timely response will help us in our planning and ensure a smooth transition as we move forward with our preparations. We look forward to hearing from you and hope to have the pleasure of welcoming you back.

A true and correct copy of the correspondence is annexed hereto as Exhibit A.

8.    As of August 1, 2024, 17 non-union employees who received Hotel 57 Services, LLC's July 23, 2024 letter responded indicating they are interested in being re-called to their employment with Hotel 57 Services, LLC.

2

SA-281

9.      In the coming weeks, Hotel 57 Services, LLC will issue a Notice of Recall to all of its furloughed non-union employees who have not previously transferred or resigned their employment, regardless of their response (or failure to respond) to Hotel 57 Services, LLC's July 23, 2024 letter.

10.      I declare under the penalty of perjury that the foregoing is true and correct.

Dated:  August 12, 2024

_____
Elizabeth Ortiz

SA-282

# EXHIBIT A

SA-283



**FOUR SEASONS**

HOTEL

NEW YORK

*July 19, 2024*

> **Re:   Reopening Update; Interest in Recall**

Dear ,

We are thrilled to announce our plans to re-open the Four Seasons New York this Fall. While we have not yet finalized the precise reopening date, we are actively preparing to do so. In light of this exciting development, we want to give you as much notice as possible to consider your recall to your position at Four Seasons New York, as many of our team members have engaged in other pursuits during their temporary furlough.

If you are interested in being recalled to your position at the hotel, please email me at Elizabeth.Ortiz@fourseasons.com by July 29, 2024 to let me know whether or not you are interested in recall to your position so we can properly assess any additional staffing needs the hotel may have prior to reopening. **Please note, regardless of the information you share with the hotel concerning your present interest in being recalled to your position, we will nonetheless issue to you a formal notice of recall notifying you of your right to recall to your position on a date certain once we establish a firm hotel reopening date.**

Your timely response will help us in our planning and ensure a smooth transition as we move forward with our preparations. We look forward to hearing from you and hope to have the pleasure of welcoming you back.

Warm regards,

Elizabeth Ortiz
Director, People and Culture

SGR/71288468.1

SA-284

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SELENA STALEY, VIVIAN HOLMES, and             Case No. 22-CV-6781 (JSR)
OLIVE IVEY, on behalf of themselves and
all others similarly situated,

                        Plaintiffs,

                -- against --

FOUR SEASONS HOTELS AND RESORTS,
HOTEL 57 SERVICES, LLC, HOTEL 57, LLC,
TY WARNER HOTELS & RESORTS LLC,
and H. TY WARNER,

                        Defendants,

---

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION
CONCERNING OBLIGATION TO PROVIDE MULTIPLE WARN NOTICES**

RISMAN & RISMAN, P.C.
299 Broadway, 17th Floor
New York, New York 10007
(212) 233-6400

BRUSTEIN LAW PLLC
299 Broadway, 17th Floor
New York, New York 10007
(212) 233-3900

BROMBERG LAW OFFICE,
P.C.
352 Rutland Road, #1
Brooklyn, New York 11225
(212) 248-7906

SA-285

**Table of Contents**

Preliminary Statement.................................................................................................. 1

Argument .................................................................................................................... 1

    I.     Purpose of the WARN Acts............................................................................. 1

    II.    The WARN Acts require separate warnings for successive employment losses............. 2

    III.   There is no "relate back" defense under the WARN Acts ............................................... 5

    IV.   The August 2020 Letter is not a WARN Notice ............................................................. 8

Conclusion ................................................................................................................ 12

SA-286

## Table of Authorities

**Page(s)**

**Cases**

*Bledsoe v. Emery Worldwide Airlines, Inc.*,
No. 3:02CV069, 2009 WL 3127740 (S.D. Ohio Sept. 28, 2009), *aff'd*, 635
F.3d 836 (6th Cir. 2011) ........................................................................................3, 4

*In re Dewey & LeBoeuf*
LLP, 507 B.R. 522 (Bankr. S.D.N.Y. 2014).........................................................9, 11

*Easom v. US Well Services, Inc.*,
37 F.4th 238 (5th Cir. 2022) ........................................................................................1

*Farah v. Emirates and Emirates Severance Plan*,
No. 21-CV-5786 (LTS), __ F.Supp.3d __, 2024 WL 1374762 (S.D.N.Y. Mar.
31, 2024) ....................................................................................................................8, 9

*Graphic Commc'ns Int'l Union, Loc. 31-N v. Quebecor Printing (USA) Corp.*,
252 F.3d 296 (4th Cir. 2001) .................................................................................2, 5, 6

*In re Hawaii Island Air, Inc.*,
No. 17-01078, 2022 WL 141512 (Bankr. D. Haw. Jan. 13, 2022).........................10

*Hotel 57 L.L.C. v. FSR Int'l Hotels, Inc.*,
SDNY Case No. 22-CV-9331 (LLS).............................................................................2

*Hutson v. CAH Acquisition Co. 10, LLC*,
No. 1:15CV742, 2016 WL 4289473 (M.D.N.C. Aug. 15, 2016) .............................7

*Kalwaytis v. Preferred Meal Systems, Inc.*,
78 F.3d 117 (3d Cir. 1996)...........................................................................................1

*Lawrence Invs., LLC v. Air Line Pilots Ass'n, Int'l*, No. CV 22-00045 JAO-RT,
2022 WL 1173554 (D. Haw. Apr. 20, 2022) ............................................................10

*Local 1239, Intern. Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths,
Forgers and Helpers v. Allsteel, Inc.*,
955 F.Supp. 78 (N.D.Ill. 1996) ....................................................................................7

*United Steel Workers of America, AFL–CIO–CLC v. Crown Cork & Seal Co.,
Inc.*,
32 F.3d 53 (3d Cir. 1994)..........................................................................................1, 4

**Statutes**

N.Y. Labor Law § 860, *et seq.*.............................................................................. *passim*

Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, *et seq.*.................. *passim*

**Other Authorities**

20 C.F.R. § 639.9(b) ................................................................................................8

20 C.F.R. § 639.10 ..............................................................................................6, 7

12 NYCRR § 921-1.1(f) .........................................................................................2

12 NYCRR § 921-3.2 .............................................................................................8

12 NYCRR § 921-3.2(b).........................................................................................4

12 NYCRR § 921-6.3 .............................................................................................8

12 NYCRR § 921-6.6 ...........................................................................................10

**Preliminary Statement**

The New York WARN Act ("NY WARN Act") and the federal WARN Act ("WARN Act") (collectively, the "WARN Acts") require multiple WARN notices in certain situations. As Plaintiffs detailed in their opposition papers, and as further explained herein, Defendants not only failed to provide a proper notice under the WARN Acts, but each time the layoffs exceeded another six months, the Defendants failed to provide WARN notices. Accordingly, summary judgment should be denied against all Defendants.

**Argument**

**I.     Purpose of the WARN Acts**

The WARN Act was "adopted in response to the extensive worker dislocation that occurred in the 1970s and 1980s."[1] The regulations capture the spirit of the legislation in stating that the 60-day notice "provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs" or to obtain training for further employment.[2] "WARN serves very broad societal goals—to protect workers, their families and their communities in the wake of potentially harmful employment decisions."[3]

In direct contradiction to the stated purpose of the WARN Acts, Defendants have laid off Plaintiffs and strung them along for years with promises of the Hotel's imminent reopening. All the while, Defendants were engaged in a dispute between themselves regarding the management

---

[1] *Easom v. US Well Services, Inc.*, 37 F.4th 238, 244 (5th Cir. 2022) (citing *Hotel Emps. & Rest. Emps. Int'l Union Loc. 54 v. Elsinore Shore Assocs.*, 173 F.3d 175, 182 (3d Cir. 1999)).
[2] *Kalwaytis v. Preferred Meal Systems, Inc.*, 78 F.3d 117, 122 (3d Cir. 1996) (citing 20 C.F.R. § 639.1).
[3] *United Steel Workers of America, AFL–CIO–CLC v. Crown Cork & Seal Co., Inc.*, 32 F.3d 53, 58 (3d Cir. 1994).

of the Hotel, each placing the responsibility of the Plaintiffs' employment on the other.[4] As such, it is a disputed fact as to whether their own bottom lines, and not COVID-19, were the real reason for the Plaintiffs' employment losses. Regardless of the reasons, Defendants have violated the notice requirements under the WARN Acts and summary judgment is not appropriate.[5]

**II.     The WARN Acts require separate warnings for successive employment losses**

The WARN Act defines an employment loss as "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6-month period."[6] This definition is mirrored by the N.Y. Warn Act.[7] These definitions show that a layoff exceeding six months is treated as an employment loss whether or not it results in an employment termination. Courts have recognized that employees can suffer multiple employment losses under the WARN Act. "[A]ssuming that termination is not the initial employment action, an employee can suffer an "employment loss" for any or all of an "employment termination," "a layoff exceeding six months," or "a reduction in hours" of the magnitude and duration specified."[8] Therefore, as long as the employment relationship is ongoing, the employer must provide new notices under the WARN Acts each time there is a new "employment loss."

---

[4] *See Hotel 57 L.L.C. v. FSR Int'l Hotels, Inc.*, SDNY Case No. 22-CV-9331 (LLS) (Bromberg Decl, Ex. WW), at Document No. 4, generally (ECF#123-49); Hwang 30(b)(1) Tr (ECF#96-5) at 31:17-32:19, 181:5-185:24; Warner Tr (ECF#112-1) at 58:3-59:17; Chahwan Tr (ECF#123-1) at 93:7-17; 93:25-94:19; Holmes Declaration, ¶ 2 & Ex. A (ECF#124 & 124-1).
[5] *Id*.
[6] 29 U.S.C. § 2101(a)(6).
[7] 12 NYCRR § 921-1.1(f) (Ex. B, attached); because some sections of the NY WARN Act were amended effective June 20, 2023, Plaintiffs have assembled a complete version of all sections of the state statute as it existed on the relevant dates—*i.e.*, before June 20, 2023—and attached a copy, as Ex. B, for the Court's reference.
[8] *Graphic Commc'ns Int'l Union, Loc. 31-N v. Quebecor Printing (USA) Corp.,* 252 F.3d 296, 299 (4th Cir. 2001).

"[A]sserting that the Plaintiffs suffered an employment loss in August 2001 (thus, necessitating WARN Act notice, unless excused), does not shift the focus away from any potential requirement to provide WARN Act notice, in December 2001."[9] As such, even if the August 5, 2020 communication (the "August 2020 Letter") that Defendants claim constituted proper WARN notice, which Plaintiffs dispute, Defendants were still required to give a proper WARN Notice each time it was reasonably foreseeable that the Plaintiffs would suffer another "employment loss."

By maintaining Plaintiffs on "temporary furloughs" and repeatedly telling the Plaintiffs that they would be recalled, they prevented Plaintiffs from making informed decisions about their futures, in direct contradiction to the stated purpose of the WARN Acts. The only way to prevent Defendants from evading the purpose of the WARN Acts is to hold them liable and accountable each time it was reasonably foreseeable a layoff would exceed another six months.[10]

Whether multiple notices are required under the WARN Acts also depends on if during "their temporary layoffs," Plaintiffs were considered employees under the WARN Acts and therefore were required to provide WARN Notices each time it was reasonably foreseeable that they would suffer an "employment loss."

> The question arises as to whether laidoff employees are "employees" for purposes of the WARN Act's "affected employees" definition. The Sixth Circuit has relied on a regulation promulgated under the WARN Act (which actually defines the word "employer", but contains an ancillary explanation of what it means to be an "employee") to answer that question.  Specifically, the Appellate Court points to 20 C.F.R. § 639.3(a) (1), which reads as follows:
>
>> Workers on temporary layoff or on leave who have a reasonable expectation of recall are counted as employees. An employee has a "reasonable expectation of recall" when he/she understands,

---

[9] *Bledsoe v. Emery Worldwide Airlines, Inc.*, No. 3:02CV069, 2009 WL 3127740, at *6 (S.D. Ohio Sept. 28, 2009), *aff'd*, 635 F.3d 836 (6th Cir. 2011).
[10] *Id.*

through notification or through industry practice, that his/her employment with the employer has been temporarily interrupted and that he/she will be recalled to the same or to a similar job.[11]

FSR's counsel helped explain the reasonable expectation that the Plaintiffs had of being recalled as employees, when he argued that Defendants had "a moral obligation to keep employees that are still able to be recalled and being told they're furloughed, to tell them what is going on and, in fact, the record is replete with those communications saying, we are still staying closed, we're still renovating."[12] The Warner Defendants' counsel went even further:

> And finally, these employees were not hurt. They received their notices promptly upon the foreseeability of this constituting an employment loss, much longer than they anticipated, but they are going to be recalled... They accrued seniority. We appreciate these employees and look forward welcoming them back to the hotel.[13]

With these representations by Defendants' counsel, at a minimum, it must be a question of fact as to whether Plaintiffs had a reasonable expectation of recall and were entitled to multiple notices under the WARN Acts. By continuing to hold themselves out as Plaintiffs' employer, even after the layoffs exceeded 6 months, 12 months, and now 54 months, Defendants are still required to comply with the requirements of the WARN Acts.

This is consistent with other sections of the WARN Acts, which contrary to Defendants' claim, explicitly require additional notices. For example, the NY WARN Act states that "If the postponement is for ninety (90) days or more, a new notice which otherwise complies with all the requirements of the Act and this Part shall be provided."[14] This new notice requirement is consistent with the stated purpose of the WARN Act, to provide "workers and their families some transition time to adjust to the prospective loss of employment."[15] The WARN Acts were

---

[11] *Bledsoe*, 2009 WL 3127740, at *6, *aff'd,* 635 F.3d 836 (internal citations omitted).
[12] *See* attached transcript (Ex. A), at 21:17-22.
[13] *Id.* at 46:13-20.
[14] 12 NYCRR § 921-3.2(b) (Ex. B).
[15] *United Steel Workers of America, AFL–CIO–CLC*, 32 F.3d at 58.

4

created in recognition of the importance of notifying workers that they would be without

employment for six months so workers and their families could plan their future accordingly.

### III.    There is no "relate back" defense under the WARN Acts

Defendants have not claimed that they sent any "WARN Notices" other than the deficient

August 2020 Letter. Instead, Defendants claim that they are excused from providing multiple

WARN notices during what they claim is a now 54-month "temporary layoff" because of what

they claim all "relate back" and/or "relates back" to Covid-19. During oral argument on

September 6, 2024, counsel for the Warner Defendants repeatedly claimed that no new WARN

notices were required since "they all relate back to the COVID-19 pandemic,"[16] and "it all

relates back to the initial closure."[17] Even though there is no legal support for any relation-back

doctrine under the WARN Acts, Defendants doubled down on their "relate back" theory,

claiming that:

> . . . the continued closure of the hotel and the hotel's effort to reopen safely and
> profitably all relate back to the impact COVID-19 had on the hotel. The lengthy
> impact COVID had and the need to update and renovate the hotel all turns back to
> that initial event. I don't believe a subsequent WARN Act notice was required.
> Because as the evidence demonstrates, it all turns on that March 2020 timeframe.
> And the requirement to undertake renovations to open the hotel safely and
> profitably once it's able to do so . . . under the statute and regulation this not a new
> employment loss. From the Hotel 57 Services' prospective, this is a continuation
> of their layoff that occurred beginning in March 2020. This not a new event. This
> all relates to the same temporary layoff that was going to be less than six months.
> And once we determined it was going to be more than that timeframe triggering
> an employment loss under WARN, we issued the WARN Act promptly upon that
> understanding. And nothing has changed since then.[18]

But the Warner Defendants' position is contrary to the WARN Acts, the DOL

regulations, and the related case law. In *Graphic Communications Int'l Union, Local 31-N v.*

---

[16] *See* attached transcript (Ex. A), at 7:15-8:3.
[17] *Id.* at 8:19-9:1.
[18] *Id.* at 10:11-20.

*Quebecor Printing (USA) Corp.*,[19] the Fourth Circuit held that the WARN Act clearly contemplates that an employee may suffer multiple employment losses, necessitating separate notices. The Court in *Graphic Communications* further rejected the district court's conclusion that the first notice provided in September 1998 by the employer was sufficient to satisfy the WARN Act with respect to the later permanent shutdown and plant closing, holding that "[t]he question for purposes of *liability* is whether the Quebecor employees received the notice they were due with respect to the *particular employment loss* they experienced on December 16. This they did not receive."[20] Because the employees suffered an "employment loss" as a result of the December 16, 1998 permanent closing of the Glen Burnie plant, for which Quebecor failed to provide 60 days' notice as required by the WARN Act, the employees were "aggrieved employees" within the meaning of the Act.[21] Here, too, Plaintiffs suffered multiple employment losses and should have been provided with multiple WARN Act Notices.

Postponements in giving notice are governed by the DOL regulation at 20 C.F.R. § 639.10, entitled "When may notice be extended?" This regulation sets forth and clarifies employers' duties when "[a]dditional notice is required."[22] The regulation even states that

> if the postponement is for 60 days or more, the additional notice should be treated as new notice subject to the provisions of §§ 639.5, 639.6 and 639.7 of this part. Rolling notice, in the sense of routine periodic notice, given whether or not a plant closing or mass layoff is impending, and with the intent to evade the purpose of the Act rather than give specific notice as required by WARN, is not acceptable.[23]

Clearly, the legislators wanted to prevent employers from "evad[ing] the purpose of the Act," as Defendants have done here.

---

[19] *Graphic Communications Int'l Union, Local 31-N*, 252 F.3d 296.
[20] *Id*. at 301 (emphasis added).
[21] *Id*. (citing 29 U.S.C. § 2104(a)(7)).
[22] 20 C.F.R. § 639.10 (Ex. B).
[23] *Id*.

6

SA-294

This DOL regulation was applied in *Hutson v. CAH Acquisition Co. 10, LLC*,[24] which involved the closure of a hospital. In *Hutson*, the defendants gave more than 60-days advance notice that a hospital would close and employees would be terminated on a certain date, as required by statute. But the hospital did not close on that date, and the employees were not terminated on that date. The court held that: "Under the implementing regulations of the WARN Act, while the scheduled date of termination announced in a WARN notification can be postponed, *additional notice must be given* if a postponement occurs. *See* 20 C.F.R. § 639.10."[25] Thus, under 20 C.F.R. § 639.10 and *Hutson*, multiple notices should have been given to Plaintiffs and the class members here. Defendants' intentions "are immaterial to whether proper WARN Act notice was given."[26]

In *Local 1239, Intern. Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers v. Allsteel, Inc.,*[27] the court held that an employer that postponed a plant-closing announced in a prior WARN Act notice, still violated the WARN Act because the additional notice it gave was only two days before the plant-closing and the employer had known for almost two months that it would be closing the plant on the day named in the additional notice. Just like here, in Local 1239, the employer had even drafted, but not sent, an additional notice—which the court found was further proof that the employer had failed to give additional notice as soon as possible.

---

[24] *Hutson v. CAH Acquisition Co. 10, LLC*, No. 1:15CV742, 2016 WL 4289473, at *3-4 (M.D.N.C. Aug. 15, 2016).
[25] *Id.* at *3 (emphasis added).
[26] *Id.* at *4 (emphasis added).
[27] *Local 1239, Intern. Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers v. Allsteel, Inc.,* 955 F.Supp. 78 (N.D.Ill. 1996).

Similarly, under the NY WARN Act, "[i]f an employer must extend temporary furloughs into permanent layoffs due to 'business circumstances . . . not reasonably foreseeable at the time of the initial layoff,' the employer is required to give notice 'as soon as it becomes foreseeable that an extension is required.'"[28] In fact, under the New York WARN Act, "[I]f the postponement is for ninety (90) days or more, a new notice which otherwise complies with all the requirements of the Act and this Part shall be provided."[29] Thus, contrary to the assertion made by counsel for the Warner Defendants that only one notice is necessary under the WARN Acts, multiple WARN Notices should have been given.[30]

## IV. The August 2020 Letter is not a WARN Notice

Even if in March 2020 COVID-19 could have qualified as an unforeseeable business circumstance within which a reduction of the 60-days advance notice could have been appropriate, Defendants have failed to establish that by August 5, 2020, COVID-19 qualified as "the occurrence of some sudden, dramatic and unexpected action."[31] The Warner Defendants' 56.1 Statement states as undisputed fact that by March 20, 2020, the "Hotel temporarily suspended its hospitality operations due to unprecedented risks and restrictions caused by COVID-19."[32] Therefore, at a minimum, it is a question of fact if almost five months later,

---

[28] *Farah v. Emirates and Emirates Severance Plan*, No. 21-CV-5786 (LTS), __ F.Supp.3d __, 2024 WL 1374762, at *8 (S.D.N.Y. Mar. 31, 2024) (citing *Id*. 12 NYCRR § 921-3.1).

[29] 12 NYCRR § 921-3.2 (Ex. B).

[30] The Warner Defendants also falsely stated during oral argument that "Mr. Brustein confirmed that there was nothing in the statute that says multiple WARN Act notices are required." Transcript at 46:2-6. Ms. Lundy stated this in the face of Mr. Brustein's statement that "We do believe that multiple WARN notices would be required." *Id*. at 30:12-13. Mr. Brustein explained that there is nothing in "the statute that statute that explicitly says that an employer who has an employee suffer a job loss under the WARN Act can violate the statute again" and explained that this hardly surprising, because it would be like a criminal statute saying that an individual can be charged for stealing the same car over-and-over again. Such a statement would be mere surplusage. *Id*. at 30:12-31:12.

[31] 12 NYCRR § 921-6.3; *see also*, 29 U.S.C. § 2102(b)(2)(A); 20 C.F.R. § 639.9(b) (Ex. B).

[32] Warner Defendants 56.1 (ECF#95), at 65.

SA-296

COVID-19 could be considered either "sudden" or "unexpected" to qualify for an unforeseeable business circumstance exception. Furthermore, specific information must be included in the written notice to employees in order to comply with the WARN Acts.[33] Plaintiffs respectfully refer the Court to their Memorandums in Opposition to the two Motions for Summary Judgment, for a further recitation of the deficiencies in Defendants' purported notice.[34]

Courts have granted summary judgment in favor of plaintiffs for the same type deficiencies that are found in what Defendants claim is their August 5, 2020 WARN notice.[35] Even assuming, arguendo, that Defendants complied with all of the other requirements of the WARN Acts, which Plaintiffs dispute, the August 2020 Letter could not have qualified as proper WARN Notice for two other material reasons. First, it is undisputed that neither 60 nor 90 days advance notice was provided to Plaintiffs. This is important because it means that the only way that Defendants could have complied with the requirements of the WARN Acts would have been if Defendants both qualified for an exception to the advance notice, and also complied with the additional requirement to provide a brief statement explaining the reason more notice was not given.[36] Since the August 2020 Letter did not provide a brief statement explaining the reason more notice was not given, it cannot satisfy the WARN requirements.

[33] *Farah,* 2024 WL 1374762, at *8.

[34] Memo in Opp. to Warner Defendants (ECF#119) at 9-12; Memo in Opp. to FSR (ECF#121) at 14-17.

[35] *See, e.g., In re Dewey & LeBoeuf* LLP, 507 B.R. 522, 532 (Bankr. S.D.N.Y. 2014) ("Taken together, the statutory, regulatory, and interpretive content all direct an employer delivering shortened WARN notice to provide the brief statement in that notice itself. Dewey opted not to insert the brief statement in the written WARN notices, so summary judgment in favor of the Plaintiff is proper.")

[36] *See Id.* ("The defendants contend that the Jeffcoat email gave a brief statement of the reason for reducing the notice period because it told employees that the company had filed for bankruptcy that afternoon as the first step in what would likely be the end of the company. However, this was nothing more than a statement of the reason why the company was closing the facilities. It was not an explanation of why the company did not give 60 days' notice of the

SA-297

"To employ [the unforeseeable business circumstance], the employer must satisfy 29 U.S.C. § 2102(b)(3), which provides that the employer 'shall give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period.'"[37] Similarly, to comply with the NY WARN Act, Defendants needed to provide the notice explained in 12 NYCRR § 921-6.6, which stated:

> If an employer is unable to provide the notice otherwise required by this Part in a timely fashion as a result of circumstances described above, it shall still provide as much notice as is practicable accompanied by a statement of the basis for reducing the notice period.[38]

Looking at the August 2020 Letter, it is clear that no statement of the basis for reducing the notice period was included in the correspondence at issue:

> This is to inform you that due to unforeseen business circumstances and the continued major economic downturn stemming from the COVID-19 virus pandemic and consequent travel and tourism disruptions outside the employer's control the Four Seasons Hotel New York will continue your temporary layoff which began on 3/14/2020 for an as yet undetermined number of months. The layoffs included approximately 464 employees, including yourself and are still expected to be temporary.
>
> You are also hereby notified that, as a result of your employment loss, you may be eligible to receive job retraining, re-employment services, or other assistance with obtaining new employment from the New York State Department of Labor or its workforce partners upon your termination. You may also be eligible for unemployment insurance benefits after your last day of employment. Whenever possible, the New York State Department of Labor will contact your employer to

---

closures. For all the Jeffcoat email reveals, the company could have known 60 days' ahead of time that it would file for bankruptcy and shutdown on September 28, 2015. The WARN Act clearly required the defendants to give a brief statement of the reason "for reducing the notice period," not merely a brief statement of the reason the plant was closing. 29 U.S.C. § 2102(b)(3). To comply with this requirement, the company should have said something along the lines of what they said in their belated WARN notice of November 23, 2015, namely, that the company could not have given 60 days' notice because of sudden and unexpected actions taken by its lender and the company's subsequent failure to obtain alternative financing.").

[37] *In re Hawaii Island Air, Inc.*, No. 17-01078, 2022 WL 141512, at *6 (Bankr. D. Haw. Jan. 13, 2022), leave to appeal denied sub nom. *Lawrence Invs., LLC v. Air Line Pilots Ass'n, Int'l*, No. CV 22-00045 JAO-RT, 2022 WL 1173554 (D. Haw. Apr. 20, 2022).

[38] 12 NYCRR § 921-6.6 (effective until June 20, 2023), attached as part of Ex. B.

SA-298

arrange to provide additional information regarding these benefits and services to you through workshops, interviews, and other activities that will be scheduled prior to the time your employment ends. If your job has already ended, you can also access reemployment information and apply for unemployment insurance benefits on the Department's website or you may use the contact information provided on the website or visit one of the Department's local offices for further information and assistance.

This notice is supplied to you pursuant to the WARN Act as well and has been supplied to the appropriate governmental agencies. If you have any questions concerning anything contained in this letter, please contact me at 212-350-6604.[39]

Not only do Defendants have no basis for moving for summary judgment since they did not include a brief statement explaining the reason for the reduction in the notification period, but courts have granted summary judgment in favor of plaintiffs in cases where defendants failed to provide such a brief statement.[40]

Contrasting the August 2020 Letter, with the Defendants' March 24, 2020 draft WARN Notice, it becomes even more clear that the August 2020 Letter cannot satisfy the WARN Acts. In the March 24, 2020 draft WARN Notice, Defendants wrote:

This Notice is provided to you in accordance with the Federal Worker Adjustment Retraining Notification Act, 29 U.S.C. §2101 et. seq. ("WARN Act") and New York WARN Act. This notice is unfortunately provided less than 60 days before the effective date of layoff. While the WARN Act and Cal WARN Act ordinarily require 60-days advance notice, due to the rapid spread of the pandemic COVID-19, compliance with such requirement was not possible as the layoffs are the result of business circumstances that were not reasonably foreseeable as of the time that notice would have been required. Therefore, notice was provided as soon as practicable under the given circumstances.[41]

In the August 2020 Letter, there is not even a mention of a reduction in the 60-day notice period (or 90-day period), let alone a brief statement of the basis for reducing the notice. This omission alone is sufficient to deny summary judgment on the WARN Act Claims. Considering

---

[39] Bromberg Decl, Ex. I (ECF#123-9).
[40] *See, e.g., In re Dewey & LeBoeuf* LLP, 507 B.R. at 532.
[41] Bromberg Decl, Ex. Q (ECF#123-17).

11

SA-299

Defendants knew in March 2020 to include a brief statement, the purposeful omission of such a brief statement from the August 2020 Letter makes their attempt to claim that it qualified as a proper WARN notice all the more incredible.

### Conclusion

The WARN Acts were drafted to prevent employers from being able to evade the purpose of the Acts. The WARN Acts were drafted to protect and WARN workers about being out of work for periods of time in excess of six months. Courts have interpreted the WARN Acts to not only envision successive employment losses, but to require WARN Notices for each separate employment loss. It is a disputed fact whether COVID-19 or disputes over the management of the Hotel or renovations to improve the Hotel's bottom line were the cause of the more than 4.5-year "temporary layoffs." But it is undisputed that no brief statement was included in the August 5, 2020 Letter explaining the need for the reduction in the notice period, and accordingly summary judgment on the WARN Acts claims should be denied.

For all the reasons stated herein as well as Plaintiffs' opposition memoranda, Plaintiffs submit that the Court should deny Defendants' respective motions for summary judgment in their entirety.

Dated: September 16, 2024

/s/ Brian Bromberg
Brian Bromberg

/s/ Evan Brustein
Evan Brustein

Maya Risman
Maya Risman

12

SA-300

# Exhibit A

O964STAC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SELENA STALEY, VIVIAN HOLMES,
and OLIVE IVEY,

                    Plaintiffs,

            v.                          22 Civ. 6781 (JSR)

FOUR SEASONS HOTELS AND
RESORTS, HOTEL 57 SERVICES,
LLC, HOTEL 57, LLC, TY WARNER
HOTELS AND RESORTS, LLC, AND
H. TY WARNER,

                                        Oral Argument

            Defendants.

------------------------------x
                                        New York, N.Y.
                                        September 6, 2024
                                        10:15 a.m.

Before:

                    HON. JED S. RAKOFF,

                                        District Judge

                       APPEARANCES

BROMBERG LAW OFFICE, P.C.
     Attorneys for Plaintiffs
BY:  BRIAN L. BROMBERG

BRUSTEIN LAW PLLC
     Attorneys for Plaintiffs
BY:  EVAN BRUSTEIN

RISMAN & RISMAN, P.C.
     Attorneys for Plaintiff
BY:  MAYA RISSMAN

SA-302

O964STAC

Appearances continued

SMITH GAMBRELL & RUSSELL, LLP
Attorneys for Defendants TY WARNER HOTEL AND RESORTS LLC and H.
TY WARNER
BY: KATHRYN LUNDY
    MARK ZIMMERMAN


STOKES WAGNER, A.L.C.
Attorneys for Defendant FSR INTERNATIONAL HOTELS INC.
BY: PAUL WAGNER

SA-303

O964STAC

(Case called)

MR. BRUSTEIN:  Good morning, your Honor, Evan Brustein on behalf of the plaintiffs.  I do want to point out that the party is not Lockhart for the defendants but FSR International Hotels, *et al*.

THE COURT:  I didn't hear what you were saying at all other than your name.

MR. BRUSTEIN:  The caption that was read at the beginning of the case --

THE COURT:  Is not the right caption.

MR. BRUSTEIN:  Yes, your Honor.

MR. BOLAND:  We'll fix it.

MR. BRUSTEIN:  Evan Brustein on behalf of the plaintiffs.

MR. BROMBERG:  Good morning, your Honor.  Brian Bromberg, Bromberg Law Office P.C. on behalf of the plaintiffs.

MS. RISMAN:  Good morning, Maya Risman, Risman & Risman P.C., on behalf of the plaintiffs.

MS. STALEY:  Good morning, your Honor, Selena Staley.

THE COURT:  Plaintiff.

MS. STALEY:  Plaintiff.

MS. LUNDY:  Good morning, your Honor.  Kathryn Lundy of Smith Gambrell on behalf of the Warner defendants.

MR. ZIMMERMAN:  Good morning, your Honor.  Mark Zimmerman also of Smith Gambrell & Russell for the Warner

SA-304

O964STAC

defendants.

MR. WAGNER:  Good morning, your Honor.  Paul Wagner from for FSR International.

THE COURT:  Good morning, all.  We are here for argument on the defendants' motion for summary judgment.

Now, the parties have spent some time arguing about alleged efficiencies in the 56.1 statements.  And the Court's preliminary view, after having spent some time reviewing them, is that neither side complied with Rule 56.1.  For example, defendants make much ado about the fact that the plaintiffs' response to Item Six in the defendants' 6.1 statements was not directly responded to.  That's true, but let's take a look at Item Six.  Item Six is, "the terms and conditions of employment for the union employees working at the hotel are governed by applicable union collective bargaining agreements, not the EmPact agreement."

Now, 56.1 is limited to statements of fact.  That's not a statement of fact, that's a statement of a legal conclusion.  It has no place in any proper 56.1 statement.  56.1 statements, as the local rule makes repeatedly clear, is limited to statements of material facts.  This might have been, in an appropriate time, a proper request to admit, but that's not what 56.1 is about.

So the question -- the right answer should have been, "we move to strike as improper."  But the answer that was given

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

SA-305

O964STAC

by plaintiff's counsel was to cite to another defendants' 30(b)(6) responses and that citation, ultimately, is the statement "whether all employees of the hotel had to sign the EmPact agreement."  And further, "union employees received the EmPact agreement but did not have to sign it."  That doesn't bear remotely and the question that was put.

Now, I could spend the next two hours -- as I had to last night -- going through the enumerable impropriates by both sides in their 56.1 statements.  A 56.1 statement is designed to help the Court and that is clearly not what happened here. But I'd rather deal with the legal issues *per se*.

By the way, just one little point for plaintiffs for future reference, in a huge number of your answers you begin your answer by saying "not relevant."  That's not part of a 56.1 statement at all.  I wish you guys had read the rules. The rule is that you either admit the factual statement, if a factual statement is made, which sometimes defendants did. Sometimes they combined three or four statements of fact in a single question.  I won't go on and on about the misconduct of the defendants.

But let's talk about just one more example for the plaintiffs.  You're supposed to give either admission or denial, and if it's a denial, you give record statements that show why you are denying and why it's a disputed issue and not an undisputed factual issue.  Usually you start off by saying,

O964STAC

"not relevant."  That's not a proper response.  That doesn't tell me whether you are admitting or denying.  If I disagree with you that it's irrelevant, and how could I tell that at this stage, in any event.  So what you are basically asking me is, Judge, do a lot more work.  And, oh, by the way, if you do find it's relevant, here's or response and most of the responses are nonresponsive.

Now, that we've had that pleasant chat, yes?

MR. BRUSTEIN:  Just an educational question, your Honor, so as not to anger you in the future --

THE COURT:  I'm not angry.  I'm just expressing my pleasure at having spent so many hours last night on something that is supposed to be helpful to the Court and proved to the completely unhelpful from both sides.

Yes?

MR. BRUSTEIN:  So as to avoid that again, your Honor, and I apologize for that, if we take issue with the materiality of a purported fact, is that something that --

THE COURT:  That's not what a 56.1 statement is about. You have three options:  You can admit, and a few times you did.  You can say "deny."  And sometimes you did that.  But then what you gave in many, many cases was not, in my view, raising a general dispute as to the fact, or, in a rare instance, although, unfortunately, it was not so rare in this case, where they've propounded an improper 56.1, like the

O964STAC

example I just gave where they are saying "admit a matter of law," even though the rule, on its face, is about material facts, then you can say "move to strike."  Those are the three options, and there are no others.

MR. BRUSTEIN:  Thank you, your Honor.

THE COURT:  All right.  Now, let's talk about the motions.  Let me hear first from counsel for the moving defendants.

MS. LUNDY:  Good morning, your Honor.  Kathryn Lundy on behalf of the Warner defendants in support of our motion summary judgment, despite plaintiffs' efforts to create triable issues of fact, this matter is ripe for adjudication on the three remaining claims against the Warner defendants.  The first two --

THE COURT:  So let me ask you this, if, let's assume for the sake of argument that the pandemic caused the layoffs and that you gave an adequate warning, those are all disputed, but I'm just asking you to assume that for the moment, but then, as I understand it, and correct me if I'm wrong, the further delay in reopening the hotel is because you're redoing the ball room and things like that.  Doesn't that require a new WARN statement?

MS. LUNDY:  No, your Honor, they all relate back to the COVID-19 pandemic.  The COVID-19 pandemic had considerable effects on the hospitality industry and the ability for a

SA-308

O964STAC

five-star hotel to open and operate profitably and safely.  And the continuation of the closure and the hotel's interest to ensure it can open profitably and safely under --

THE COURT:  Before the pandemic, it was operating profitably and safely, yes?

MS. LUNDY:  No.  Ms. Hwang testified that even prior to the pandemic they were having profitability issues with the hotel's operation.  And when you include and intervene COVID-19, and the impact that had --

THE COURT:  Maybe I'm missing your point.  If there had been no COVID-19, and the hotel had decided we've got to close down because we are unprofitable or we are going to close down temporarily because we think we can make it profitable, make some upgrades or whatever, then you would have to issue a WARN statement; correct?

MS. LUNDY:  If we were to close down the hotel to conduct renovations that would last more than six months, yes.  Then a WARN Act notice would be required.

THE COURT:  Okay.  So now instead the pandemic comes and that may be an independent reason for you closing down, you had a state of emergency and so forth.  The state of emergency is lifted, and you decide, well, we still can't reopen because we've got to deal with these profitability issues.  Why doesn't that require a new WARN statement?

MS. LUNDY:  Because it all relates back to the initial

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

O964STAC

closure.  The COVID-19 pandemic --

THE COURT:  I thought the initial closure in the WARN statement itself says it was because of the pandemic.

MS. LUNDY:  It does say because of the pandemic.  But what --

THE COURT:  Okay.  So now the pandemic is over, and if you were profitable and we are not doing repairs you could reopen, but now we have an independent reason to not reopen, but you don't give another WARN statement.

MS. LUNDY:  The WARN notice doesn't just identify COVID-19.  It identifies the impact that it had on the hotel's operation.  It specifically says -- it specifically relates to the impact COVID-19 had on the hotel's ability to operate.  And --

THE COURT:  Yeah, it's talking about COVID-19.

MS. LUNDY:  Right.

THE COURT:  And that's fine.  But I'm saying -- are you suggesting, for example, that after the pandemic was over and you then decided, you know, the pandemic gave us an opportunity to start upgrading the hotel.  Yes, it's going to take, hypothetically, another 20 years, so we won't issue any further WARN statement.  We'll just keep the hotel closed for 20 years because our initial statement, based expressly on the pandemic, is sufficient.  Is that what you are saying?

MS. LUNDY:  Yes, your Honor.  I'm saying that the

O964STAC

testimony and documents submitted in support of our motion demonstrate that the continued closure of the hotel and the hotel's effort to reopen safely and profitably all relate back to the impact COVID-19 had on the hotel.  The lengthy impact COVID had and the need to update and renovate the hotel all turns back to that initial event.  I don't believe a subsequent WARN Act notice was required.  Because as the evidence demonstrates, it all turns on that March 2020 timeframe.  And the requirement to undertake renovations to open the hotel safely and profitably once it's able to do so.

THE COURT:  Well --

MS. LUNDY:  If I may point out under the statute and regulation this not a new employment loss.  From the Hotel 57 Services' prospective, this is a continuation of their layoff that occurred beginning in March 2020.  This not a new event.  This all relates to the same temporary layoff that was going to be less than six months.  And once we determined it was going to be more than that timeframe triggering an employment loss under WARN, we issued the WARN Act promptly upon that understanding.  And nothing has changed since then.

THE COURT:  Well, I'm not sure there's any evidence one way or the other before me on this.  But my observation is that a great many hotels have reopened, but not this one.

MS. LUNDY:  Yes, your Honor.  But under the regulations it indicates that the timing of issuing a WARN Act

O964STAC

notice is based upon the employer's business judgment at the time, the best information it had available at the time. And it wasn't until --

THE COURT:  When did the -- it's the ballroom that's being renovated?  When did that start?

MS. LUNDY:  I don't know, your Honor.

THE COURT:  What, if anything, is in the record as to why you haven't reopened now that the pandemic is over by several years?

MS. LUNDY:  Yes, your Honor.  We have testimony by Ms. Cathy Hwang along with Ms. Ortiz all confirming that the hotel is going to reopen once it can do so safely and profitably.  And in connection with our motion, we also submitted a motion to take judicial notice of the hotel's website confirming the reopening date of fall of 2024.

THE COURT:  What's the safety issue?

MS. LUNDY:  The safety issue was very much related during the height of the pandemic.  And to be clear your Honor, the pandemic was designated as a national emergency until May of 2023.  So while it might feel like it's very much in hindsight --

THE COURT:  That's a fair point.  Are you asserting there was a safety issue before the pandemic?

MS. LUNDY:  No, your Honor.

THE COURT:  So it was the pandemic that was the safety

SA-312

O964STAC

issue?

MS. LUNDY:  Absolutely.

THE COURT:  And that's now out of the picture.

MS. LUNDY:  And that's why we are reopening.

THE COURT:  As I indicated, I think on the telephone call, I'm not holding my breath on that.

But I guess I'll rephrase the question, is there a material issue of fact of whether the failure to reopen in at least the year since the pandemic has been declared closed, so to speak, is due not to the reasons given in the original WARN statement but to other issues?  Is that a materially disputed fact?

I'll put it again, that was poorly phrased.

Forgetting about whether it's legally significant or not for the moment, is there, on this record, a materially disputed fact as to whether the continued failure of the hotel to reopen is due to things unrelated to the pandemic such as modifying the ballroom?

MS. LUNDY:  I don't believe so, Your Honor, from the perspective that Ms. Hwang and Ms. Ortiz confirmed that during the hotel's closure because of the COVID-19 pandemic they continued to conduct renovations at the hotel.  They continued to work with FSR International to ensure that they can reopen the hotel at a time that it would be profitable and safe.

But I think from the perspective of the WARN Act

O964STAC

notice, what the record demonstrates is when we issued this WARN Act notice, what we identified was, one, a concise statement explaining why we didn't issue it 60 or 90 days in advance of the pandemic. We simply were not aware in advance that the COVID-19 pandemic was going to occur. And once the hotel closed in March of 2020, we also didn't know that the length of this layoff was going to exceed six months, triggering an employment loss.

What our notice does identify is the fact that the WARN notice was delayed. It was delayed because of circumstances beyond our control, a business exception, and this layoff was going to be temporary. Albeit, that temporary layoff was much longer than anyone ever anticipated, but the substance of this WARN Act notice satisfies the requirements under the law and regulation. They were notified --

THE COURT: Again, and forgive me for coming back to the issue that I'm asking about, but, to be frank, I think it's the issue that most troubles me. Which is, assuming I'm going to hear from your adversary in a minute as to why he thinks your WARN notice was not timely, adequate, or whatever, but assuming he's wrong and everything you did in your original WARN notice was fine, nevertheless, does the continued delay in the reopening require a new WARN notice because the reason for the original WARN notice has now dissipated?

MS. LUNDY: Our position is it does not. The failure

O964STAC

to reopen in a particular time period, from our perspective, still relates back to COVID-19.  It doesn't necessitate a new WARN Act notice.  There is no change in the employment relationship here.  There is no new employment loss or intervening fact that separated that timeframe, that connection from the initial layoff to the present.  Regardless of however long it's been, the fact that we haven't reopened or the reasons we haven't reopened yet, doesn't change the fact they all relate back to COVID-19.

THE COURT:  That's why I asked whether it's a material issue.  I'll give you my hypo once again because I want to be sure I understand your response.  If, in my hypo, the hotel closed down because of COVID-19 and gave a proper WARN statement, and then it made the decision, okay, before we reopen, we're going to take advantage of this and do some major changes in our hotel, upgrade, and in my hypothetical, you know that the upgrades are going to take 20 years.  And do you then have to issue another WARN statement?  And I think you said, no, you don't.  And that's what's giving me pause.

MS. LUNDY:  I'm saying, "no, you don't" because it's still a temporary layoff.  The fact that the circumstances relating to why it's a temporary layoff may have changed in your hypothetical, we are talking about renovations now, it doesn't change the fact that it's still temporary.  This isn't a termination.  This remains a temporary layoff.  Again, a long

O964STAC

layoff but it still remains temporary.  The fact that the hotel, in your hypothetical, was using this time period to conduct renovations doesn't change the reality that the employment loss remains temporary.  And no additional notice is required.  Because this is a notice statute.  We are letting these folks know are you temporarily laid off.  This is not permanent.  And as your Honor knows, we have taken that position consistently throughout this matter.

THE COURT:  That's why I'm asking you about it because you have consistently taken that position.

All right.  I cut you off right at the beginning with my question, so go ahead with anything you want to say.

MS. LUNDY:  Thank you, your Honor.

I appreciate and understand the Court's perspective relative to the Rule 56 statements.  I won't belabor the point except refer the Court to our reply brief where we spent a considerable amount of space addressing plaintiff's response.  But I would like to point out one example and that example relates to Exhibit Y to Mr. Bromberg's declaration.  This email by Rudy Tauscher, and I'm happy to give the Court a copy if it would be helpful.

May I approach?

Your Honor, this is an email from Mr. Tauscher.  He was a former general manager of the hotel.  This email was used to deny 43 facts.  Putting aside the inadmissibility of this

O964STAC

email, since Mr. Tauscher wasn't deposed, didn't submit a declaration, but was merely attached to an attorney affirmation, the substance of this email has nothing to do with the material fact it purportedly contravenes. I give an example of our position Statement 117, which plaintiffs respond to at page 55. Our statement 117 relates to the Hotel 57 Services payment of $500 a week, pursuant to New York City local law. This email from Mr. Tauscher was used. First, plaintiffs denied relevance, which is not an appropriate response. But then they denied that the furlough was temporary because of this inadmissible email by Mr. Tauscher. Even a quick review of this email from Mr. Tauscher indicates that it has nothing to do with the New York local law payments but merely an internal communication with marketing, confirming that what the public should be aware of is that this hotel is not closing permanently. And we think this is pretty indicative of how the responses were used for a Rule 56 statement. And we believe it should require some scrutiny as the responses are reviewed.

But turning to the three remaining claims. The WARN Act claims, plaintiffs argue, and we spent a little bit of time on this just now, consecutive WARN Act notice are required every six months during this layoff. And that's simply not the law. And I haven't seen any citations that would support that legal theory.

O964STAC

They also argue that our August 5, 2020, WARN notice was untimely because COVID-19 and the layoff that followed was foreseeable.  The admissible evidence here at Statements 47 through 67, 73, 78 through 89, demonstrate that from March 2020 until the beginning of August 2020, we were in regular communications with our employees.  Like everyone around the world, we had no expectation or understanding about this unprecedented event.  When we closed on March 20 to outside guests we told everybody we would be back on April 15.  We believed that.  And when that date came and went, and we were housing first responders, that date changed again, and it changed again.  We were all hopeful we would be able to reopen to outside guests well before employment loss occurred under WARN.  But once August came and we recognized that COVID-19 wasn't changing any time soon, we realized we needed to issue our WARN notices, and we did so promptly.  Plaintiff had not submitted any evidence to contravene that reality that we acted within our business judgment and issued those WARN notice promptly upon our understanding that this was going to instigate an employment loss.

THE COURT:  I didn't see in your WARN Act notice any reference to so called bumping rights, which are one of the things that are supposed to be included.  Now, your adversary hasn't raised that, so they probably have been waived as an issue.  But just for my curiosity was that a conscious decision

O964STAC

or overlooked?

MS. LUNDY:  It was a conscious decision because these are not union employees and there is no such thing as bumping rights for nonunion employees.  As our Rule 56 statement identifies and even a review of this document, we followed, from our perspective to a T, what the regulations required regarding content.  Even if the Court determines, for example, that the address is not included here and therefore it violates the statute, the regulations are clear that minor or trivial changes don't impact the intent of the statute which is to provide notice.  We provided notice and we certainly kept in regular communications with our employees leading up to this very difficult decision.

Lastly, on WARN, plaintiffs argue with respect to Hotel 57 LLC and Time Warner Hotel and Resorts that they should also be held liable here under the concept of a single employer liability doctrine.  But the Second Circuit has identified that doctrine doesn't apply or only applies to subsidiaries or subcontractors of the employer.  The employer here is Hotel 57 Services LLC.  This is on our material statement 19, where we confirm those two entities are neither a subcontractor or a subsidiary of Hotel 57 services.  Similar to the example I gave previously, they cite to Ms. Hwang's testimony, but her testimony has nothing to do on that point.  Even putting aside considerations of the substance of our WARN Act notice, we

SA-319

O964STAC

believe that summary judgement is still warranted relevant to those two Warner defendants and that should be granted.

Lastly, on the breach of contract claim against Hotel 57 Services LLC the signatory to the EmPact agreement.

If I may, your Honor, may I approach and provide you a copy of those relevant pages of EmPact?

THE COURT:  Sure.

MS. LUNDY:  The alleged breach of contract here relates to the no-fault separation pay under the EmPact agreement.  And that payment is required in two circumstances, where there is a termination from no fault or permanent layoff with no right of recall.  The admissible evidence here demonstrates that not only were these employees not terminated for no fault, but they continued to retain the right to recall and the hotel is in the process of issues those recalls to the hotel.  In response, plaintiffs continue to point to this town hall meeting that occurred on June 25, 2021, claiming that it was at that point, in that meeting, they were terminated.

Now, the transcription of that meeting is inadmissible.  That's in Ms. Ortiz's transcript.  Let's put that aside.  Even if the Court were to consider this inadmissible transcription, what you won't see is any employee being told that they were terminated, anyone being told the employment relationship is changing.  The only substantive point on the employment relationship that was relayed to

O964STAC

employees at that point was if you resign from your employment, you will not be entitled to no-fault separation pay.

During Ms. Ivey's deposition, one of the plaintiffs, she confirmed that after that meeting, on the very same day, she received a letter. And in that letter she was told that the hotel was committed to recalling her to the hotel. She also confirmed that after that town hall meeting she never received a notice of termination. There is simply no evidence to support the idea that they were terminated during that meeting, not in the transcription, not even by plaintiff's testimony. Their subjective belief, their self-serving conclusion that they were is simply not supported by the evidence.

And with respect to recall rights, we have consistently said and maintained that they have that right. So even if the Court were to say this layoff is more than six months, it's a permanent layoff, okay, but that doesn't negate the fact that they have retained the right to recall. And the hotel will be exercising that as we reopen the hotel in the next coming months.

And even if the Court were to say, you know what, there were questions of fact about whether or not these employees were terminated for no fault or maybe they do or don't have rights of recall, the fact remains that the no-fault separation pay is not required in instances where the layoff is

SA-321

O964STAC

due to a national emergency. And as we discussed already today, COVID-19 was designated as national emergency from March 13, 2020, through May of 2023. So if we were to believe that these employees were terminated on June 25, 2021, COVID-19 was still a national emergency. When they initially laid off it was national emergency. They are still not entitled to the no-fault separation payment, pursuant to the terms of this contract.

THE COURT: Thank you so much.

Let me hear from -- I'm sorry, yes, go ahead.

MR. WAGNER: Good morning, Paul Wagner for FSR. I'm going to focus primarily on the claims against my client and not get into substantive arguments with regard to the WARN notice.

I would like to address your hypothetical at the outset, if I may. In your hypothetical, our perspective would be there would be no new WARN notice necessary. Certainly, a moral obligation to keep employees that are still able to be recalled and being told they're furloughed, to tell them what is going on and, in fact, the record is replete with those communications saying, we are still staying closed, we're still renovating.

And by the way, the real situation post COVID, which is still playing out across America and in New York City, several hotels closed due to bankruptcy were purchased as a

O964STAC

distressed asset and are opening up as we speak and into the future with a new owner and a new operator.  Would that require a new WARN notice?  We say no.

So I think your hypothetical is actually a great one. The answer is, it's on notice because it's putting you on notice that you suffered, pursuant to the WARN law, an employment loss because you layoff is going to exceed six months.  Hard stop.  Now, the fact that the record is replete with communications of why the layoff was continuing, that satisfies the moral obligations.

Do you want me to go on, or do you have any questions?

THE COURT:  No, are you prepared to send your bill to the codefendants' counsel for a better answer to my question. Anyway, go ahead.

MR. WAGNER:  With regard to FSR, your Honor, we should be dismissed from this case.  We are not the employer for Warner under the Guippone case.  Nor are we in privity contract with any of the plaintiffs or the class members.

On that first issue of not being the employer, FSR is under the Guippone case, plaintiffs have argued that we come under the prong of *de facto* exercise of control.  There is simply no question of material fact in the record that FSR exercised *de facto* control.  There is some evidence that FSR consulted with the employer, Hotel 57 Services LLC, had discussions and knew about the employer's decision with regard

SA-323

O964STAC

to the content and the timing of the WARN notice.  But there is no evidence that they exercised *de facto* control.  And Guippone does not say that *de facto* influence or consultation is enough. It has to be an exercise of control.  It has to be dominion and denomination of that decision.  That evidence is completely missing.

And keep in mind, the structure of this hotel operations is that the Hotel 57 Services LLC has no corporate relationship to FSR whatsoever.  There is no common ownership. There is no common board of directors or officers.  And more importantly, all of the decisions made with regard to the alleged liability in this case, i.e. the content and the timing of the WARN notices, the evidence shows consistently that those decisions were made by employees of Hotel 57 Services LLC --

THE COURT:  If I find that the WARN notice was adequate and proper, I don't reach this whole single employer business, do I?

MR. WAGNER:  Absolutely agree, yes.

And by the way, Guippone says whether the parent has specifically directed the allegedly illegal employment practices that forms the basis of the litigation.  It has to direct.  It can't simply know about it and say, okay, we thank you for advising us.  On the contract, there is simply no privity of contract.  Now, plaintiffs make much of -- and I would too if I were arguing in their position -- that the

O964STAC

EmPact document --

THE COURT:  Are you going to send them a bill too?

MR. WAGNER:  I would like to with your permission.

-- replete with a reference to the brand, Four Seasons.  The critical piece to the contract, however, is the signature page in the preamble where it says, "Hotel 57 Services LLC (hereinafter referred to as Four Seasons Hotel New York)"  End of story, hard stop.  There is just simply no privity of contract here.  So when you take the lack of a single employer with regard to either WARN or the decision not to pay the severance and the lack of privity of contract, FSR should be out of the case.  Thank you, your Honor.

THE COURT:  Thank you very much.

All right.  Now, I will hear from plaintiffs' counsel.

MR. BRUSTEIN:  Thank you, your Honor.  Would you like me to address the motion directly or start with one and turn to the next?

THE COURT:  I think collectively, but let me put a few questions just of things on my mind.

As I understand your argument about the timing of the WARN notice, because, in your view, the WARN notice failed to provide notice 90 days before the furloughs began.  But the statute says and the regs say that -- and by the way, it's 60 days under federal law, 90 days under state law.  It says, "an employer may order a mass layoff before the conclusion of the

O964STAC

60-day period."  This is the federal law.  "If the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required."  And similarly the New York WARN Act says that there is an exception to, in their case, the 90-day notice if the mass layoff was caused by business circumstances that were not foreseeable when the 90-day notice would have been required.

Now, in this situation, it is, I believe, undisputed that the pandemic was only declared a federal and state emergency in March 2022.  I could probably take judicial notice of that fact.  So why wasn't this notice timely?

MR. BRUSTEIN:  Thank you, your Honor.  And just to clarify, we are not claiming that notice needed to be given 60 days before the layoff began in March of 2020.

THE COURT:  Okay.

MR. BRUSTEIN:  The law is 60 days, and for simplicity, I'm just going to say 60 even though under New York --

THE COURT:  Yeah.

MR. BRUSTEIN:  However, it's 60 or as soon as it became reasonable to expect.

The union was notified in March of 2020.  It's reasonable to question, were they thinking at that time of sending a notice to the nonunion employees about the WARN Act?  We don't need to question that because we know the answer is

O964STAC

yes.  In fact, Exhibit Q to the Bromberg declaration is a draft WARN notice, dated March 24, 2020.

Now, the Warner defendants in their opposition have claimed that this is not admissible because we haven't cited to laying the proper foundation.  Even though it's a document they themselves produced in discovery, and courts have consistently found that it's improper to question the authenticity of your own documents.  I could cite the matter if necessary, but I believe it's clear that their draft WARN notice is admissible. In their draft WARN notice dated March 21, 2020, they said the layoff would start on or about March 21st, 2020, Four Seasons Hotels New York intend this layoff to be temporarily.  However, given the unknown certainty surrounding COVID, it's possible this layoff could become permanent.

Our contention is not that in January of 2020 they needed to provide notice, but when they drafted the notice in March of 2020, I think it's a reasonable question for a jury to decide, if at that point they should have sent the notice, as opposed to on August 5, 2020.

Additionally, when you compare what was drafted on March 24, 2020, as a WARN notice versus what was sent out on August 5, 2020, it's clear less information was provided in the August 5 communication than in the March 24, 2020, draft WARN notice.  The defendants, both of them --

THE COURT:  I'm not sure what the relevance of that

O964STAC

is.  The question is whether the notice they did give was adequate, not whether it might have been even better because they had an earlier draft that, in your view, was better.

MR. BRUSTEIN:  Certainly.  So for one, they don't talk about the departments and the positions that are being eliminated, which is required.  Two, they don't provide additional information explaining their delays from the draft in March 24, 2020, to August 5, 2020, which I do think is entirely relevant.  If between March 24 when they drafted it and August 5 when they sent a different communication, the circumstances had changed, that created a basis for them to say, now we know that should have been included.

Now, much ado has been made about the fact that we have repeatedly cited to an email from the hotel manager at the time, Rudy Tauscher, to oppose their repeated referring to the closure as temporary.  This, again, is another document produced by defendants.  But as of March 19, 2020, the hotel manager -- and this is Exhibit Y to the Bromberg declaration.

THE COURT:  I'm looking at it.

MR. BRUSTEIN:  It says because of legal issues, please use term temporary closing at all times and any communications.  This can should, never be misconstrued as a, quote, permanent closure.

We are more than four and a half years down the road, and they are still not calling it permanent.  I think that's a

O964STAC

reasonable question for a jury to decide whether on March 19, 2020, there were legal reasons they refused to call it what it is or not.

Now --

THE COURT:  A bunch of that email is -- none of it says, of course, that there is going to be a permanent shut down.  It says we don't want it misconstrued as a permanent shut down.  But moreover they go on to say, "these are extremely challenging unprecedented times, but we're going to get through it."  And what could that mean other than they are still hoping to reopen?

MR. BRUSTEIN:  Well, the question is whether they are hoping to reopen within six months or whether at that point, as they seem to indicate five days later in the draft WARN notice, that they knew it might last for six months.  Because thinking back to that time, which I know it's years later, people didn't know what the future was going to hold.  And so it was reasonable at that point to think is New York City going to bounce back?  Is the hotel going to reopen?  Because there are bodies lined up in the street.  So it was unprecedented.  We are not denying that in March of 2020 it was unimaginable. What we're arguing is the fact that they had an obligation, which they readily admitted with their notice to the union members to notify the non-union members.  The purpose of WARN is, as it's aptly titled, to warn.  It's to warn employees

O964STAC

about a loss of income.  Because six months without an income is important to a lot of people.  So they need to be able to make preparations.  That's why there are portions of the statute that deal with job training, being able to look for new employment, to figure out how you are going to feed your family in the months, and in some cases, the years ahead.  And so, once it reaches six months, the legislatures have decided, that's a job loss.  You can't say it's temporary after six months because that's a long time to be without.

THE COURT:  Okay.  So I did want to -- assuming I agree with you then we don't need to reach my hypothetical, but if I disagree with you, I was asking your adversary whether if the unforeseen circumstances that caused you to close down and issue the WARN statement that you do are now no longer operative, but you're still not reopening, do you have to issue a new WARN statement saying the reason we are not reopening is X and we are warning you that it could take a long time.  And your adversary said no, you don't have to do that because it all ultimately ties back, in some sense, to the unforeseen circumstances.  But in my hypo that wasn't true.  My hypo was premised on that there was a new reason you now wanted to upgrade, namely, increase profitability.  She says that was always there but what the WARN statement refers is the COVID-19 problem.

But on the other hand, I didn't see in the statute any

SA-330

O964STAC

addressing of this need to issue a new statement.  So what about that?

MR. BRUSTEIN:  I'm going to address that first.  But I don't want to concede the fact that, one, they had to close --

THE COURT:  I understand.  You know, I understand that there are a lot of things you want to cover, and you will be given that opportunity.  But I was hoping to get an answer to my question.

MR. BRUSTEIN:  That's why I said I will cover that first, but I do want to touch on the other things.

THE COURT:  Go ahead.

MR. BRUSTEIN:  We do believe that multiple WARN notices would be required.  Now, there is nothing in the statute that explicitly says that an employer who has an employee suffer a job loss under the WARN Act can violate the statute again.  But that, I would argue or submit, is because statutes don't need to say that you can violate a statute more than once.

Putting it into criminal context, if someone steals a car, they're caught and the car is returned to the owner, and the car thief goes back and steals the car a second time, no one would argue you already stole the car the first time, we can't arrest you for a second violation of stealing that same car from that same owner.

Here, the reason there is no cause law is what the

O964STAC

defendants have done, we would submit, was unimaginable.  When someone has been out of work for more than six months, the fights in court have been about whether or not the notice was proper, whether they owe them the WARN notice, not about the fact that they are on a temporary 20-year layoff when they are eventually on their death beds can be recalled back to work.  So the situation is after six months there is no disputing under the WARN Act it's a job loss.  The question is:  After they suffered that job loss, is the WARN Act no longer applicable?  Does the employer no longer have to provide anything to the people that they are not saying don't work for them because they suffered the job loss --

THE COURT:  Assuming you are right, I'm making no decision today, this is just to put my next question -- so assuming, for the sake of argument, that you are right, where have you made that claim either in your complaint or in your briefing?

MR. BRUSTEIN:  In the complaint, which I don't have in front of me, we do talk about --

THE COURT:  You don't keep it under your pillow?

MR. BROMBERG:  I keep it under my pillow.

THE COURT:  You left it there this morning.

MR. BRUSTEIN:  In the complaint we do talk about the fact that after six months they then had continuing obligations that renewed every time they knew it was reasonable that it

O964STAC

would extend another six months.  And so what we argued is that that obligation continued up until June 25, 2021, when our contention is they terminated the employment of the employees under the EmPact agreement, therefore serving that obligation.

THE COURT:  When you talk about the EmPact agreement, your adversary was just referred to the fact that that agreement has a national emergency provision.  Why isn't that operable here?

MR. BRUSTEIN:  I will answer that but I want to answer the last question in terms of where it is in our brief.

THE COURT:  Okay.

MR. BRUSTEIN:  In opposition to the Warner defendant's motion, we layout -- I apologize.  I got ahead of myself.  I'm trying to juggle.

THE COURT:  Let me just say to counsel in the 11:00 matter, obviously this matter is going to go on for another at least 15 minutes, probably more.  So you are free to wander in and out, just be back by 11:30.  Hopefully, we will reach you soon after that.

Go ahead, Counsel.

MR. BRUSTEIN:  Page 18 of our opposition to the Warner defendants, under the subheading the Warner defendants repeated representation that plaintiff still maintained -- no, sorry, that's actually the question you just asked.  I'll come back to that --

O964STAC

THE COURT:  Or I should say, Counsel in the matter, you are welcome to stay here, and if you are a gluten for punishment, that's what you should do.

That's all right, Counsel, why don't you have your colleague look for that and you can go on.

MR. BRUSTEIN:  Yes, your Honor.

With respect to the national emergency, the EmPact agreement does not say if there is a national emergency you can just fire people, and you don't have to pay them no-fault separation pay.  It's much more specific in terms of what the obligations for getting out of the no-fault separation pay are.  And it specifically says, and this is on page 58, "I will not be entitled to no-fault separation pay if my permanent layoff results from" -- one of them listed is national emergencies "and any other cause beyond control of the Four Seasons."

THE COURT:  Yeah.

MR. BRUSTEIN:  The national emergency was not the basis for the terminations.  In fact, sitting here today, counsel has argued they are still employed.  They argued in their briefs to this Court that their benefits are intact, that she haven't lost seniority.  During the June --

THE COURT:  No, I agree, this is an alternative argument by them.  But nevertheless, they make this argument that if the Court doesn't accept their other arguments on this point, then they still are entitled to judgement for this on

O964STAC

the national emergency provision.

MR. BRUSTEIN:  So on June 25, 2021, at the meeting they did not cite COVID-19 as the reason for the hotel being closed.  Instead, they said it was because they were going to do renovations.  And they said that those renovations were going to last for more than a year.

Now, I'm not sure why the defendants think that the transcript in Ms. Ortiz's deposition of that June 25, 2021, meeting are inadmissible --

THE COURT:  Maybe I'm misunderstanding, what is the evidence in the record that the hotel closed for any reason other than the pandemic?

MR. BRUSTEIN:  So in terms of that, I would direct your Honor to the testimony of Antoine Chahwan, who testified in his deposition that he believed in the summer of 2020 the hotel could safely reopen.  And so for one, all of the orders about closures had exceptions to hotels.  So hotels did not need to shut down, which is evidenced by the fact that the hotel was able to open to house medical personnel.  Four Seasons FSR came up with a safety plan to be able to safely reopen the hotel to guests.  The Warner defendants opposed that plan.  They didn't want to reopen.  There's been litigation, arbitration, it's been secret, so we don't have access to that information, between the defendants in this case about --

THE COURT:  The fact that they made an effort to keep

O964STAC

going for a while doesn't mean that the closure wasn't the result of something beyond their control, which was the pandemic. And that's what the provision in the contract says, employees are not entitled to no-fault separation pay if their permanent layoff results from national emergencies or any other cause beyond the control of Four Seasons.

So you are not contesting, are you, that the national emergency caused by the pandemic was under the control of the Four Seasons?

MR. BRUSTEIN: No. We are contesting the idea that the layoffs and the termination of the employees resulted from the pandemic. Which the fact that the defendants are here arguing that they still hadn't terminated the employees, speak to that. They are claiming that. And I think that it's disingenuous to the employees to say you have a no-fault separation pay that for people who have worked for dozens of years would pay them six months' salary. You have to wait for the hotel to reopen, extending it month after month, saying it's going to reopen soon and then four and a half, five years later say, okay, we lost in court, so we are going to use this exception to say the national emergency -- even though we have been maintaining you haven't been fired this whole time, now we are firing you retroactively because of national emergency. And that's the reasons the defendants are in this situation. Because they didn't want to pay the no-fault separation pay, so

O964STAC

they couldn't admit that it was a permanent layoff, that it was a termination.  They didn't want to have to pay their employees for no-fault layoff.

I have to tell you if on March 24 they sent the WARN notice and they said to everyone, look, it's a national emergency, we've got to fire you.  We apologize.  You are not entitled to no-fault separation pay, it's a very different situation, we wouldn't be here that.  Because that, according to the EmPact agreement, makes sense.  But they didn't do that.  They've taken the opposite position.  We don't have to give multiple WARN notices.  We didn't even have to tell you we were doing it under WARN.  We could wait five months.  We could tell you stick around for your no-fault separation pay and try to bleed these people dry.  That's what we are dealing with, companies that have secretly had conversations, had an arbitration about breaking up the hotel, renegotiating deals, telling their employees, if you leave and get another job, you lose this benefit.  But now they want to stand in court and say that benefit never existed, that's just shameful, your Honor.

Now, the defendants have argued the renovations of the hotel were an ongoing thing but I just want to read to you one section of the June 25, 2021, meeting where they contend that it's clear the employees were terminated, and that's on page 257 of the Ortiz transcript -- I'm sorry, 250. Mr. Galasso is in charge of the renovations for the hotel.  And

O964STAC

one of the other people from the hotel says -- and his first name is Frank, by the way.  This is line 21, "Sorry, Frank, just so I'm not sure if I'm reading it right, depending on the types of projects that they are deciding to do, is there anything concrete as far as these projects?  What are we proceeding with at this point?"

And his response is:  "As of today, since we are all just learning this, I don't have an exact timeline of which project will start when.  Once we get there, you know, we can definitely share that with the team."  On June 25, 2021, the hotel announced to its nonunion employees, we have been closed for almost a year and a half, we no longer are closed because of the pandemic, we are now going to start renovations.  We don't know when it's going to be.  We don't know what we are going to renovate.  We'll let you know when we know.

THE COURT:  Okay.  I want to give you all the time you need to cover everything, but I'm a little concerned because I have, as you know, another matter that I scheduled, it's already running a little late.  So just keep that in mind, but anything else you want to address is fine.

MR. BRUSTEIN:  Absolutely, your Honor.  I want to first address the FSR defendant.

THE COURT:  I have a question about that.  This is not what you were about to address, and I want to hear what you want to address, but unless I missed it, they did not move to

O964STAC

dismiss the -- some of throw-in claims like breach of the covenant of good faith and fair dealing, promissory estoppel, things like that. But do you agree that I should, nevertheless, apply the same standard to those that I applied earlier to the motion that was just made by the other defendants to dismiss those?

MR. BRUSTEIN: Yes, and just with the clarification that I believe with the breach of covenant that was incorporated into the breach of contract claim --

THE COURT: Yes.

MR. BRUSTEIN: -- outright dismissal, yes.

And we are certainly not going to try to make arguments that we don't think have merit. Which is why we didn't raise the bumping rights in our opposition.

THE COURT: I thought this was a no-brainer. I just wanted to be sure.

MR. BRUSTEIN: In our opposition to FSR, we've alleged that FSR is a signatory to EmPact. They didn't address it. The EmPact agreement, this specifically has on page 5 a welcome letter signed by the CEO, the president and chief executive officer of Four Seasons Hotel and Resorts, J. Allen Smith, welcoming the employees to an elite group of more than 48,000 employees worldwide. It is, at a minimum, a question of fact whether this establishes that FSR is a party to the contract.

Now, Mr. Chahwan who is not an employee of the hotel,

O964STAC

testified to the fact that he himself had signed an EmPact agreement that Four Seasons has obligations to its employees. And I know there is cute stuff going on with whether it's Four Seasons or FSR or Four Seasons Hotels and Resorts, but there is no mistaking that Mr. Chahwan is talking about FSR International, Four Seasons, not a hotel.  This contract is not a stand-alone document.

Now, in the EmPact agreement, they very cleverly at the end of it say, and this is, you know, page 60 where they attempt to define Hotel 57 Services LLC as Four Seasons Hotel New York.  And it says, "hereinafter referred to" not herein before, hereinafter.

If you continue reading, the last line of that paragraph says, "I acknowledge the conditions contained in EmPact may be modified in writing from time to time by the Four Seasons Hotel New York as contemplated on page 2 of this contract."  EmPact is not page 60 of 60.  It's a 61-page contract.

Included in that is a signature by the CEO of FSR welcoming the people who signed the EmPact, which on page 61 there's only one signature line, an employee signature.  So the idea that Hotel 57 Services LLC is a signatory based on this standalone one page isn't even accurate.

Now, the hotel manager does sign a welcome letter on the page right after FSR and that's on page 6 of the EmPact

O964STAC

agreement.  But he signs it as the general manager and doesn't even have the title of his company of Hotel 57 Services.  It just says "general manager."  We attempted in our inartful counterstatement, 56.1 statement, to identify material facts they we believe shouldn't be disputed but clearly have been throughout this case.

And I certainly apologize for the length of those facts, but it's because we believe those facts are all relevant and should be before a jury to decide whether a CEO of a company signing a welcome letter in a contract, welcoming employees to a team of 48,000 worldwide gives the correct impression that they are employees not just of the hotel, not just of Hotel 57 Services, which appears for the first time and last time of page 61 of a long document, which talk about missing the fine print to try to and snooker someone.  But the fact of the matter is Your Honor, this is replete with references to Four Seasons, the brand, the international company, not just this local hotel.  The reason they are able to attract employees is as Mr. Warner testified, Four Seasons is the one that has these obligations.  In his testimony, he says there are Four Seasons employees, not Time Warner Hotel and Resorts employees.  And the management contracts that are very clearly written that they are under the purview of Four Seasons management and treatment, and I don't touch them.

His right-hand woman, Cathy Hwang also testified about

O964STAC

the fact that Rudy, meaning the general manager was "a Four Seasons employee." He reported to Four Seasons. Elizabeth Ortiz, the director of people and culture, she testified that she had a dotted line to Antoine Chahwan of FSR.

Respectfully, we submit that there are numerous basis that a jury could find FSR is the employer, both under the EmPact agreement and under a single employer analysis with respect to the fact they had control, shared operations, the HMA agreement, the fact that they all worked together. Ironically, in opposition, the Warner defendants say, only a subcontract could be considered a single employer. We don't agree with that there, and we don't believe the case law certainly doesn't agree with it either, but that's what FSR is, so it's ironic. And that's the problem here with each one of the defendants trying to remove themselves. As Cathy Hwang testified, it's a complicated structure. They have set up company after company after company to avoid liability.

One of the things that the Warner defendants took issue in our counterstatement was the fact that we alleged that Mr. Warner did not have his own personal bank accounts. Why would we allege that? Are we trying to attack him? Are we going after him? No. Because it's relevant to the single employer test. One of the factors is dependency of operations. It deals with whether or not the companies are commingling funds. Mr. Warner has been convicted of using companies to

O964STAC

avoid his financial obligations.  The fact of the matter is, in our opposition papers for both of the defendants, we go step by step through each one of the elements to address it.

Now, one of the points that wasn't raised by the Warner defendants that I just want to touch on briefly is the idea that our clients did not comply with care.  And so because of that they are precluded from bringing forth claims under no-fault separation pay.

And I'm just going to highlight one of the points there, although, I do refer back to the brief for other references.  In the no-fault separation pay it says, "by accepting no-fault separation pay, I'm acknowledging my termination was no fault, and I'm not entitled to challenge my termination through the mediation, arbitration provisions of care."  Care is not just Step Six.  It's Step One through Six, which deals with different ways that you can mediate internally with a supervisor, with a hotel manager -- the hotel manager ceased existing, so that wasn't even a possibility.  And Ms. Ortiz even admitted that she didn't consider complaints about no-fault separation pay to have merit, to be worth investigating because they considered it temporary.  And so any complaints that she received, she didn't even consider to be a complaint.  So to the extent the Court even found the provisions of care applied to the no-fault separation pay section, which we submit they don't, their ability to do so was

O964STAC

certainly frustrated.

And one further point on care, if you look at the last page of the EmPact agreement it says, I understand if I wish it exercise my right to opt out of mediation arbitration provisions of Care, I must do so in one of the following ways. It's not talking about just Step Six. It's a package deal. You are either party of Care or you are not. As this Court already decide and the Second Circuit affirmed, the no-fault separation pay is not part of the mediation arbitration Care section. So we submit that it certainly is in keeping for our clients to not have had to go through the steps which weren't even possible at that time anyway.

THE COURT: I'm now going to have to unfortunately have to put a time limit on you. I'll give you another five minutes.

MR. BRUSTEIN: Yes, your Honor.

With respect to the adequacy of the WARN notice, your Honor, we submit that the cases is cited by the Warner defendants and FSR are in opposite. Those cases dealt with minor deficiencies in the notice while still providing advanced notice. We are not even arguing that 60 days in advance they should have given notice of the layoffs. We are arguing -- and we submit it's reasonable that at the time they notified the union, at the time they drafted the notices to go out to the nonunion, they should have notified them. The purpose of WARN

O964STAC

is so that people can make, not business judgments, but personal judgments about their own lives.  And we believe that whether it's the no-fault separation pay or the WARN Act violations, those are things that a jury should get to decide the reasonableness of the actions by the defendants and what happened here.  We believe that the defendants have failed to show that there are any material issues not in dispute about the business judgment, that's something that is going to take a lengthy analysis, as evidence by the number of paragraphs they put forth in support to see whether FSR's contention that the hotel could have opened in the summer of 2020, thereby hiring these people back to work, mere months after the initial furloughs or layoffs made it necessary to terminate their employment and keep them out of work for this many years.

For those reasons, we submit they failed to meet their burden.

THE COURT:  Thank you very much.

Let me hear from both counsel for the defendants.

MR. BRUSTEIN:  Your Honor, may I have one second to tell you the page number.

THE COURT:  Oh, yes.  Thank you for reminding me of that.

MR. BRUSTEIN:  It is pages 10 to 12 of the Warren opposition where we address the multiple violation of the WARN Act.  Thank you.

O964STAC

THE COURT:  All right.

MS. LUNDY:  I'll be very brief, your Honor.

Plaintiff spent quite a bit of time discussing notices to the union employees back in March and referred to a draft notice that was prepared for the nonunion employees at Exhibit Q. I asked the Court to scrutinize these exhibits, especially Exhibit Q.  If you look at the fifth paragraph, this is a union draft notice.  It was not a nonunion draft notice.

But what's even more important about that time period and why the union employees received notice at that time is clarified by Ms. Ortiz in her transcript at page 96, lines 6 through 14.  Their collective bargaining agreement had a two-week notice requirement.  And essentially the hotel was killing two birds with one stone, satisfying their obligations under the CBA and issued a WARN Act notice.

But if you look at Exhibit M to Mr. Bromberg's declaration, what you will see the intention at that time, these union folks would only be laid off for one month.  It was not anticipated that this was going to be an employment loss longer than six months at that time.

Also, within a matter of days the hotel did reopen. On April 2nd the hotel reopened and brought back many employees to house those first responders.  So the concept that this was foreseeable in March, that we anticipated this lasting more than six months is simply not in the record, that did not

O964STAC

happen.

Secondly, Mr. Brustein confirmed that there is nothing in the statute that says multiple WARN Act notices are required.  That's correct, this is a notice requirement, not multiple WARN notice requirements, and that's simply not the law or the requirement.  We satisfied that burden.

And with respect to the question of what in the record shows that the hotel closed for any other reason other than COVID-19 and its impact on the hotel's ability to operate.  There is none.  And I refer the Court to Statements 89 and 91.  COVID-19 had a long-term impact on the hotel and its ability to operate profitably.  We are in the process of reopening.

And finally, these employees were not hurt.  They received their notices promptly upon the foreseeability of this constituting an employment loss, much longer than they anticipated, but they are going to be recalled.  And even during this long duration of separation of their layoff, many employees have been paid $500 a week voluntarily.  They accrued seniority.  We appreciate these employees and look forward welcoming them back to the hotel.

For all the reasons I discussed today, your Honor we ask that the Warner defendants motion be granted.  Thank you.

THE COURT:  Thank you.

MR. WAGNER:  Even more briefly, your Honor, two points from FSR.  Point Number One, we did move to dismiss those

O964STAC

ancillary claims.

THE COURT: I must have missed that. Where --

MR. WAGNER: Pages 19 through 23 in the opening brief. We just didn't mention them in the reply because the plaintiffs didn't respond.

THE COURT: I don't think there is an issue there, given the response from plaintiffs, but I just wanted to make sure.

MR. WAGNER: Finally, I want to take issue with allegation that this is some sort of a corporate shell game. In the hotel industry, the structure of an owner/operator under a hotel management agreement and an employment entity wholly owned by the owner is the typical arrangement. The reason for that is quite simple, the owner owns the asset. The owner indemnifies all liabilities arising from the operations, including employment. They want final say through that employment entity. It's very simply. It's not a shell game, it's a business reality.

Thank you, your Honor. We request that the Court consider our summary judgment motion.

THE COURT: Thank you. I had one more question for defense counsel, and this may be either one of you. There was an objection to some of the evidence that plaintiffs are relying on the grounds that they were -- they had not satisfied authenticity. And the plaintiffs respond that these were

O964STAC

documents they received from you, and typically quoting your employees or quoting a document that was from your files or whatever, why doesn't that satisfy authenticity?

MR. WAGNER:  Without understanding the specific documents, your Honor, perhaps Ms. Lundy is better equipped to respond that.

THE COURT:  This might be more upper alley, yes.

MS. LUNDY:  Yes, your Honor.  While they were produced, and there was present opportunity to ask questions of authenticity during our corporate representatives' deposition or even of Ms. Ortiz, relative to the documents that she identified and produced, those questions were never asked. There was not a stipulation made relative to authenticity and that would be the basis of our position in our papers today.

THE COURT:  But they're saying that if you're asked for let me put it in terms of a hypothetical, all documents in Four Seasons' possession relating to Four Seasons' discussion of X, and you produced a bunch of documents, isn't that a combination of the question asked and the response in documents given, in effect a concession of authenticity?

MS. LUNDY:  I would agree, your Honor.  But I think here it's a little bit more intricate because of all the different entities that are named and have been producing documents and where they have been maintained.

THE COURT:  Well, I understand the arguments have been

O964STAC

made about distinction between these entities, but they are all Four Seasons related entities, yes?

MS. LUNDY:  They are all related.  The documents produced are in connection with the operation of the hotel, yes.

THE COURT:  All right.  Thank you.

MS. LUNDY:  Thank you.

THE COURT:  I thank all counsel very much.

And I want to mention a couple things in terms of schedule.  First, I will get you a bottom line on this motion two weeks from today.  That won't be the full opinion, that will follow in due course.  You'll need to have that to know where we are going or not going, as the case may be.

Second, everything is stayed for that period of two weeks.  There is the pending motion regarding the notice.  I have some substantial questions about the proposed notice, but we are going to put that on hold until I decide the summary judgment motions.  And then if we go forward, or to the extent we can go forward, then I will convene another argument.  This one might be able to be done by phone on the notice issues so we can resolve those quickly.  But I want to resolve these motions first.

So I think that covers everything that was open. Anything about scheduling anyone wanted to know?  Okay.  Good. Thanks so much.

O964STAC

(Adjourned.  Time noted 11:45 a.m.)

(Time noted: 4:33 p.m. via teleconference; appearances noted)

THE COURT:  Thank you for calling in.  I missed you so much I couldn't go even a few hours without wanting to talk to you again.

You saw my order, what I wanted to mainly discuss. But just so that I don't forget it, there was one more minor issue I wanted to bring up so I understand what the parties' positions are.  And this was one that I don't think was briefed by either side.  So to the extent it's an issue at all, it may have been waived.  But I asked counsel for the Warner defendants about bumping rights.  And counsel said, well, that only applies to unions.  But I'm looking at the statute, and the statute that governs WARN notices, and it says, "notice to each affected employee who does not have a representative,"  in other words, nonunion people, "is to be written in language understandable to the employees, and is to contain --" and then there are four things that are required to be contained.

And Number Three is "an indication whether or not bumping rights exist."  So the statute seems to say on its face that even if there are no bumping rights, you have to tell that to the nonunion employee.  So what about that?

MS. LUNDY:  This is Kathryn Lundy for the Warner defendants.

O964STAC

I appreciate the question.  There is case law on this matter, and I apologize to not have it available for this telephonic hearing.

THE COURT:  I did not indicate this was going to be on the hearing so there's no reason you should feel the need to apologize.  Go ahead.

MS. LUNDY:  In that case, it specifically says that the fact that the WARN notice that was issued to a nonunion employee didn't contain reference to that bumping rights was excusable because it simply didn't apply.

THE COURT:  In any event, plaintiff's counsel did not raise this in their briefing, so I think the issue is, if it's an issue at all, it has been waived.  But I just wanted to make sure the record was clear on this.

So let's turn to what this call is about.  So it seems to me that the resolution of the motions for summary judgment may be impacted by whether or not the Warner defendants, let's see, I have a typo, apparently, in my order.  But in any event, whether the Warner defendants were required to provide additional notice if any meaningful delay that normally would trigger the issuing of a WARN notice required a new notice if the original reason for the delay had disappeared.

So my question -- I'm not deciding that on this call -- my question for this call is, first, whether we need any discovery on this issue or whether the parties think it is

O964STAC

been the subject of sufficient discovery and no more is needed. And if anyone thinks further discovery is needed, what discovery do you want.

So let me stop there before I go on to the other questions and see what your position is on that.

What's plaintiff's position?

MR. BRUSTEIN:  Evan Brustein, your Honor.

Plaintiffs will welcome the opportunity for additional discovery on this point.  We had previously sought discovery with respect to reopening plans as well as the arbitration and litigation between the defendants over reopening.  Now, obviously, we only had a little bit of time, since this order was issued, to come up with those items that we previously saw. But we certainly would welcome the opportunity for those documents to be produced, and, you know, potentially be able to renew prior motion points for things that are relevant for the failure to reopen or delays in reopening.

THE COURT:  Just so I'm clear, what you would be seeking are additional documentary discovery?

MR. BRUSTEIN:  Yes.  However, it's possible based upon what those documents turn up that we might also want deposition testimony about those documents.  As noted by the defendants, if we're not asking questions about the documents being produced, there could be issues that the defendants raise about what those documents stand for.

O964STAC

THE COURT:  One of the reasons I wanted to convene this call is if we're going to have further discovery, I want to have it on a very expedited basis.  I will still probably have to move the date for my bottom line ruling if we have further discovery, but I'm not prepared to have a situation where there is additional discovery that goes on for weeks and weeks.

But before I figure out how we could expedite this, let me hear on this issue from defense counsel.

MS. LUNDY:  Thank you, your Honor.  This is Kathryn Lundy.

Our position is not only is discovery closed but the discovery that plaintiff is seeking has already been produced or addressed by the Court.  First, on the reopening plans, the Court already issued an order on the request for the document. And it was denied back in May of 2023 by an email order.

Secondly, with respect to the renovations that have been occurring both before the pandemic from 2019 through this entire time period, we have produced all of our email correspondence including by Frank Galasso, the head of engineering at the Hotel from Elizabeth Ortiz to all of the underlying invoices for that work.  And we already provided significant testimony about what work has been ongoing during the pandemic, what is continuing, and what is required to be completed in order to open up the Hotel.  We already propounded

O964STAC

both testimony and all of our documents on this topic, and we believe any further discovery is necessary here.

THE COURT:  Let me make sure, just to take an example, if I recall correctly there's been material changes to the ballroom?  Is that right?  I'm asking defense counsel.

MR. WAGNER:  Your Honor, if I could chime in this is Paul Wagner from FSR.

My understanding, and this is just from memory is what was disclosed during discovery and the subject of extensive deposition testimony was much broader than the ballroom.  There was a significant capital elevator, replacing and repairing the elevators that were very old.  There was some mechanical replacement.  There was overhauling of rooms to modify the rooms from part of the Hotel from a transient to an extended stay.  And all of that was produced in documentary discovery --

THE COURT:  That's very helpful.  But I guess my more narrow question, I was going to use the ballroom as an example, but I am glad you brought in the question, in effect, to what extent are those improvements, for lack of a better word, still ongoing?

MR. WAGNER:  This is Paul Wagner again.

My understanding is the Hotel had sent out recall notices and recalling employees and getting ready to open within the next two months.  So my understanding is that's all done or about to be completed.

O964STAC

MS. LUNDY:  This is Kathryn Lundy.

Ms. Ortiz also testified during her deposition about the status of those renovation projects.  And my recollection is that her testimony was the only remaining project was the showers.  One component within the showers in each of the guest rooms, and that was in the process of being completed and inspected.

MR. BRUSTEIN:  This is Brian Brustein.

THE COURT:  Go ahead.

MR. BRUSTEIN:  Mr. Wagner's statements are not things that are part of the record, so I can't really comment on the accuracy of it.  It wasn't anything that's been produced or exchanged.

THE COURT:  Well, was there, either deposition inquiry or documentary produced documents that would answer the question, assuming for the sake of argument that it's relevant, how much of the delay in reopening after the pandemic was -- and the emergency was over -- was attributable to the need to complete these improvements?

MR. WAGNER:  Your Honor, this is Paul Wagner from FSR.

Extensive on both documentary and testimonial.  In fact, Mr. Brustein quoted today to your Honor today during the oral argument, my client Antoine Chahwan and the Q and A around that.  So when depositions were taken, it formed a very significant basis or percentage of the questions from

SA-356

O964STAC

plaintiff's counsel.

MR. BRUSTEIN:  In Mr. Warner's deposition testimony he was asked the following questions.  And this is April 25, 2023:

"Q.  What are the barriers to reopening?

"A.  Answer the management dispute.

"Q.  Anything else?

"A.  As far as I'm concerned, that is the main issue.

THE COURT:  All right.  So here is what think makes sense.  It does sound like this issue was sufficiently raised that no further deposition testimony is necessary.  I will allow plaintiffs to send me a letter then no later than 5:00 p.m. on Monday saying why they think, given the Court's focus on this issue, the Court should reconsider some its prior rulings on documents that were previously order not or denied the production of.  That letter to be no more than three, single-spaced pages.  I will allow defense counsel jointly to respond to that letter by a letter of similar length to be filed no later than midnight on Tuesday.  And I will resolve that in writing on Wednesday.

Independent of that, regardless of how that turns out, I think I would benefit from further briefing on this issue. And in that regard, since you both know what the issue is, and since if I do order the production of any documents they can be produced, I'm sure, very rapidly, so I would suggest -- I don't require anyone to do additional briefing, but you both would be

O964STAC

prudent to do so and submit an additional brief on Monday, a week.  Let's see what date that is, that would be September 16th.  Simultaneous briefing of no more than 12 double-spaced pages addressing what you think has been established but also more importantly what you think of a legal issue that might be raised here.  And those briefs to be filed by 5:00 p.m. on the 16th.  And then parallel responding briefs of similar length on September 18 by 5:00 p.m.

The result of that is my bottom line order will probably be pushed a week or so, but I will still make every endeavor to get you that bottom line order very rapidly so this case can move along or not move along, as the case may be.

A question I raised orally today that was partly responded to is whether this issue was ever preserved.  I'm inclined to think it was.  But if either side wants to address that further in the briefs I just ordered, you are free to do so.

So I think that is what I needed to cover.  Is there anything else that anyone wanted to raise?

MR. BRUSTEIN:  Evan Brustein, your Honor.

A few things to clarify.  First, you said that the opposition would be the same length.  So the opposition --

THE COURT:  This is going to be four briefs in all. Two, one from each side, on the 16th and two, one from each side, on the 18th.

O964STAC

MR. BRUSTEIN:  What was the length for the one due on the 18th?

THE COURT:  Same length, 12 pages, double spaced.

MR. BRUSTEIN:  I just wanted to clarify that.

And is this part of the summary judgment motion or is there a standard that should be --

THE COURT:  Yes.  This is part of the Court's consideration of summary judgment.  Obviously, you should refer to things that are in the record.  And then should not refer -- I'm grateful that defense counsel gave me, you know, a heads up about some other issues like, you know, if the Hotel, it tends to reopen in two months or whatever, but that's not the issue I'm considering.  I'm only considering this from a summary judgment standpoint, so just things that are just currently part of the record is all that you can rely on.  Plus, if I give you those added documents that would be the one exception.

MR. BRUSTEIN:  Understood.

The second thing was during oral arguments you asked where we referenced these arguments.  I have them in front of me on the call, if your Honor wishes me to state them?

THE COURT:  Sure.

MR. BRUSTEIN:  Docket 48 which was the operative complaint, two of the paragraphs that specifically address it are Paragraphs 244 and 245 which read, "each time the defendants --

O964STAC

THE COURT:  Don't -- I'll take a look at them.  But I don't want to hold you up.  So just give me the numbers.

MR. BRUSTEIN:  244 and 245.  It's referenced in other places as well.  And then with respect to the opposition, I mention the Warner opposition, pages 10 and 12.  But also in the FSR opposition brief we raised it in pages 15 to 17 as well.

THE COURT:  Okay.  I will take a look at all those pages as well.

Anything else?

Okay.  So thank you all for calling in, and I'm sorry I had to bother you with this on a Friday afternoon.  You can now go out to the beach and enjoy yourself, but I look forward to your further submissions.  Thanks a lot.  That concludes this proceeding.

(Adjourned)

SA-360

# Exhibit B

SA-361

Compilation of Codes, Rules and Regulations of the State of New York
   Title 12. Department of Labor
      Chapter XII. Division of Employment and Training
         Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
            Subpart 921-1. Definitions (Refs & Annos)

12 NYCRR 921-1.0

Section 921-1.0. Purpose

Currentness

The purpose of this Part is to set forth regulations implementing the New York State Worker Adjustment and Retraining Notification (WARN) Act (chapter 475 of the Laws of 2008), hereinafter "act," and amendments thereto, as set forth in section 860 et seq. of the New York State Labor Law.

**Credits**
Sec. filed Jan. 30, 2009 as emergency measure; emergency rulemaking eff. April 29, 2009 expired June 27, 2009; emergency rulemaking eff. June 27, 2009 expired Aug. 24, 2009; emergency rulemaking eff. Aug. 23, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 16, 2009 expired Dec. 14, 2009; emergency rulemaking eff. Dec. 15, 2009 expired Feb. 12, 2010; emergency rulemaking eff. Feb. 12, 2010 expired May 12, 2010; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expired Sept. 15, 2010.

Current with amendments included in the New York State Register, Volume XLVI, Issue 36, dated September 4, 2024. Some sections may be more current, see credits for details.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-1.0, 12 NY ADC 921-1.0

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

SA-362

---

Compilation of Codes, Rules and Regulations of the State of New York
    Title 12. Department of Labor
        Chapter XII. Division of Employment and Training
            Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
                Subpart 921-1. Definitions (Refs & Annos)

This section has been updated. Click here for the updated version.

12 NYCRR 921-1.1

Section 921-1.1. Definitions

Effective: [See Text Amendments] to June 20, 2023

As used in this Part, the terms below have the following meanings:

(a) **Affected employee** means an employee, whether full- or part-time, who, at the time notice is required to be given, may reasonably be expected to experience an employment loss as the result of a proposed plant closing, mass layoff, relocation, or covered reduction in hours by the employer and is therefore entitled to notice. The term affected employee also includes employees who will likely lose their jobs because of bumping rights or other factors, to the extent that such individual employees reasonably can be identified at the time notice is required to be given. The term affected employee includes a managerial and supervisory employee, but does not include an officer, director, shareholder, or business partner, or a consultant or contract employee who has a separate employment relationship with another employer and is paid by that employer or who is self-employed.

(b) **Consolidation of all or part of a business** means the combining of two or more branches, units, divisions, or like parts of an employer's business operations.

(c) **Date of layoff** means the last day an employee is eligible or permitted to work for his/her employer. The fact that an employer continues to pay an employee after the date of the layoff does not change the employee's employment status for purposes of this Part. Payments to an employee subsequent to the date of layoff, whether continuing to pay an employee's normal weekly wage, or for severance pay, vacation pay, personal leave, and other similar benefits, shall not extend the employee's date of layoff.

(d) **Days** means calendar days.

(e) **Employer.**

(1) Employer means any business enterprise, whether for-profit or not-for-profit, that employs 50 or more employees (see paragraph (7) of this subdivision) within New York State, excluding part-time employees, or 50 or more employees including part-time employees within the State that work in aggregate at least 2,000 hours per week. For purposes of this Part:

---

SA-363

Section 921-1.1. Definitions, 12 NY ADC 921-1.1

(i) the calculation of total weekly hours shall include overtime hours earned on a regular basis;

(ii) overtime hours earned on a regular basis shall mean any overtime hours worked by an employee when such employee has worked overtime in 7 or more weeks out of the 12 weeks immediately prior to the date upon which notice was required under the Act.

(2) Independent contractors, and subsidiaries that are wholly or partially owned by a parent company, may be treated as separate employers depending on the degree of their independence from the parent. Some of the factors to be considered in making this determination include, but are not limited to:

(i) common ownership;

(ii) common directors and/or officers;

(iii) de facto exercise of control;

(iv) unity of personnel policies emanating from a common source; and

(v) the dependency of operations.

(3) A receiver, trustee, debtor-in-possession, or other fiduciary, where those terms are applicable under the provisions of the U.S. Bankruptcy Code (Title 11 of the United States Code), or any other provision of federal or state law where such party is responsible for continuing operations of the business entity, is considered an employer under this Part.

(4) Where a client-employer of a professional employer organization (PEO) has worksite employees under Article 31 of the Labor Law, such employees, with the exception of the client's employer's officers, directors, shareholders or partners, are employees of the client-employer for purposes of this Part.

(5) An employer may have one or more sites of employment under common ownership or control.

(6)

(i) The term employer shall not include the Federal or State government or any of their political subdivisions, including any unit of local government or any school district, any public authority, public benefit corporation, board, or commission, or any federally recognized Indian tribal government.

(ii) Private for-profit and not-for-profit businesses contracting with such exempted governmental entities are employers.

SA-364

Section 921-1.1. Definitions, 12 NY ADC 921-1.1

(7) Number of employees. In reaching a determination whether an employer meets the threshold of 50 employees for purposes of establishing coverage as an employer under this Part:

(i) All individuals employed at a single site of employment, other than part-time employees, are counted as employees for purposes of determining coverage as an employer.

(ii) Individuals on temporary layoff or on leave who have a reasonable expectation of recall, other than part-time employees, are counted as employees. An employee has a reasonable expectation of recall when the employer can demonstrate that it notified the employee that his/her employment has been temporarily interrupted and that he/she will be recalled to the same or a similar job, or when the employee is notified through industry practice.

(iii) The point in time at which the number of employees is to be measured for the purpose of establishing coverage is the date the first notice is required to be given.

(f) **Employment loss.**

(1) The term employment loss means:

(i) an employment termination, other than a discharge for cause, voluntary departure, or retirement;

(ii) a mass layoff, as defined in subdivision (i) of this section, that exceeds six months in duration; or

(iii) a reduction in hours of work of more than 50 percent during each month of any consecutive six-month period:

(*a*) for either:

(**1**) at least 25 employees constituting at least 33 percent of the employees at the site (excluding part-time employees); or

(**2**) at least 250 employees (excluding part-time employees) regardless of whether they comprise 33 percent of the employees at the site (excluding part-time employees);

(*b*) for purposes of this provision, a reduction in hours of work shall not be deemed to have occurred during any week that the employee is receiving unemployment insurance benefits as a partial wage replacement for lost hours of work through the employer's participation in a shared work program under title 7-A of article 18 of the New York Labor Law, provided however, that should the employer become aware at any point during its participation in the shared work program that an employment loss not subject to this exception will occur, the employer shall provide as much notice of the employment loss as is practicable accompanied by a statement of the basis for reducing the notice period;

SA-365

Case 1:22-cv-06781-JSR    Document 136-2    Filed 09/16/24    Page 6 of 45

(*c*) for purposes of this provision, the "consecutive six-month period" shall begin with the first month in which the employee experiences a reduction of more than 50 percent and shall continue for a period of 26 weeks beginning with the first week in which there was a reduction in hours compared with the previous week;

(iv) a plant closing as defined in subdivision (m) of this section affecting 25 or more employees, excluding part-time employees;

(v) a relocation as defined in subdivision (n) of this section affecting 25 or more employees, excluding part-time employees.

(2) An employee does not suffer an employment loss while he/she is reassigned or transferred to an employer-sponsored program, such as retraining or job search activities, as long as the reassignment does not constitute a constructive discharge or other involuntary termination, or otherwise trigger an employment loss as set forth above.

(3) Employment loss shall include a plant closing, mass layoff, covered reduction in work hours, or relocation that is a result of bankruptcy filing or the sale of a business (see section 921-2.1(b) of this Part).

(g) **Facility** means a building or other location in which the business operations of an employer takes place.

(h) **Hours of work** shall generally mean the average hours of work per week for each employee during the previous calendar year. If the employee did not work for at least 90 days during the previous calendar year, hours of work shall mean the average hours of work per week for the 90-day period prior to the date on which notice was due. Overtime hours will be included, if applicable, as described in paragraph (e)(1) of this section.

(i) **Mass layoff** means a reduction in workforce that:

(1) is not the result of a plant closing; and

(2) results in an employment loss at a single site of employment during any 30-day period, beginning on the date of the first employment loss, for either:

(i) at least 25 employees (excluding part-time employees) constituting at least 33 percent of the employees at the site (excluding part-time employees); or

(ii) at least 250 employees (excluding part-time employees) regardless of whether they comprise 33 percent of the employees at the site.

(j) **Merger** means a combination of all or part of the business operations of two separate employers.

(k) **Operating unit** means an organizationally or operationally distinct product, operation, or specific work function within or across facilities at a single site of employment.

(l) **Part-time employee** means an employee who is employed for an average of fewer than 20 hours per week or who has been employed for fewer than 6 of the 12 months preceding the date on which notice is required. Part-time employees for purposes of this Part may include employees who have worked full-time for fewer than 6 of the 12 months preceding the date on which notice is required. In determining whether an employee worked an average of fewer than 20 hours per week, the shorter of the actual period he or she was employed or the 90-day period immediately prior to the date on which notice is required shall be used.

(m) Plant closing means the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss during any 30-day period at such site for 25 or more employees, excluding any part-time employees. An employment action that results in the effective cessation of production or of the work performed by a unit, even if a few employees remain, is a shutdown. A temporary shutdown triggers the notice requirement if the minimum number of terminations, layoffs exceeding six months, or reductions in work hours constitute an "employment loss" under the act.

(n) **Relocation** means the removal of all or substantially all of the industrial or commercial operations of an employer to a different location 50 miles or more away from the original site of operation where 25 or more employees, excluding part-time employees, suffer an employment loss. For the purposes of this Part, relocation of substantially all of the operations of an employer shall include the relocation of an entire unit, product line, division or other segment of the employer's operation.

(o) **Representative** means an exclusive representative of employees within the meaning of section 9(a) or 8(f) of the National Labor Relations Act (29 U.S.C. 159(a), 158(f)), section 2 of the Railway Labor Act (45 U.S.C. 152), or the New York Labor Relations Act (New York Labor Law section 700 et seq.). Where an event requiring notice occurs at an employment site involving employees represented by more than one bargaining unit, notice must be sent to each bargaining unit representing employees affected by the plant closing, mass layoff, relocation or covered reduction in work hours.

(p) **Single site of employment.**

    (1) For the purposes of this Part, the following shall apply to the determination of whether an employment loss involves a single site of employment:

        (i) Several single sites of employment within a single building may exist if separate employers conduct activities within the building. For example, an office building housing 50 different businesses will contain 50 single sites of employment.

        (ii) A single site of employment may refer to either a single location or a group of contiguous locations in proximity to one another even though they are not directly connected to one another. For example, groups of structures which form a campus or industrial park or separate facilities across the street from one another owned by the same employer may be considered a single site of employment.

SA-367

(iii) Separate buildings or facilities which are not physically connected or are not in proximity to one another may be considered a single site of employment if they are in reasonable geographic proximity, are used by the employer for the same purpose, and share the same staff or equipment. Where an employer has two separate locations in the same geographic area and the purpose of one location is to support the operations of the other location, and this support requires travel between the two locations, the two locations will be considered a single-site.

(iv) Contiguous buildings occupied by the same employer that have separate management, produce different products or provide different services, and have separate workforces do not constitute a single site of employment.

(v) Non-contiguous sites in the same geographic area that have separate management, produce different products or provide different services, and have separate workforces do not constitute a single site of employment.

(vi) The single site of employment for employees whose primary duties require travel from point to point, who are out-stationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad employees, bus drivers, salespersons), shall be the site to which they are assigned as their employer's home base, from which their work is assigned, or to which they report.

**Credits**

Sec. filed Jan. 30, 2009 as emergency measure; emergency rulemaking eff. April 29, 2009 expired June 27, 2009; emergency rulemaking eff. June 27, 2009 expired Aug. 24, 2009; emergency rulemaking eff. Aug. 23, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 16, 2009 expired Dec. 14, 2009; emergency rulemaking eff. Dec. 15, 2009 expired Feb. 12, 2010; emergency rulemaking eff. Feb. 12, 2010 expired May 12, 2010; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-1.1, 12 NY ADC 921-1.1

**End of Document**                                                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

Compilation of Codes, Rules and Regulations of the State of New York
    Title 12. Department of Labor
        Chapter XII. Division of Employment and Training
            Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
                Subpart 921-2. Notice (Refs & Annos)

This section has been updated. Click here for the updated version.

12 NYCRR 921-2.1

Section 921-2.1. Notice, generally

Effective: [See Text Amendments] to June 20, 2023

(a) *General rule.* Subject to the exceptions set forth elsewhere in this Part, no employer may order a mass layoff, plant closing, relocation, or a covered reduction in work hours covered by this rule unless, at least 90 calendar days prior to such mass layoff, plant closing, relocation or covered reduction in work hours, the employer provides notice in compliance with the requirements set forth below. When all employees are not terminated on the same date, the date of the first individual termination shall trigger the 90-day notice requirement. The first and each subsequent group of employees earmarked for termination are entitled to a full 90 days' notice.

(b) Where an employer has sold all or part of a business, the selling employer shall be responsible for providing notice for any plant closing, mass layoff, relocation or a covered reduction in hours connected with such sale to any affected employees in accordance with this section, up to and including the effective date of the sale. After the effective date of the sale of all or part of the employer's business, the purchasing employer shall be responsible for providing notice to any affected employees included in such sale for any plant closing, mass layoff, or a covered reduction in hours. Any individual who is an employee of the selling employer as of the effective date of the sale and who is included in such sale shall be considered an employee of the purchasing employer immediately after the effective date of this sale. A promise of employment by the buyer to an employee does not relieve the seller of the obligation to provide notice.

(c) Where a consolidation of all or part of a business is accompanied by an employment loss, the original business entity is responsible for providing required notice. If employees are employed at the consolidated business for one day or more at the time notice would become due, the new business entity is responsible for notice.

(d) Where a merger is accompanied by an employment loss, the original business entity is responsible for providing required notice. If employees are employed at the merged business for one day or more at the time notice would become due, the new merged business entity is responsible for notice; therefore, as of the date of the merger, the merged entity is the employer for all employees who worked for the employers involved in the merger.

(e) *Scope of employment action.* In deciding whether notice is required, the employer shall:

---

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works.

SA-369

Section 921-2.1. Notice, generally, 12 NY ADC 921-2.1

(1) look ahead 30 days and behind 30 days to determine whether employment actions both taken and planned will, in the aggregate, for any 30-day period, reach the minimum numbers for a plant closing or a mass layoff and thus trigger the notice requirement; and

(2) look ahead 90 days and behind 90 days from the date of each employment action to determine whether actions constituting employment losses within the meaning of this Part, both taken and planned, each of which separately is not of sufficient size to trigger the notice requirement will in the aggregate, for any 90-day period, reach the minimum standards to trigger the notice requirement for a plant closing, mass layoff, relocation, or covered reduction in work hours.

(i) Employees previously given notice pursuant to the 30-day look ahead/look behind period, shall not be aggregated with other employees suffering employment losses during a given 90-day period in order to require that notice be given to the employees who would not otherwise be covered.

(f) *Notice must be specific.*

(1) The information in the notice shall be based on the best information available to the employer at the time the notice is served.

(2) Where voluntary notice which does not contain all the required elements set forth in this rule has been given more than 90 days in advance to any party for whom notice is required, the employer must ensure that all of the information required by the Act and this Part is provided at least 90 days in advance of the plant closing, mass layoff, relocation, or covered reduction in work hours.

(3) Notice may be given conditional upon the occurrence or non-occurrence of an event only when the event is definite and the consequences of its occurrence or non-occurrence will necessarily, in the normal course of business, lead to a plant closing, mass layoff, relocation, or covered reduction in work hours. For example, if the non-renewal of a major contract will lead to the closing of a plant that produces the articles supplied under the contract 30 days after the contract expires, the employer may give notice at least 90 days in advance of the projected closing date which states that if the contract is not renewed, the plant closing will occur on the projected date.

(4) An employer eligible for a reduction in notice required under this rule pursuant to the provisions of Subpart 921-6 of this Part shall include with its notice a statement of the reasons for reducing the notice provided and a factual explanation of the basis for claiming entitlement to such reduced notice period.

(g) *Voluntary notice.* An employer is encouraged to voluntarily provide notice of employment losses to employees and to the Commissioner of Labor even if such notice is not required under the Act or this Part.

**Credits**

Sec. filed Jan. 30, 2009 as emergency measure; emergency rulemaking eff. April 29, 2009 expired June 27, 2009; emergency rulemaking eff. June 27, 2009 expired Aug. 24, 2009; emergency rulemaking eff. Aug. 23, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 16, 2009 expired Dec. 14, 2009; emergency rulemaking eff. Dec. 15, 2009 expired Feb. 12, 2010; emergency rulemaking eff. Feb. 12, 2010 expired May 12, 2010; emergency rulemaking eff. May 12, 2010, expired July

SA-370

**Section 921-2.1. Notice, generally, 12 NY ADC 921-2.1**

10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-2.1, 12 NY ADC 921-2.1

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

SA-371

Compilation of Codes, Rules and Regulations of the State of New York
  Title 12. Department of Labor
    Chapter XII. Division of Employment and Training
      Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
        Subpart 921-2. Notice (Refs & Annos)

This section has been updated. Click here for the updated version.

12 NYCRR 921-2.2

### Section 921-2.2. Service of notice

Effective: [See Text Amendments] to June 20, 2023

(a) Notice shall be provided at least 90 days prior to separation using a reasonable and timely method of delivery designed to ensure its receipt. Acceptable forms of delivery include first class mail or personal delivery with optional signed receipt. If first class mail is used, notice must be postmarked at least 90 days prior to separation.

(b) Notice to the affected employees may also be served by:

    (1) insertion of the notice into envelopes containing pay or envelopes containing receipts for direct deposit of pay; or

    (2) electronic mail (e-mail). E-mail notification may be utilized only where all affected employees have regular access in the workplace to personal computers at which e-mail may be received and viewed during work hours. If an employer elects to use electronic mail to provide notice to employees, the employer must be able to demonstrate that an e-mail notice was received by each affected employee. The employee e-mail addresses used to give notice must be addresses provided to the employees by the employer and used in the conduct of business. The e-mail notice must be identified as "urgent." Where an e-mail notice to an individual employee is returned to sender as undeliverable, notice must be provided to the employee as expeditiously as possible, e.g., overnight delivery, hand delivery, inter-office mail, etc. In any circumstance in which delivery of notice takes more than five days, the employer must extend the period of notice given to the employee by the number of days which elapsed between the date notice was first attempted and the date on which notice was finally effectuated.

(c) All notices must be sent on official letterhead of the employer or via the employer's computer network and must be signed by an individual with authority to represent the employer in this regard. Notice provided to the Department of Labor must contain the original signature of the employer representative. The employer representative must have the authority to bind the employer and must attest to the truthfulness of all information provided in the notice.

(d) Notice must be provided to the following:

    (1) affected employees;

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works.

SA-372

Section 921-2.2. Service of notice, 12 NY ADC 921-2.2

(2) representative(s) of affected employees;

(3) the Commissioner of Labor; and

(4) the local workforce investment board(s) (LWIB) where the site of employment is located. Service upon the "chief elected official of the unit of local government within which such closing or layoff is to occur" as required under the Federal WARN statute does not constitute service on the LWIB unless such chief elected official is the LWIB contact listed on the Department's website. Note: Service on the LWIB as required under the State WARN Act does not satisfy the requirement to serve the chief elected official set forth under the Federal WARN Act unless such chief elected official is the contact for the LWIB listed on the Department's website.

(e) Notice to the Commissioner of Labor may be mailed or faxed with a hard copy to follow in the mail, to the following address: New York State Department of Labor, Division of Employment and Workforce Solutions, State Dislocated Worker Unit, W. Averell Harriman State Office Campus, Building 12, Albany, NY 12240.

(f) Notice(s) to the local Workforce Investment Board(s) may be mailed to the Boards' contact listed on the Department's website.

(g) Notice to affected employees is required to be given to employees who may reasonably be expected to experience an employment loss. This includes employees who will likely lose their jobs because of bumping rights, to the extent that such employees can be identified at the time notice is required to be given. If, at the time notice is required to be given, the employer cannot identify the employee who may reasonably be expected to experience an employment loss due to the elimination of a particular position, the employer must provide notice to the incumbent in that position.

**Credits**

Sec. filed Jan. 30, 2009 as emergency measure; emergency rulemaking eff. April 29, 2009 expired June 27, 2009; emergency rulemaking eff. June 27, 2009 expired Aug. 24, 2009; emergency rulemaking eff. Aug. 23, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 16, 2009 expired Dec. 14, 2009; emergency rulemaking eff. Dec. 15, 2009 expired Feb. 12, 2010; emergency rulemaking eff. Feb. 12, 2010 expired May 12, 2010; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-2.2, 12 NY ADC 921-2.2

End of Document                                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    2

Compilation of Codes, Rules and Regulations of the State of New York
  Title 12. Department of Labor
    Chapter XII. Division of Employment and Training
      Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
        Subpart 921-2. Notice (Refs & Annos)

This section has been updated. Click here for the updated version.

12 NYCRR 921-2.3

Section 921-2.3. Contents of notice

Effective: [See Text Amendments] to June 20, 2023

Notice required under this Part sent to the recipients identified below shall be provided for each site of employment where a plant closing, mass layoff, relocation or covered reduction in work hours will occur. Notice to an affected employee is to be provided in a language understandable to the employee. As used in this Subpart, the term expected date of the first separation refers to a specific date or to a 14-day period during which a planned separation is expected to occur. If separations are planned according to a schedule, the schedule shall indicate the separation date or the beginning date of each 14-day period during which any separations are expected to occur. Where a 14-day period is used, notice must be given at least 90 days in advance of the first day of the period. Notice required under this Part shall include the following elements:

(a) Notice to the Commissioner of Labor:

(1) the name and address of the employment site where the plant closing, mass layoff, relocation or covered reduction in work hours will occur;

(2) the name and telephone number of an employer representative to contact for further information;

(3) the name and telephone number of an employee representative to contact for further information;

(4) the name of the employer's liaison with the Department for purposes of providing rapid response services to affected employees;

(5) the names and addresses of the employees to be laid off and their job titles;

(6) the expected date of the first separation of employees and the anticipated schedule of separations;

(7) a statement as to whether bumping rights exist;

SA-374

Section 921-2.3. Contents of notice, 12 NY ADC 921-2.3

(8) a statement as to whether the planned action is expected to be permanent or temporary, and whether the entire plant is to be closed. If the planned action is expected to affect identifiable units of employees differently, e.g., should the employer expect a layoff of one unit to be temporary and the layoff of another unit to be permanent, the notice shall so indicate;

(9) a statement as to whether the other notices required under the act and this Part have been given, including the date notices were sent;

(10) a statement as to the means of delivery utilized to deliver notice to affected employees;

(11) a sample of the notice provided to employees and to the employee representative(s).

(b) Notice to each affected employee:

(1) the expected date of the first separation of employees and the date when the individual employee will be separated;

(2) a statement as to whether the planned action is expected to be permanent or temporary, and whether the entire plant is to be closed. If the planned action is expected to affect identifiable units of employees differently, e.g., should the employer expect a layoff of one unit to be temporary and the layoff of another unit to be permanent, the notice shall so indicate;

(3) a statement as to whether bumping rights exist;

(4) the name and telephone number of an employer representative to contact for further information;

(5) information concerning unemployment insurance, job training, and re-employment services for which affected employees may be eligible. Such information shall, at a minimum, include the following notice:

"You are also hereby notified that, as a result of your employment loss, you may be eligible to receive job retraining, re-employment services, or other assistance with obtaining new employment from the New York State Department of Labor or its workforce partners upon your termination. You may also be eligible for unemployment insurance benefits after your last day of employment. Whenever possible, the New York State Department of Labor will contact your employer to arrange to provide additional information regarding these benefits and services to you through workshops, interviews, and other activities that will be scheduled prior to the time your employment ends. If your job has already ended, you can also access reemployment information and apply for unemployment insurance benefits on the Department's website or you may use the contact information provided on the website or visit one of the Department's local offices for further information and assistance." and

(c) Notice to representative(s) of the affected employees:

(1) the name and address of the employment site where the plant closing, mass layoff, relocation or covered reduction in work hours will occur;

SA-375

(2) the name and telephone number of the employer representative to contact for further information;

(3) a statement as to whether bumping rights exist;

(4) a statement as to whether the planned action is expected to be permanent or temporary, and whether the entire plant is to be closed. If the planned action is expected to affect identifiable units of employees differently, e.g., should the employer expect a layoff of one unit to be temporary and the layoff of another unit to be permanent, the notice shall so indicate;

(5) the expected date of the first separation of employees and the anticipated schedule of separations;

(6) the names and addresses of the employees to be laid off and their job titles;

(7) information concerning unemployment insurance, job training, and re-employment services for which affected employees may be eligible. Such information shall, at a minimum, include the following notice:

"You are also hereby notified that, as a result of their employment loss, individuals represented by you may be eligible to receive job retraining, re-employment services, or other assistance with obtaining new employment upon termination. These individuals may also be eligible for unemployment insurance benefits after their last day of employment. Whenever possible, the New York State Department of Labor will contact the employer to arrange to provide additional information regarding these benefits and services to these individuals through workshops, interviews, and other activities that will be scheduled prior to the time their employment ends. If their jobs have already ended, they can also access reemployment information and apply for unemployment insurance benefits on the Department's website or they may use the contact information provided on the website or visit one of the Department's local offices to obtain further information and assistance."

(8) a statement as to whether the notices to the Commissioner of Labor and the local Workforce Investment Board have been given, including the date notices were sent; and

(9) a statement as to the means of delivery utilized to deliver notice to affected employees.

(d) Notice to the local Workforce Investment Board:

(1) the name and address of the employment site where the plant closing, mass layoff, relocation or covered reduction in work hours will occur;

(2) the name and telephone number of the employer representative to contact for further information;

(3) the name and telephone number of the employee representative to contact for further information;

**SA-376**

(4) a statement as to whether the planned action is expected to be permanent or temporary, and whether the entire plant is to be closed. If the planned action is expected to affect identifiable units of employees differently, e.g., should the employer expect a layoff of one unit to be temporary and the layoff of another unit to be permanent, the notice shall so indicate;

(5) the expected date of the first separation of employees, and the anticipated schedule of separations;

(6) the job titles of positions to be affected, and the number of affected employees in each job title;

(7) a statement as to whether bumping rights exist;

(8) the name of each union representing affected employees, and the name and address of the chief elected officer of each such union;

(9) a statement as to whether the other notices required under the act and this Part have been given, including the date notices were sent; and

(10) a statement as to the means of delivery utilized to deliver notice to affected employees.

**Credits**

Sec. filed Jan. 30, 2009 as emergency measure; emergency rulemaking eff. April 29, 2009 expired June 27, 2009; emergency rulemaking eff. June 27, 2009 expired Aug. 24, 2009; emergency rulemaking eff. Aug. 23, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 16, 2009 expired Dec. 14, 2009; emergency rulemaking eff. Dec. 15, 2009 expired Feb. 12, 2010; emergency rulemaking eff. Feb. 12, 2010 expired May 12, 2010; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-2.3, 12 NY ADC 921-2.3

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Compilation of Codes, Rules and Regulations of the State of New York
    Title 12. Department of Labor
        Chapter XII. Division of Employment and Training
            Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
                Subpart 921-3. Extension, Postponement, or Rescission of Employment Loss (Refs & Annos)

This section has been updated. Click here for the updated version.

12 NYCRR 921-3.1

## Section 921-3.1. Extension of a mass layoff period

Effective: [See Text Amendments] to June 20, 2023

An employer that previously announced and carried out a short-term layoff of six months or less which is being extended beyond six months due to business circumstances (e.g., changes in price or cost) not reasonably foreseeable at the time of the initial layoff must give notice required under the act and this Part as soon as it becomes reasonably foreseeable that an extension is required. A layoff extending beyond six months from the date the layoff originally commenced for any other reason other than unforeseeable business circumstances shall be treated as an employment loss from the date it originally commenced. For purposes of this section, the date the layoff originally commenced shall be the date on which the first employee was laid off.

**Credits**

Sec. filed Jan. 30, 2009 as emergency measure; emergency rulemaking eff. April 29, 2009 expired June 27, 2009; emergency rulemaking eff. June 27, 2009 expired Aug. 24, 2009; emergency rulemaking eff. Aug. 23, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 16, 2009 expired Dec. 14, 2009; emergency rulemaking eff. Dec. 15, 2009 expired Feb. 12, 2010; emergency rulemaking eff. Feb. 12, 2010 expired May 12, 2010; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-3.1, 12 NY ADC 921-3.1

End of Document                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works.    1

SA-378

Compilation of Codes, Rules and Regulations of the State of New York
  Title 12. Department of Labor
    Chapter XII. Division of Employment and Training
      Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
        Subpart 921-3. Extension, Postponement, or Rescission of Employment Loss (Refs & Annos)

12 NYCRR 921-3.2

Section 921-3.2. Postponement of a plant closing,
mass layoff, relocation, or covered reduction in hours

Currentness

(a) If, after notice has been given, an employer decides to postpone a plant closing, mass layoff, relocation, or covered reduction in work hours for less than 90 days, notice of postponement shall be given as soon as possible after the decision to postpone. The notice of postponement shall include reference to the earlier notice, the date (as set forth in section 921-2.3(a)(6) of this Part) to which the planned action is being postponed, and the reasons for the postponement and shall otherwise meet all the requirements of the original notice as to form, delivery, and parties entitled to notice.

(b) If the postponement is for 90 days or more, a new notice which otherwise complies with all the requirements of the act and this Part shall be provided.

**Credits**

Sec. filed Jan. 30, 2009 as emergency measure; emergency rulemaking eff. April 29, 2009 expired June 27, 2009; emergency rulemaking eff. June 27, 2009 expired Aug. 24, 2009; emergency rulemaking eff. Aug. 23, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 16, 2009 expired Dec. 14, 2009; emergency rulemaking eff. Dec. 15, 2009 expired Feb. 12, 2010; emergency rulemaking eff. Feb. 12, 2010 expired May 12, 2010; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

Current with amendments included in the New York State Register, Volume XLVI, Issue 36, dated September 4, 2024. Some sections may be more current, see credits for details.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-3.2, 12 NY ADC 921-3.2

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

SA-379

Compilation of Codes, Rules and Regulations of the State of New York
  Title 12. Department of Labor
    Chapter XII. Division of Employment and Training
      Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
        Subpart 921-3. Extension, Postponement, or Rescission of Employment Loss (Refs & Annos)

12 NYCRR 921-3.3

Section 921-3.3. Rescission of notice of a plant closing,
mass layoff, relocation, or covered reduction in hours

Currentness

(a) If, after notice has been given, an employer determines that it will continue operations, and the announced plant closing, mass layoff, relocation, or covered reduction in hours will not occur, the employer shall give a notice of rescission as soon as possible after determining that the plant closing, mass layoff, relocation or covered reduction in hours will not occur. The notice of rescission shall include reference to the earlier notice, the reason why such action is no longer required, and shall meet all the requirements of the original notice as to parties entitled to notice.

(b) Acceptable forms of delivery of this notice to affected employees include all the methods set forth in section 921-2.2 of this Part.

**Credits**
Sec. filed: July 9, 2010 as emergency measure; Aug. 31, 2010; Sept. 7, 2010 as emergency measure eff. Sept. 7, 2010.

Current with amendments included in the New York State Register, Volume XLVI, Issue 36, dated September 4, 2024. Some sections may be more current, see credits for details.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-3.3, 12 NY ADC 921-3.3

---

End of Document                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

SA-380

Compilation of Codes, Rules and Regulations of the State of New York
  Title 12. Department of Labor
    Chapter XII. Division of Employment and Training
      Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
        Subpart 921-4. Transfers (Refs & Annos)

This section has been updated. Click here for the updated version.

12 NYCRR 921-4.1

Section 921-4.1. Transfers

Effective: [See Text Amendments] to June 20, 2023

(a) Notice is not required when:

(1) an employer offers to transfer an employee to a different site of employment within a reasonable commuting distance with no more than a six-month break in employment, regardless of whether the employee accepts such employment; or

(2) an employer offers to transfer the employee to any other site of employment regardless of distance with no more than a six-month break in employment and the employee accepts within 30 days of the offer or of the closing or layoff, whichever is later.

(b) An offer of reassignment to a different site of employment shall not be deemed to be an offer of transfer if the new job otherwise constitutes a constructive discharge.

(c) For purposes of this Part, reasonable commuting distance is the distance an individual could be reasonably expected to commute to his/her job and is determined solely for purposes of transfers. Reasonable commuting distance will vary with local conditions with consideration given to the geographic accessibility of the place of work, the quality of the roads, customarily available transportation, and the usual travel time, provided however, in no event shall such distance exceed that which can be reasonably traveled in one and one-half hours when the site of employment is being moved to a location within the City of New York or on Long Island, or one hour when the site of employment is being moved to any other location in the State.

**Credits**
Sec. filed Jan. 30, 2009 as emergency measure; emergency rulemaking eff. April 29, 2009 expired June 27, 2009; emergency rulemaking eff. June 27, 2009 expired Aug. 24, 2009; emergency rulemaking eff. Aug. 23, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 16, 2009 expired Dec. 14, 2009; emergency rulemaking eff. Dec. 15, 2009 expired Feb. 12, 2010; emergency rulemaking eff. Feb. 12, 2010 expired May 12, 2010; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-4.1, 12 NY ADC 921-4.1

SA-381

**Section 921-4.1. Transfers, 12 NY ADC 921-4.1**

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

SA-382

Case 1:22-cv-06781-JSR    Document 136-2    Filed 09/16/24    Page 23 of 45

Compilation of Codes, Rules and Regulations of the State of New York
  Title 12. Department of Labor
    Chapter XII. Division of Employment and Training
      Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
        Subpart 921-5. Temporary or Seasonal Employment (Refs & Annos)

12 NYCRR 921-5.1

Section 921-5.1. Temporary employment

Currentness

(a) Notice is not required if the closing or layoff results from the completion of a particular project or undertaking, and the affected employees were hired with the understanding that their employment was limited to the duration of the project or undertaking.

(b) The employer must demonstrate that it informed each employee at the time of hire that the job was temporary. For purposes of this Part, "at will" employment is not "temporary" employment and providing notification to employees, at the time of hire or otherwise, that their employment is at will and subject to termination at any time by the employer shall not constitute notice that employment is of limited duration.

(c) Employment in an industry that traditionally hires temporary employees does not, in and of itself, make an employee temporary if the employee was hired to perform a variety of jobs and tasks continuously through most of the calendar year. Giving written notice that a project is temporary with the intent of converting permanent employment into temporary work so as to avoid the requirement of notice shall be a violation of the act and this Part.

**Credits**
Sec. filed Jan. 30, 2009 as emergency measure; emergency rulemaking eff. April 29, 2009 expired June 27, 2009; emergency rulemaking eff. June 27, 2009 expired Aug. 24, 2009; emergency rulemaking eff. Aug. 23, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 16, 2009 expired Dec. 14, 2009; emergency rulemaking eff. Dec. 15, 2009 expired Feb. 12, 2010; emergency rulemaking eff. Feb. 12, 2010 expired May 12, 2010; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

Current with amendments included in the New York State Register, Volume XLVI, Issue 36, dated September 4, 2024. Some sections may be more current, see credits for details.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-5.1, 12 NY ADC 921-5.1

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

SA-383

Case 1:22-cv-06781-JSR    Document 136-2    Filed 09/16/24    Page 24 of 45

Compilation of Codes, Rules and Regulations of the State of New York
   Title 12. Department of Labor
      Chapter XII. Division of Employment and Training
         Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
            Subpart 921-5. Temporary or Seasonal Employment (Refs & Annos)

12 NYCRR 921-5.2

Section 921-5.2. Seasonal employment

Currentness

(a) Notice is not required if the closing or layoff results from the completion of a particular seasonal project or undertaking, and the affected employees were hired with the understanding that their employment was limited to the duration of the seasonal project or undertaking.

(b) The employer must demonstrate that it informed each employee at the time of hire that the job was seasonal.

(c) Employment in an industry that traditionally hires seasonal employees does not, in and of itself, make an employee seasonal if the employee was hired to perform a variety of jobs and tasks continuously through most of the calendar year.

**Credits**

Sec. filed Feb. 12, 2010 as emergency measure; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

Current with amendments included in the New York State Register, Volume XLVI, Issue 36, dated September 4, 2024. Some sections may be more current, see credits for details.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-5.2, 12 NY ADC 921-5.2

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

SA-384

Compilation of Codes, Rules and Regulations of the State of New York
  Title 12. Department of Labor
    Chapter XII. Division of Employment and Training
      Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
        Subpart 921-6. Exceptions (Refs & Annos)

This section has been updated. Click here for the updated version.

12 NYCRR 921-6.1

Section 921-6.1. Exceptions, generally

Effective: [See Text Amendments] to June 20, 2023

The State WARN Act allows certain exceptions under which the 90-day notice period may be reduced. The employer bears the burden of proof to show that the requirements for an exception have been met, i.e., when the employer asserts a defense in mitigation or exemption from the requirements of the act or this Part, the employer must provide documentation in support of the claimed exception. In all circumstances set forth below, the employer must provide as much notice as possible in advance of the plant closing, mass layoff, relocation, or covered reduction in work hours to all required parties, and also include a statement of the reason for reducing the notice period and a factual explanation of the basis for claiming entitlement to such reduced notice period. The exceptions to the standard notice required under the act and this Part include those set forth in sections 921-6.2 through 921-6.5 of this Part.

**Credits**
Sec. filed Jan. 30, 2009 as emergency measure; emergency rulemaking eff. April 29, 2009 expired June 27, 2009; emergency rulemaking eff. June 27, 2009 expired Aug. 24, 2009; emergency rulemaking eff. Aug. 23, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 16, 2009 expired Dec. 14, 2009; emergency rulemaking eff. Dec. 15, 2009 expired Feb. 12, 2010; emergency rulemaking eff. Feb. 12, 2010 expired May 12, 2010; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-6.1, 12 NY ADC 921-6.1

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

SA-385

Compilation of Codes, Rules and Regulations of the State of New York
  Title 12. Department of Labor
    Chapter XII. Division of Employment and Training
      Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
        Subpart 921-6. Exceptions (Refs & Annos)

This section has been updated. Click here for the updated version.

12 NYCRR 921-6.2

Section 921-6.2. Faltering company

Effective: [See Text Amendments] to June 20, 2023

(a) To qualify for this exception, the employer shall establish that at the time notice of the plant closing, mass layoff, relocation, or covered reduction in work hours would have been required:

(1) the employer was actively seeking capital or business and identifies the specific actions taken to obtain such capital or business. For example, the employer must demonstrate its efforts to obtain financing or refinancing through the arrangement of loans, the issuance of stocks, bonds, or other methods, or to obtain additional money, credit, or business through any other commercially reasonable method; and

(2) there was a realistic opportunity to obtain the capital or business sought; and

(3) the capital or business sought would have been sufficient to enable the facility, operating unit, or site to avoid or postpone the plant closing, mass layoff, relocation, or covered reduction in work hours; and

(4) the employer reasonably and in good faith believed that giving notice would have precluded the ability to obtain the needed capital or business. The employer must be able to objectively demonstrate that a potential customer or financing source would have been unwilling to provide the new business or capital if notice were given.

(b) For the purposes of this Part, the employer's actions will be viewed in a company-wide context. A company with access to capital markets or with cash reserves may not avail itself of this exception by looking solely at the financial condition of the single site of employment to be closed and doing so shall constitute a violation of the act and this Part.

**Credits**
Sec. filed Jan. 30, 2009 as emergency measure; emergency rulemaking eff. April 29, 2009 expired June 27, 2009; emergency rulemaking eff. June 27, 2009 expired Aug. 24, 2009; emergency rulemaking eff. Aug. 23, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 16, 2009 expired Dec. 14, 2009; emergency rulemaking eff. Dec. 15, 2009 expired Feb. 12, 2010; emergency rulemaking eff. Feb. 12, 2010 expired May 12, 2010; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

SA-386

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-6.2, 12 NY ADC 921-6.2

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

SA-387

---

Compilation of Codes, Rules and Regulations of the State of New York
  Title 12. Department of Labor
    Chapter XII. Division of Employment and Training
      Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
        Subpart 921-6. Exceptions (Refs & Annos)

This section has been updated. Click here for the updated version.

12 NYCRR 921-6.3

Section 921-6.3. Unforeseeable business circumstances

Effective: [See Text Amendments] to June 20, 2023

To qualify for this exception, the employer shall establish that the plant closing, mass layoff, relocation or covered reduction in work hours was caused by business circumstances that were not reasonably foreseeable when the 90-day notice would have been required.

(a) A business circumstance that is not reasonably foreseeable may be established by the occurrence of some sudden, dramatic and unexpected action or condition outside the employer's control. Examples include a principal client's sudden and unexpected termination of a major contract with the employer, a strike at a major supplier of the employer, an unanticipated and dramatic major economic downturn or a government-ordered closing of an employment site that occurs without prior notice.

(b) The employer shall exercise commercially reasonable business judgment in determining whether a business circumstance is reasonably foreseeable.

**Credits**
Sec. filed Jan. 30, 2009 as emergency measure; emergency rulemaking eff. April 29, 2009 expires June 27, 2009; emergency rulemaking eff. June 27, 2009 expired Aug. 24, 2009; emergency rulemaking eff. Aug. 23, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 16, 2009 expired Dec. 14, 2009; emergency rulemaking eff. Dec. 15, 2009 expired Feb. 12, 2010; emergency rulemaking eff. Feb. 12, 2010 expired May 12, 2010; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-6.3, 12 NY ADC 921-6.3

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

SA-388

Compilation of Codes, Rules and Regulations of the State of New York
   Title 12. Department of Labor
     Chapter XII. Division of Employment and Training
      Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
       Subpart 921-6. Exceptions (Refs & Annos)

12 NYCRR 921-6.4

Section 921-6.4. Natural disaster

Currentness

(a) To qualify for this exception, the employer shall establish that:

(1) the plant closing, mass layoff, relocation, or covered reduction in work hours was a direct result of any form of a natural disaster including floods, earthquakes, droughts, storms, tidal waves, tsunamis, or similar effects of nature; and

(2) the employer provided as much notice as is practicable and available under the circumstances, whether in advance or after an employment loss caused by the disaster.

(b) Where a plant closing, mass layoff, relocation, or covered reduction in work hours occurs as an indirect result of a natural disaster, the exception does not apply but the "unforeseeable business circumstance" exception may be applicable.

**Credits**

Sec. filed Jan. 30, 2009 as emergency measure; emergency rulemaking eff. April 29, 2009 expired June 27, 2009; emergency rulemaking eff. June 27, 2009 expired Aug. 24, 2009; emergency rulemaking eff. Aug. 23, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 16, 2009 expired Dec. 14, 2009; emergency rulemaking eff. Dec. 15, 2009 expired Feb. 12, 2010; emergency rulemaking eff. Feb. 12, 2010 expired May 12, 2010; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

Current with amendments included in the New York State Register, Volume XLVI, Issue 36, dated September 4, 2024. Some sections may be more current, see credits for details.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-6.4, 12 NY ADC 921-6.4

**End of Document**     © 2024 Thomson Reuters. No claim to original U.S. Government Works.

SA-389

---

Compilation of Codes, Rules and Regulations of the State of New York
   Title 12. Department of Labor
      Chapter XII. Division of Employment and Training
         Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
            Subpart 921-6. Exceptions (Refs & Annos)

12 NYCRR 921-6.5

Section 921-6.5. Strikes or lockouts

Currentness

(a) Nothing in this rule shall require an employer to serve written notice when permanently replacing a person who is deemed to be an economic striker under the National Labor Relations Act (29 U.S.C. 151 et seq.). Nothing in this rule shall be deemed to validate or invalidate any judicial or administrative ruling relating to the hiring of permanent replacements for economic strikers under the National Labor Relations Act.

(b) This exception applies to a strike or lockout that is not intended to evade the requirements of the act.

**Credits**
Sec. filed Jan. 30, 2009 as emergency measure; emergency rulemaking eff. April 29, 2009 expired June 27, 2009; emergency rulemaking eff. June 27, 2009 expired Aug. 24, 2009; emergency rulemaking eff. Aug. 23, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 16, 2009 expired Dec. 14, 2009; emergency rulemaking eff. Dec. 15, 2009 expired Feb. 12, 2010; emergency rulemaking eff. Feb. 12, 2010 expired May 12, 2010; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

Current with amendments included in the New York State Register, Volume XLVI, Issue 36, dated September 4, 2024. Some sections may be more current, see credits for details.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-6.5, 12 NY ADC 921-6.5

---

**End of Document**  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

SA-390

Compilation of Codes, Rules and Regulations of the State of New York
    Title 12. Department of Labor
        Chapter XII. Division of Employment and Training
            Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
                Subpart 921-6. Exceptions (Refs & Annos)

This section has been updated. Click here for the updated version.

12 NYCRR 921-6.6

## Section 921-6.6. Timeliness

Effective: [See Text Amendments] to June 20, 2023

If an employer is unable to provide the notice otherwise required by this Part in a timely fashion as a result of circumstances described above, it shall still provide as much notice as is practicable accompanied by a statement of the basis for reducing the notice period.

**Credits**

Sec. filed Jan. 30, 2009 as emergency measure; emergency rulemaking eff. April 29, 2009 expired June 27, 2009; emergency rulemaking eff. June 27, 2009 expired Aug. 24, 2009; emergency rulemaking eff. Aug. 20, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 16, 2009 expired Dec. 14, 2009; emergency rulemaking eff. Dec. 15, 2009 expired Feb. 12, 2010; emergency rulemaking eff. Feb. 12, 2010 expired May 12, 2010; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-6.6, 12 NY ADC 921-6.6

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Compilation of Codes, Rules and Regulations of the State of New York
  Title 12. Department of Labor
    Chapter XII. Division of Employment and Training
      Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
        Subpart 921-7. Enforcement by the Commissioner of Labor (Refs & Annos)

This section has been updated. Click here for the updated version.

12 NYCRR 921-7.1

Section 921-7.1. Powers of the Commissioner

Effective: [See Text Amendments] to June 20, 2023

(a) In any investigation or proceeding under this Part, the Commissioner has, in addition to all powers granted by law, the authority to examine any information of an employer necessary to determine whether a violation has occurred, including to determine the validity of any defense.

(b) If an employer proves to the satisfaction of the Commissioner, during the investigation or during the hearing as set forth in Section 921-7.4 of this subpart, that the act or omission that violated the act or this Part was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of the act, the Commissioner may, in his or her discretion, reduce the amount of penalty and/or reduce the amount of the liability provided for under the act. In determining the amount of such reduction(s), the Commissioner shall consider:

(1) the size of the employer;

(2) the hardships imposed on employees by the violation;

(3) any efforts by the employer to mitigate the violation;

(4) the grounds for the employer's belief that its violation was made in the good faith belief that the failure to provide notice was not a violation of the Act;

(5) the employer's good faith cooperation with the Commissioner's request for additional information necessary to his/her enforcement of the Act and this Part; and

(6) the truthfulness of the information provided in response to the Commissioner's inquiries.

(c) The Commissioner shall not have the authority to enjoin a plant closing, relocation, mass layoff, or covered reduction in work hours.

SA-392

**Section 921-7.1. Powers of the Commissioner, 12 NY ADC 921-7.1**

---

**Credits**

Sec. filed Jan. 30, 2009 as emergency measure; emergency rulemaking eff. April 29, 2009 expired June 27, 2009; emergency rulemaking eff. June 27, 2009 expired Aug. 24, 2009; emergency rulemaking eff. Aug. 23, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 16, 2009 expired Dec. 14, 2009; emergency rulemaking eff. Dec. 15, 2009 expired Feb. 12, 2010; emergency rulemaking eff. Feb. 12, 2010 expired May 12, 2010; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-7.1, 12 NY ADC 921-7.1

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW** © 2024 Thomson Reuters. No claim to original U.S. Government Works.     2

SA-393

Case 1:22-cv-06781-JSR    Document 136-2    Filed 09/16/24    Page 34 of 45

Compilation of Codes, Rules and Regulations of the State of New York
    Title 12. Department of Labor
        Chapter XII. Division of Employment and Training
            Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
            Subpart 921-7. Enforcement by the Commissioner of Labor (Refs & Annos)

12 NYCRR 921-7.2

Section 921-7.2. Civil penalty

Currentness

(a) An employer who fails to give notice as required by the act and this Part is subject to a civil penalty of not more than $500 for each day of the employer's violation, which shall be imposed in the aggregate and not individually for each affected employee or other party that failed to receive notice. The employer is not subject to a civil penalty under the act or this Part if the employer pays each affected employee the total amount for which the employer is liable under the act and this Part, including back pay and all fringe benefits, within three weeks from the employee's date of layoff, as defined in section 921-1.1(c) of this Part, due to a plant closing, mass layoff, relocation, or covered reduction of work hours. Paying employees their regular wages and benefits over the period of the violation (that exceeds three weeks) does not exempt the employer from the civil penalty. Employers making such payments shall include with the final payment of wages or through some other form of notice provided at the time such payment is made, the following notice:

"You are hereby notified that, as a result of your employment loss, you may be eligible to receive job retraining, re-employment services, or other assistance with obtaining new employment from the New York State Department of Labor or its workforce partners. You may also be eligible for unemployment insurance benefits after your last day of employment. You can access reemployment information and apply for unemployment insurance benefits on the Department's website, and you may also use the contact information provided on the website or visit one of the Department's local offices to obtain further information and assistance."

(b) The total amount of penalties for which an employer may be liable under the act and this Part shall not exceed the maximum amount of penalties for which the employer may be liable under the Federal law for the same violation.

(c) Any penalty amount paid by the employer under Federal law that the employer demonstrates to the Commissioner's satisfaction has been paid prior to the issuance of the Commissioner's determination, shall be considered a payment made for the purposes of this rule.

**Credits**
Sec. filed Jan. 30, 2009 as emergency measure; emergency rulemaking eff. April 29, 2009 expired June 27, 2009; emergency rulemaking eff. June 27, 2009 expired Aug. 24, 2009; emergency rulemaking eff. Aug. 23, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 16, 2009 expired Dec. 14, 2009; emergency rulemaking eff. Dec. 15, 2009 expired Feb. 12, 2010; emergency rulemaking eff. Feb. 12, 2010 expired May 12, 2010; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

SA-394

Current with amendments included in the New York State Register, Volume XLVI, Issue 36, dated September 4, 2024. Some sections may be more current, see credits for details.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-7.2, 12 NY ADC 921-7.2

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

SA-395

Compilation of Codes, Rules and Regulations of the State of New York
  Title 12. Department of Labor
    Chapter XII. Division of Employment and Training
      Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
        Subpart 921-7. Enforcement by the Commissioner of Labor (Refs & Annos)

This section has been updated. Click here for the updated version.

12 NYCRR 921-7.3

Section 921-7.3. Violation; liability

Effective: [See Text Amendments] to June 20, 2023

(a) An employer who fails to give notice to an employee entitled to receive notice under this Part, is liable to each such employee, including part-time employees for:

(1) back pay at the average regular rate of compensation received by the employee during the three years prior to the date of termination, or the employee's final rate of compensation, whichever is higher. The "average regular rate of compensation" is calculated by dividing the total regular and overtime wages earned by the employee during the three years prior to the date of termination by the number of days worked over the same three year period. The "final rate of compensation" is calculated by dividing the amount received by the employee in his or her last paycheck prior to termination divided by the number of days worked. For calculations involving salary or commission employees, the number of days worked is the number of days the employee was in active employment status;

(2) in the case of an employee who became an employee of his/her current employer through a merger or consolidation of his/her former employer with/into his/her current employer, such employee's history of wage and benefit payments from his/her prior employer shall be treated as if such wages and benefits were earned with his/her current employer for purposes of making any calculations that are required under this Part, including the payment of back wages and benefits due;

(3) the value of the cost of any benefits to which the employee would have been entitled had his or her employment not been lost, including the cost of any medical expenses incurred by the employee that would have been covered under an employee benefit plan. Benefits that the Commissioner will consider shall include, but not be limited to: health benefits, private disability coverage, life insurance, employer paid retirement contributions, and vacation leave.

(b) Back pay and other liability under the act is calculated for the period of the employer's violation, up to a maximum of 60 days, or one-half the number of days that the employee was employed by the employer, whichever period is smaller.

(c) The amount of an employer's liability, under this section, shall be reduced by the following:

(1) Any wages, except vacation moneys accrued before the period of the employer's violation, paid by the employer to the employee during the period of the employer's violation. Wages are obtained using the same calculation in paragraph (a)(1) of this section.

WESTLAW  © 2024 Thomson Reuters. No claim to original U.S. Government Works.    1

SA-396

(2) Any voluntary and unconditional payments made by the employer to the employee that were not required to satisfy any legal obligations and that the employer can demonstrate were made prior to the issuance of the Commissioner's final determination. Such payments shall be made by check or through a previously agreed upon direct deposit arrangement. Severance packages or other payments required pursuant to employee contracts, collective bargaining agreements, through other legal obligations, or under law shall not be credited against liability under this section. Promises to make future payments shall not be credited against liability under this section.

(3) Any payments by the employer to a third party trustee, such as premiums for health benefits or payments to a defined contribution plan, on behalf of and attributable to the employee for the period of the violation.

(4) Any liability paid by the employer under any applicable Federal law governing notification of mass layoffs, plant closings, relocations, or covered reductions in work hours.

(5) In an administrative proceeding by the Commissioner, any liability paid by the employer prior to the Commissioner's determination as the result of a private action brought under this act.

(6) In a private action brought under this act, any liability paid by the employer in an administrative proceeding by the Commissioner prior to the adjudication of such private action.

(d) Any liability incurred by an employer under subdivision (a) of this section with respect to a defined benefit pension plan may be reduced by crediting the employee with service for all purposes under such a plan for the period of the violation.

(e) The period of the violation, for which the employer is liable to each employee, begins on the date of the employee's employment loss and continues up to 90 days after the date the employee received notice. Where the employer failed to provide notice, the period of the violation is 90 days. Where the employer claims exemption from the notice requirements under one of the exceptions provided for in the act, the Commissioner will consider all information obtained during the investigation and determine when it would have been practicable for the employer to provide notice, if at all.

(f) A WARN Act violation may be shared with other public entities making fitness, responsible contractor, or due diligence inquiries.

**Credits**

Sec. filed Jan. 30, 2009 as emergency measure; emergency rulemaking eff. April 29, 2009 expired June 27, 2009; emergency rulemaking eff. June 27, 2009 expired Aug. 24, 2009; emergency rulemaking eff. Aug. 23, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 16, 2009 expired Dec. 14, 2009; emergency rulemaking eff. Dec. 15, 2009 expired Feb. 12, 2010; emergency rulemaking eff. Feb. 12, 2010 expired May 12, 2010; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-7.3, 12 NY ADC 921-7.3

**Section 921-7.3. Violation; liability, 12 NY ADC 921-7.3**

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Compilation of Codes, Rules and Regulations of the State of New York
  Title 12. Department of Labor
    Chapter XII. Division of Employment and Training
      Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
        Subpart 921-7. Enforcement by the Commissioner of Labor (Refs & Annos)

This section has been updated. Click here for the updated version.

12 NYCRR 921-7.4

Section 921-7.4. Administrative review

Effective: [See Text Amendments] to June 20, 2023

(a) Should the commissioner identify any violations of the WARN Act or this Part, he or she shall notify the employer of such violations and the amounts due for wages, benefits, and/or penalties associated with such violations. Such violations may, in the commissioner's discretion, be set forth in the first instance in either a Notice of Violation or a Notice of Violation accompanied by a Notice of Hearing. In no event shall the commissioner issue an order or determination addressing such violations without having first held a hearing in the matter, except in those cases in which the employer has waived its right to such hearing pursuant to a settlement upon terms acceptable to the commissioner.

(b) Hearings. Administrative hearings for a violation of the State WARN Act shall be conducted by an employee of the Department of Labor designated by the Commissioner to be the hearing officer, who shall not be bound by statutory rules of evidence or by technical or formal rules of procedure. The procedure found in Part 701 of this Title, Procedural Rules for Hearings, shall be the sole and exclusive procedure for the conduct of such hearings, notwithstanding any other provision of law. The hearing officer, as soon after the conclusion of the hearing as possible, on the basis of the record made in the proceeding, shall submit his or her report and recommendation to the Commissioner, who shall promptly thereafter issue his or her order and determination.

(c) Determination and order of the Commissioner. If the Commissioner shall determine that an employer has violated any of the requirements of the act or this Part, the Commissioner shall issue an order which shall include any penalties assessed by the Commissioner and file a notice of entry thereof in the office of the Commissioner.

**Credits**
Sec. filed Jan. 30, 2009 as emergency measure; emergency rulemaking eff. April 29, 2009 expired June 27, 2009; emergency rulemaking eff. June 27, 2009 expired Aug. 24, 2009; emergency rulemaking eff. Aug. 23, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 16, 2009 expired Dec. 14, 2009; emergency rulemaking eff. Dec. 15, 2009 expired Feb. 12, 2010; emergency rulemaking eff. Feb. 12, 2010 expired May 12, 2010; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-7.4, 12 NY ADC 921-7.4

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    1

SA-399

Compilation of Codes, Rules and Regulations of the State of New York
   Title 12. Department of Labor
      Chapter XII. Division of Employment and Training
         Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
         Subpart 921-7. Enforcement by the Commissioner of Labor (Refs & Annos)

12 NYCRR 921-7.5

Section 921-7.5. Appeals

Currentness

Within 30 days of the filing of a notice of entry of the order in the office of the Commissioner, any party aggrieved thereby may commence a proceeding for the review thereof pursuant to article 78 of the Civil Practice Law and Rules. Such proceeding shall be commenced directly in the Appellate Division of the Supreme Court. If such order is not reviewed, or is so reviewed and the final judicial decision is in favor of the Commissioner, the Commissioner may file with the county clerk of the county where the employer resides or has a place of business the order of the Commissioner containing the amount found to be due. The filing of such orders shall have the full force and effect of a judgment duly docketed in the office of such clerk. The order may be enforced by and in the name of the Commissioner in the same manner, and with like effect, as the prescribed by the CPLR for the enforcement of a money judgment.

**Credits**
Sec. filed Jan. 30, 2009 as emergency measure; emergency rulemaking eff. April 29, 2009 expired June 27, 2009; emergency rulemaking eff. June 27, 2009 expired Aug. 24, 2009; emergency rulemaking eff. Aug. 23, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 16, 2009 expired Dec. 14, 2009; emergency rulemaking eff. Dec. 15, 2009 expired Feb. 12, 2010; emergency rulemaking eff. Feb. 12, 2010 expired May 12, 2010; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

Current with amendments included in the New York State Register, Volume XLVI, Issue 36, dated September 4, 2024. Some sections may be more current, see credits for details.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-7.5, 12 NY ADC 921-7.5

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

SA-400

Compilation of Codes, Rules and Regulations of the State of New York
  Title 12. Department of Labor
    Chapter XII. Division of Employment and Training
      Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
      Subpart 921-7. Enforcement by the Commissioner of Labor (Refs & Annos)

12 NYCRR 921-7.6

Section 921-7.6. Distribution of back pay

Currentness

The Commissioner shall distribute to all employees entitled to notice under the act and this Part any back pay and the value of any benefits recovered from an employer who did not provide such notice.

**Credits**
Sec. filed Jan. 30, 2009 as emergency measure; emergency rulemaking eff. April 29, 2009 expired June 27, 2009; emergency rulemaking eff. June 27, 2009 expired Aug. 24, 2009; emergency rulemaking eff. Aug. 23, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 16, 2009 expired Dec. 14, 2009; emergency rulemaking eff. Dec. 15, 2009 expired Feb. 12, 2010; emergency rulemaking eff. Feb. 12, 2010 expired May 12, 2010; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

Current with amendments included in the New York State Register, Volume XLVI, Issue 36, dated September 4, 2024. Some sections may be more current, see credits for details.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-7.6, 12 NY ADC 921-7.6

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    1

SA-401

Compilation of Codes, Rules and Regulations of the State of New York
    Title 12. Department of Labor
        Chapter XII. Division of Employment and Training
            Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
            Subpart 921-7. Enforcement by the Commissioner of Labor (Refs & Annos)

12 NYCRR 921-7.7

Section 921-7.7. Admissibility of decision or order

Currentness

No decision or order issued pursuant to this act shall be admissible or used in evidence in any subsequent court proceeding except in an action by the Commissioner or the employer to implement, enforce or challenge a determination made by the Commissioner pursuant to this act.

**Credits**
Sec. filed Jan. 30, 2009 as emergency measure; emergency rulemaking eff. April 29, 2009 expired June 27, 2009; emergency rulemaking eff. June 27, 2009 expired Aug. 24, 2009; emergency rulemaking eff. Aug. 23, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 16, 2009 expired Dec. 14, 2009; emergency rulemaking eff. Dec. 15, 2009 expired Feb. 12, 2010; emergency rulemaking eff. Feb. 12, 2010 expired May 12, 2010; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

Current with amendments included in the New York State Register, Volume XLVI, Issue 36, dated September 4, 2024. Some sections may be more current, see credits for details.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-7.7, 12 NY ADC 921-7.7

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

Compilation of Codes, Rules and Regulations of the State of New York
   Title 12. Department of Labor
      Chapter XII. Division of Employment and Training
         Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
         Subpart 921-8. Confidentiality of Information Obtained by the Commissioner of Labor (Refs & Annos)

This section has been updated. Click here for the updated version.

12 NYCRR 921-8.1

## Section 921-8.1. Confidentiality of information obtained by the Commissioner of Labor

Effective: [See Text Amendments] to June 20, 2023

(a) Except as otherwise provided in this Subpart information obtained by the Commissioner through the administration of the act from an employer and which is not otherwise obtainable by the Commissioner under the Labor Law or rules or regulations promulgated thereunder shall

(1) be confidential; and

(2) not be published or open to public inspection.

(b) Prior to public disclosure of any information otherwise deemed confidential pursuant to this Subpart in connection with any court action or proceeding, the employer shall be given a reasonable opportunity to make application to the court to protect the information's confidentiality.

(c) Names and addresses of employees provided to the Commissioner pursuant to Labor Law section 860-b and Subpart 921-2 of this Part shall remain confidential.

(d) Notwithstanding the provisions set forth in subdivisions (a) and (c) of this section, information obtained by the Commissioner from the WARN notice required by the act or this Part shall not be considered confidential.

**Credits**
Sec. filed Jan. 30, 2009 as emergency measure; emergency rulemaking eff. April 29, 2009 expired June 27, 2009; emergency rulemaking eff. June 27, 2009 expired Aug. 24, 2009; emergency rulemaking eff. Aug. 23, 2009 expired Oct. 19, 2009; emergency rulemaking eff. Oct. 16, 2009 expired Dec. 14, 2009; emergency rulemaking eff. Dec. 15, 2009 expired Feb. 12, 2010; emergency rulemaking eff. Feb. 12, 2010 expired May 12, 2010; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-8.1, 12 NY ADC 921-8.1

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

SA-404

Compilation of Codes, Rules and Regulations of the State of New York
  Title 12. Department of Labor
    Chapter XII. Division of Employment and Training
      Part 921. New York State Worker Adjustment and Retraining Notification (Warn) Requirements (Refs & Annos)
        Subpart 921-9. Preservation of Other Rights and Remedies (Refs & Annos)

12 NYCRR 921-9.1

Section 921-9.1. Other rights

Currentness

The provisions of this Part, including but not limited to notice requirements, shall not be used to alter, abridge, or affect the employment status or rights of any employee entitled to relief under this act, where the employee's status or rights have been otherwise defined or determined by statute, contract or collective bargaining agreement. The rights and remedies provided to employees by the act and its regulations are in addition to, and not in lieu of, any other contractual or statutory rights and remedies of the employees, and are not intended to alter or affect such rights and remedies, except that the period of notification required by the act shall run concurrently with any period of notification required by contract or any other statute. Nothing in this part shall be read to abridge, mitigate, reduce, remove, or otherwise affect an employer's responsibility to comply with the notice requirements set forth in the federal Worker Adjustment and Retraining Notification Act and regulations promulgated thereunder.

**Credits**
Sec. filed Feb. 12, 2010 as emergency measure; emergency rulemaking eff. May 12, 2010, expired July 10, 2010; emergency rulemaking eff. July 9, 2010, expired Sept. 6, 2010; new adopted filed Aug. 31, 2010 eff. Sept. 15, 2010; emergency rulemaking eff. Sept. 7, 2010, expires Sept. 15, 2010.

Current with amendments included in the New York State Register, Volume XLVI, Issue 36, dated September 4, 2024. Some sections may be more current, see credits for details.

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-9.1, 12 NY ADC 921-9.1

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

SA-405

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
SELENA STALEY, VIVIAN HOLMES, and : 
OLIVE IVEY, on behalf of themselves and all :
others similarly situated, :
:
:    Case No.: 22-CV-6781 (JSR)
:
Plaintiffs, :
v. :
:
:
FSR INTERNATIONAL HOTELS INC. d/b/a :
FOUR SEASONS HOTELS AND RESORTS, :
HOTEL 57 SERVICES, LLC, HOTEL 57, LLC, TY :
WARNER HOTELS & RESORTS, LLC, and H. :
TY WARNER :
:
:
Defendants. :
------------------------------------------------------------- X

**DEFENDANTS' JOINT SUPPLEMENTAL MEMORANDUM OF LAW IN
FURTHER SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

**SMITH, GAMBRELL & RUSSELL, LLP**

Marc B. Zimmerman
Kathryn T. Lundy
James J. Boland
1301 Avenue of the Americas, 21st Floor
New York, NY 10019
(212) 907-9700

*Attorneys for Defendants Hotel 57 Services, LLC,
Hotel 57, LLC, Ty Warner Hotels & Resorts, LLC
and H. Ty Warner*

**STOKES WAGNER, ALC**

Paul Wagner
John Hunt
903 Hanshaw Road
Ithaca, NY 14850
(607) 257-5165

*Attorneys for Defendant FSR
International Hotels, Inc.*

SA-406

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................ 2

    POINT I    PLAINTIFFS FAILED TO PRESERVE AND THEREFORE
              WAIVED ANY ARGUMENT PERTAINING TO THE LEGAL
              ISSUE RAISED IN THE ORDER ................................................................. 2

    POINT II   THE WARN ACTS DO NOT REQUIRE ADDITIONAL NOTICE
              TO EMPLOYEES IF THE REASON FOR AN EMPLOYMENT
              LOSS CHANGES ......................................................................................... 5

CONCLUSION ........................................................................................................................ 9

i

SA-407

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bank of America, N.A. v. Bear Stears Asset Management,*
  969 F.Supp.2d 339 (S.D.N.Y. 2013) ................................................................. 2

*Coudert v. Janney Montgomery Scott, LLC,*
  No. 3:03 Civ. 324, 2005 WL 1563325 (D. Conn. July 1, 2005) .................................. 3

*Graphic Communications International Union, Local 31-N v. Quebecor Printing (USA) Corp.,*
  252 F.3d 296 (4th Cir. 2001) ........................................................................ 7

*Greenidge v. Allstate Ins. Co.,*
  446 F.3d 356 (2d Cir. 2006) ......................................................................... 2

*Henry v. Metropolitan Transp. Authority,*
  2014 WL 4783014 (S.D.N.Y. 2014) ............................................................... 2, 3

*Leeper v. Hamilton Cnty. Coal, LLC,*
  939 F.3d 866 (7th Cir. 2019) ........................................................................ 7

*Lyman v. CSX Transp. Inc.,*
  364 Fed. Appx. 699 (2d. Cir. 2010) ................................................................. 2

*Presser v. Key Food Stores Co-Op.,*
  01 CV 8059, 2006 WL 2086346 (E.D.N.Y. July 25, 2006) ....................................... 7

*United States ex rel. Fabula v. American Medical Response, Inc.,*
  2019 WL 4414951 (D. Conn. 2019) ................................................................. 3

**Statutes**

29 U.S.C. §2101(a)(6) ................................................................................... 5

**Regulations**

12 N.Y.C.R.R. § 921-2.3(b) ........................................................................ 6, 8

12 N.Y.C.R.R. § 921-6.1 ................................................................................ 6

12 N.Y.C.R.R. § 921-1.1(f) ............................................................................. 5

20 C.F.R. § 639.1 ........................................................................................ 5

20 C.F.R. § 639.7(a)(7) .................................................................................. 7

ii

SA-408

20 C.F.R. § 639.7(c) .................................................................................................. 8

20 C.F.R. § 639.7(d) .................................................................................................. 6

20 C.F.R. § 639.9 ....................................................................................................... 6

20 C.F.R. § 639.10 ..................................................................................................... 7

**Other Authorities**

H.R. CONF. REP. 100-576, 1046, 1988 U.S.C.C.A.N. 1547, 2079 ............................... 5

## PRELIMINARY STATEMENT

At the September 6, 2024 oral argument for Defendants' motions for summary judgment, the Court, *sua sponte*, inquired whether the WARN Acts required Hotel 57 Services, LLC to provide Plaintiffs a new, additional, WARN Act notice if the hotel remained closed (and Plaintiffs' furlough continued) but the reason for Plaintiffs' employment loss ceased to exist. The Court framed the issue as follows:

> THE COURT: Again, and forgive me for coming back to the issue that I'm asking about, but, to be frank, I think it's the issue that most troubles me. Which is, assuming I'm going to hear from your adversary in a minute as to why he thinks your WARN notice was not timely, adequate, or whatever, but assuming he's wrong and everything you did in your original WARN notice was fine, nevertheless, does the continued delay in the reopening require a new WARN notice because the reason for the original WARN notice has now dissipated?

Tr. at 13:16-24.[1]  The Court posed a hypothetical:

> THE COURT: That's why I asked whether it's a material issue. I'll give you my hypo once again because I want to be sure I understand your response. If, in my hypo, the hotel closed down because of COVID-19 and gave a proper WARN statement, and then it made the decision, okay, before we reopen, we're going to take advantage of this and do some major changes in our hotel, upgrade, and in my hypothetical, you know that the upgrades are going to take 20 years. And do you then have to issue another WARN statement? And I think you said, no, you don't. And that's what's giving me pause.

---

[1] A copy of the September 6, 2024 hearing transcript ("Tr.") is annexed to the accompanying Declaration of Kathryn T. Lundy dated September 16, 2024 ("Lundy Decl.") at ¶ 2, Exhibit A.

SA-410

Tr. at p. 14:10-14. The same day, the Court issued an Order (Dkt. 132; the "Order") identifying the same discrete legal issue and directed supplemental briefing on this substantive legal question and whether the issue has been preserved by Plaintiffs:

> [W]hether or not defendants FSR International Hotel Inc., Hotel 57 Services, LLC, Hotel 57, LLC, and Ty Warner Hotels & Resorts LLC [ ] were required to provide additional notice under the federal and state Worker Adjustment and Retraining Notification Acts ("WARN Acts") when layoffs continued following the conclusion of the COVID-19 pandemic.

*See* Order at p. 1.

As the Warner Defendants told the Court at oral argument, the answer to each of these questions is "no."

## ARGUMENT

### POINT I

### PLAINTIFFS FAILED TO PRESERVE AND THEREFORE WAIVED ANY ARGUMENT PERTAINING TO THE LEGAL ISSUE RAISED IN THE ORDER

On a motion for summary judgment, a district court cannot properly consider an argument not raised in the Complaint and raised for the first time in opposition to summary judgment. *See Greenidge v. Allstate Ins. Co.*, 446 F.3d 356 (2d Cir. 2006) (claim was not preserved since it was not raised in the complaint, noting further that "the central purpose of a complaint is to provide the defendant with notice of the claims asserted against"); *see also Bank of America, N.A. v. Bear Stears Asset Management,* 969 F.Supp.2d 339, 352 (S.D.N.Y. 2013) (Plaintiff waived theory of liability by failing to raise it prior to summary judgment); *Lyman v. CSX Transp. Inc.,* 364 Fed. Appx. 699, 702 (2d. Cit. 2010) (not abuse of discretion for district court to decline to consider new theory of negligence liability raised for first time in opposition to summary judgment). Indeed, claims based on new legal theories are commonly rejected at the summary judgment stage. *Henry*

2

*v. Metropolitan Transp. Authority*, 2014 WL 4783014 at \*10 (S.D.N.Y. 2014), *citing to*, *Coudert v. Janney Montgomery Scott, LLC*, No. 3:03 Civ. 324, 2005 WL 1563325 at \*2 (D. Conn. July 1, 2005) (defendants did not move for summary judgment on new claims and would be prejudiced were the Court to consider them); *United States ex rel. Fabula v. American Medical Response, Inc.*, 2019 WL 4414951 (D. Conn. 2019) (Plaintiffs' general allegations in the amended complaint not sufficient to put Defendants on notice of specific theories).

That is the case here. Plaintiffs never advanced a legal theory of purported WARN Act violations for the alleged failure to provide notice after the reasons for Four Seasons Hotel New York's (the "Hotel") closure to outside guests purportedly changed.

First, Plaintiffs advanced only a single theory in their initial Complaint ("Compl.") regarding alleged federal and State WARN Act violations -- that Defendants violated the WARN Acts by not providing 60 or 90-day advanced notice of Plaintiffs' employment loss, which they alleged was March 20, 2020 (defined as the "Furlough Date"). *See* Lundy Decl. at ¶ 3, Exhibit B (Compl.) at ¶¶ 2, 173-207. Specifically, Plaintiffs alleged only that "[b]ecause none of these employees were provided with their job back since the Furlough Date, Defendants effectively terminated the employment of all on the Furlough Date, without the required WARN Act notice." Compl. at ¶¶ 182, 196. Plaintiffs further alleged only that "the employment of Plaintiffs and those similarly situated was retroactively terminated on the Furlough Date." *Id.* at ¶ 178. Plaintiffs *did not allege* in the initial Complaint that any subsequent WARN Act Notice was required, let alone that notice was required because the reasons for the Hotel's continued closure purportedly changed.

Second, Plaintiffs filed an amended Complaint ("Amd. Compl."), advancing two theories of purported WARN Acts violations: (1) Defendants "failed to provide timely and proper WARN

3

Notice before the layoffs exceeded six months on or before September 21, 2020" (Amd. Compl. at ¶ 170)[2]; and (2) Defendants "were required to give new timely and proper WARN notices each time Defendants reasonably foresaw that an additional six-month extension [of the layoff] would be required" (*id.* at ¶ 172).  Like the initial Complaint, nowhere in the amended Complaint do Plaintiffs assert a claim that additional notices were required by the WARN Acts because the reasons for the Hotel's continued closure purportedly changed.  In fact, the only mention of the "reason" for the Hotel's continued closure in the amended Complaint was in the context of Plaintiffs' claim for no-fault separation pay (*id.* at ¶¶ 28, 29) -- alleging Defendants "concocted an indefinite furlough charade" for the purpose of saving "millions of dollars instead of paying Plaintiffs … their No-Fault Separation Pay." *Id.*[3]

Third, Plaintiffs' opposition to Defendants' summary judgment motions similarly focused only on the foregoing theories of WARN Act violations, along with their claim that the single employer doctrine applies among the Defendants.  Plaintiffs did not advance or argue, directly or indirectly, that the alleged reason for the Hotel's continued closure required a new WARN Act notice.  *See* Plaintiffs' MOL in Opposition to the Warner Defendants' Motion for Summary Judgment (Dkt. 119) at pp. 10-12).

Fourth, the only time a theory of WARN Act violations based on the reasons for the Hotel's continued closure has *ever* been raised in this case was by the Court -- not Plaintiffs -- during the September 6, 2024 hearing.  *See* Tr. at pp. 13:16 -15:10.

---

[2] *See* Declaration of Marc B. Zimmerman in Support of the Warner Defendants' Motion for Summary Judgment dated May 31, 2024 ("Zimmerman Decl.") at Exhibit A (Amd. Compl.).

[3] The same is true for the allegations set forth in the initial Complaint -- reference to the reason for the Hotel's continued closure was alleged only in the context of the alleged breach of contract for purportedly refusing to pay No-Fault Separation Pay.  *See* Compl. at ¶¶ 157 – 160.

Accordingly, Plaintiffs failed to preserve, and therefore waived, this legal theory and it should not be considered for purposes of Defendants' motions for summary judgment.

## POINT II

### THE WARN ACTS DO NOT REQUIRE ADDITIONAL NOTICE TO EMPLOYEES IF THE REASON FOR AN EMPLOYMENT LOSS CHANGES

The express -- *and only* -- purpose of the WARN Act is provide advance notice of a qualifying employment loss to "provide[] workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." 20 C.F.R. § 639.1. This advance notice requirement reflects Congress' intent "to meet the need for individuals and communities to begin planning for dislocation before the dislocation occurs." H.R. CONF. REP. 100-576, 1046, 1988 U.S.C.C.A.N. 1547, 2079. This objective is not in dispute (*see* Amd. Compl. at ¶ 175).

An employer's obligations under the WARN Acts are triggered by an "employment loss" as defined in the statutes -- and nothing else.[4] Critically, the WARN Acts impose no obligation on an employer beyond timely and proper notice of an employment loss. An examination of the requirements for the contents of WARN Act Notices support this fact. Notices to affected employees under the WARN Acts must include only: (1) a statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect; (2) the expected date when the mass layoff will commence and the expected date

---

[4] "Employment loss" is defined essentially identically in both the federal and New York WARN Acts as *only* (with limited exceptions not present here): (a) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (b) a layoff exceeding 6 months, or (c) a reduction in hours of work of more than 50 percent during each month of any 6-month period. *See* 29 U.S.C. §2101(a)(6); 12 N.Y.C.R.R. § 921-1.1(f).

5

when the individual employee will be separated; (3) an indication whether or not bumping rights exist; and (4) the name and telephone number of a company official to contact for further information. 20 C.F.R. § 639.7(d).[5]  The reason for the employment loss *is not required*.

Similarly, in circumstances where employees are provided less than 60- or 90-day notice because of unforeseen business circumstances, an employer *is not required to identify any reason for the employment loss* -- only " a brief statement of the reason for reducing the notice period, in addition to the other elements set out in § 639.7."  20 C.F.R. § 639.9; *see also* 12 N.Y.C.R.R. § 921-6.1 (emphasis added) ("[i]f an employer is unable to provide the notice as required by the Act as a result of circumstances described in this section, it shall still provide as much notice as is practicable accompanied by *a statement of the basis for reducing the notice period*").[6]

Simply put, nothing in the WARN Acts imposes an obligation to provide additional notice to employees should the reason for an employment loss change or cease to exist.[7]  Once timely and proper notice of an employment loss is provided, that ends the employer's WARN Acts obligations.  Nothing in the WARN Acts: (1) obligate an employer to take, or not take, any further actions towards their employees (or former employees, if and as applicable) concerning that employment loss; or (2) impose any liability on an employer for any action concerning that

---

[5] The requirements for notice under the NY WARN Act are essentially identical to those required by the federal WARN Act.  *See* 12 N.Y.C.R.R. § 921-2.3(b).  Like the federal WARN Act, the New York WARN Act does not require identifying the reason of the employment loss in the notice.  *Id.*

[6] Neither the WARN Acts, their regulations or their voluminous legislative histories even address, much less impose obligations on an employer concerning the "reason(s)" for an employment loss other than in the initial context of applying the unforeseen business circumstance exception permitting a shorter advance notice of an employment loss and requiring a concise statement as to the reason notice was delayed (and not the reason for the employment loss).

[7] Defendants interpret the Court's use of the term "dissipated" (Tr. at 13:16-24) to mean "cease to exist."

6

employment loss.  In fact, the regulations expressly state that it is "not the intent of the regulations, that errors in the information provided in a notice that occur because events subsequently change or that are minor, inadvertent errors are to be the basis for finding a violation of WARN."  20 C.F.R. § 639.7(a)(7).[8]

Here, it is undisputed that Plaintiffs experienced an employment loss under the WARN Acts when they were temporarily furloughed early in the COVID-19 pandemic.  It also is undisputed that Hotel 57 Services, LLC provided notice of Plaintiffs' temporary furlough on August 5, 2020 -- promptly upon its understanding that Plaintiffs' temporary furlough would likely last more than six (6) months.[9]  Plaintiffs concede they were provided that WARN Act notice.  *See* Pls. R. 56 Counterstatement (Dkt. 120) at ¶¶ 93-96, 98-101.

Once Hotel 57 Services, LLC provided notice to Plaintiffs of their employment loss, its obligations under the WARN Acts ended.  The WARN Acts do not require an employer otherwise to update, follow up or even communicate in any way with employees concerning their employment loss.

---

[8] Of course, new notice under the WARN Acts are required where (inapplicable to this lawsuit) a new employment loss occurs, for example: (1) where an employer notifies its employees that a previously noticed temporary layoff is changed to a permanent plant closing (*see, e.g., Graphic Communications International Union, Local 31-N v. Quebecor Printing (USA) Corp.*, 252 F.3d 296 (4th Cir. 2001); or (2) where the date or scheduled dates of a plant closing or mass layoff is extended before the layoff occurs. *See* 20 C.F.R. § 639.10; *Presser v. Key Food Stores Co-Op.*, 01 CV 8059, 2006 WL 2086346 (E.D.N.Y. July 25, 2006).  Plainly, however, "the same employment action" does not satisfy two separate categories of employment losses under the WARN Act.  *See Leeper v. Hamilton Cnty. Coal, LLC*, 939 F.3d 866, 872 (7th Cir. 2019) (*citing Graphic Communications, supra*, 252 F.3d 296 (4th Cir. 2001)).  Neither circumstance exists in this case and, therefore, the notice provided to Plaintiffs on August 5, 2020 was sufficient.

[9] For purposes of this supplemental brief, Defendants adhere to the Court's direction at oral argument assuming Hotel 57 Services, LLC provided timely and proper WARN Act notices to Plaintiffs on August 5, 2020.  Defendants respectfully refer the Court to the Warner Defendants' briefing in support of its motion for summary judgment (Dkt. 99 at Point I(B) (pp. 16-19); Dkt. 131 at Point II (pp. 8-13) in which it demonstrates the Court's assumption is correct.

Specific to the Court's hypothetical at oral argument, assuming (as is true) the Hotel closed (and its employees suffered an employment loss under the WARN Acts) due to the COVID-19 pandemic, and further assuming (as also is true) Hotel 57 Services, LLC provided proper advance WARN Act notice to Plaintiffs of their employment loss, its obligations under the WARN Acts for that employment loss were fully and finally satisfied. Whether the Hotel continued to stay closed (and Plaintiffs' employment loss continues) as a result of the pandemic, renovations, a management dispute, a less-than-full recovery of the hospitality industry, or a combination of these or any other reasons is irrelevant. Plaintiffs were given proper notice of their employment loss on August 5, 2020 and no further notice under the WARN Acts were required. This is true whether the employment loss lasts 20 days, 20 months or (to the Court's hypothetical) 20 years.[10] Because Plaintiffs' employment loss has not changed, no additional WARN Act notice beyond the August 5, 2020 notice was required to fully satisfy Hotel 57 Services, LLC's statutory obligation.[11]

---

[10] The WARN Acts similarly make no distinction (and impose no additional obligations) whether an employment loss is permanent or temporary. All that is required is the employer to state whether the planned action is *expected to be* permanent or temporary (*see* 20 C.F.R. §639.7(c); 12 N.Y.C.R.R. § 921-2.3(b); not any further information following the notice – even if that expectation changes, and for whatever reason.

[11] As set forth in the Warner Defendants' Local Civil Rule 56.1 Statement dated May 31, 2024 (Dkt. 95) ("R. 56.1"), the admissible evidence establishes that: (1) following the temporary suspension of the Hotel's operations with respect to outside guests on March 20, 2020 due to the impact of COVID-19, ongoing construction projects at the Hotel continued (R. 56.1 at ¶¶ 74 132, 133); (2) the Hotel's continuing closure following the temporary suspension of its operations with respect to outside guests on March 20, 2020 was due to the impact of COVID-19 on its operation and long-term[] effects on the luxury hotel business (*id.* at ¶¶ 89-90), 134); (3) the Hotel will re-open once the owner and operator determine a way to do so profitably and safely, which re-opening is scheduled to be in Fall 2024 (*id.* at ¶¶ 90, 131); and (4) upon the Hotel's re-opening, Hotel 57 Services, LLC's employees, who have not either transferred or resigned, and who remain on furlough, have the right to recall to the Hotel when it re-opens (*id.* at ¶ 135). Plaintiffs have not, nor can they, present any admissible evidence to deny the foregoing material facts. *See* Pls. R. 56 Counterstatement (Dkt. 120) at ¶¶ 89-90, 131, 135.

8

**CONCLUSION**

For all the reasons set forth herein. in Defendants' moving papers and during oral argument, Defendants respectfully submit their motions for summary judgment should be granted, in their entirety.

Dated: New York, New York
      September 16, 2024

SMITH, GAMBRELL & RUSSELL, LLP      STOKES WAGNER, ALC

/s/ Marc B. Zimmerman              /s/ Paul E. Wagner
Marc B. Zimmerman                 Paul Wagner
Kathryn T. Lundy                   John Hunt
James J. Boland                     903 Hanshaw Road
1301 Avenue of the Americas, 21st Floor   Ithaca, NY 14850
New York, NY 10019             (607) 257-5165
(212) 907-9700

*Attorneys for Defendants Hotel 57 Services, LLC,*   *Attorneys for Defendant FSR*
*Hotel 57, LLC, Ty Warner Hotels & Resorts, LLC*   *International Hotels, Inc.*
*and H. Ty Warner*

9

SA-418

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
SELENA STALEY, VIVIAN HOLMES, and OLIVE : 
IVEY, on behalf of themselves and all others similarly : 
situated, :
                                         :   Case No.: 22-CV-6781 (JSR)
                   Plaintiffs, :
      v.                          :   **DECLARATION OF**
                                  :   **KATHRYN T. LUNDY**
FSR INTERNATIONAL HOTEL INC. d/b/a FOUR :
SEASONS HOTELS AND RESORTS, HOTEL 57 :
SERVICES, LLC, HOTEL 57, LLC, TY WARNER :
HOTELS & RESORTS, LLC, and H. TY WARNER :
                                  :
              Defendants. :
------------------------------------------------------------------ X

I, Kathryn T. Lundy, pursuant to 28 U.S.C. § 1746, state and declare as follows:

1. I am a Partner at Smith, Gambrell & Russell, LLP, attorneys for Defendants Hotel 57 Services, LLC, Hotel 57, LLC, Ty Warner Hotels & Resorts, LLC and H. Ty Warner. I have personal knowledge of the matters set forth in this declaration.

2. I submit this declaration in support of the Defendants' Joint Supplemental Memorandum of Law in Further Support of Defendants' Motions for Summary Judgment, dated September 16, 2024 ("Supplemental MOL").

3. A true and correct copy of the September 6, 2024 transcript of the oral argument on Defendants' Motions for Summary Judgment is annexed hereto as **Exhibit A**.

4. A true and correct copy of Plaintiffs' initial Complaint in this matter, dated August 9, 2020 is annexed hereto as **Exhibit B**.

5. For all the reasons set forth in the Supplemental MOL, Defendants' moving papers and during oral argument, Defendants respectfully submit their motions for summary judgment should be granted, in their entirety.

6.      I declare under the penalty of perjury that the foregoing is true and correct.


Dated: New York, New York
        September 16, 2024

                            By:  */s/ Kathryn T. Lundy*
                                 Kathryn T. Lundy

2

SGR/71581564.1

SA-420

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
SELENA STALEY, VIVIAN HOLMES, and
OLIVE IVEY, on behalf of themselves and
all others similarly situated,

               Plaintiffs,                         COMPLAINT Docket No. 22-cv-6781

          -against-

FOUR SEASONS HOTELS AND RESORTS,
HOTEL 57 SERVICES, LLC, HOTEL 57, LLC,
TY WARNER HOTELS & RESORTS LLC,
and H. TY WARNER,

                                              Jury Trial Demanded

            Defendants.
--------------------------------------------------------X

**COMPLAINT**

      Plaintiffs Selena Staley, Vivian Holmes, and Olive Ivey (hereinafter referred to collectively as "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, Risman & Risman, P.C. and Brustein Law PLLC, as and for their Complaint in this action against Defendants Four Seasons Hotels and Resorts ("Four Seasons"), Hotel 57 Services, LLC ("Hotel 57 Services, LLC"), Hotel 57 LLC ("Hotel 57 LLC") (Hotel 57 Services LLC and Hotel 57 LLC collectively referred to as "Hotel 57"), Ty Warner Hotels & Resorts LLC ("Ty Warner Hotels") and H. Ty Warner ("Ty Warner") (Hotel 57, Ty Warner Hotels, and Ty Warner collectively referred to as "Warner Defendants") (Four Seasons and Warner Defendants collectively referred to as "Defendants"), respectfully allege as follows:

## NATURE OF THE ACTION

1.     This action is brought against the Defendants to remedy violations of the federal Worker Adjustment and Retraining Notification ("WARN") Act, the New York State Worker Adjustment and Retraining Notification ("NY WARN") Act, breach of contract, breach of implied covenant of good faith and fair dealing, and tortious interference with a contract.

2.     Beginning approximately March 20, 2020, and continuing for thirty days thereafter ("the Furlough Date"), Plaintiffs and other similarly situated employees that were working at the hotel, located at 57 East 57th Street, New York, New York, known as Four Seasons Hotel New York and/or Four Seasons New York ("The Hotel") were placed on furlough for an indefinite period of time.

3.     Because the furloughs/layoffs extended more than six months and proper notice for extension was never provided by any of the Defendants, Plaintiffs and the other similarly situated employees were effectively terminated from their employment when their furloughs began.

4.     Defendants failed to provide Plaintiffs as well as other employees similarly situated with 90 days' advance written notice of their terminations of employment, as required under the NY WARN Act when there is a plant closing or mass layoff.

5.     Defendants also failed to provide Plaintiffs as well as other employees similarly situated  and terminated from their employment at that time, with 60 days' advance written notice of their terminations of employment, as required under the federal WARN Act when there is a plant closing or mass layoff.

6.     By reason of Defendants' unlawful conduct, Plaintiffs and those similarly situated have suffered monetary damages, and other resulting injury and loss.

7.      Despite terminating the employment of the Plaintiffs and other similarly situated employees in New York and making their layoffs permanent, Defendants have not paid them the No-Fault Separation Pay owed to them as per their contracts.

8.      Initially, Defendants claimed that there was a decision to suspend the operations of The Hotel due to Covid-19, but thereafter Defendants claimed that the decision to continue to shut down the operations of The Hotel was the result of other factors.

9.      To avoid paying Plaintiffs and other similarly situated employees in New York what they are contractually obligated to pay them, Defendants have instead shut down The Hotel claiming that it was undergo renovations, and therefore could not be opened for business.

10.     Upon information and belief, the reason provided to the Plaintiffs and other employees similarly situated by the Defendants was false, and the real reason was that Defendants wanted to save millions of dollars instead of paying Plaintiffs and other similarly situated employees either their salaries or their No-Fault Separation Pay.

11.     Rather than pay the Plaintiffs and other similarly situated employees their contractually obligated salaries, or provide them the required WARN Act payments and No-Fault Separation Pay, Defendants have concocted an indefinite furlough to avoid their legal obligations.

**JURISDICTION AND VENUE**

12.     Plaintiffs bring this action pursuant to the federal WARN Act and 20 CFR Part 639. This Court has subject matter jurisdiction over Plaintiffs' pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

13.     In addition, this Court has supplemental jurisdiction over the NY WARN Act, Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, Tortious

SA-424

Interference with a Contract and Alter Ego claims under 28 U.S.C. § 1367, because these claims arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as part of the same case or controversy under Article III of the United States Constitution.

14.     Venue is proper in this district under 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this district.

15.     Venue is also proper in this judicial district under 28 U.S.C. § I 39l(b)-(c) because Defendants conduct business and can be found in this district and a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district, and because the alleged unlawful employment practice was committed here and employment records relevant to that practice are maintained and administered here.

**JURY TRIAL DEMAND**

16.     Plaintiffs demand a trial by jury in this action.

**PARTIES**

17.     Plaintiff Selena Staley (hereinafter referred to as "Ms. Staley" or "Plaintiff Staley") is a resident of the State of New York, who at all times material to this action has resided in New York County, New York. She is a Citizen of the United States. Ms. Staley was working at The Hotel for approximately twelve (12) years and was most recently working as a Reserving Agent until Defendants placed Ms. Staley on indefinite furlough of her employment on or about March 20, 2020, resulting in her permanent layoff.

4

18.     Plaintiff Vivian Holmes (hereinafter "Ms. Holmes" or "Plaintiff Holmes") is a resident of the State of New York, who at all times material to this action has resided in Westchester County, New York. She is a citizen of the United States. Ms. Holmes was working at The Hotel for approximately twenty-four (24) years and most recently was a Rooms Division Administrative Assistant, a position that she held until Defendants placed Ms. Holmes on indefinite furlough of her employment on or about March 20, 2020, resulting in her permanent layoff.

19.     Plaintiff Olive Ivey (hereinafter referred to as "Ms. Ivey" or "Plaintiff Ivey") is a resident of the State of New York, who at all times material to this action has resided in Kings County, New York. She is a citizen of the United States. Ms. Ivey was working at The Hotel for approximately twenty-four (24) years, and most recently as Senior Housekeeping Manager, a position she held until Defendants placed Ms. Ivey on indefinite furlough of her employment on or about March 20, 2020, resulting in her permanent layoff.

20.     Upon information and belief Plaintiffs along with other similarly situated employees were employed by Defendants Four Seasons and/or Hotel 57 Services, LLC and were paid their salaries by Hotel 57 Services, LLC.

21.     Upon information and belief, Warner Defendants were also joint employers of Plaintiffs and other similarly situated employees.

FOUR SEASONS:

22.     Upon information and belief Four Seasons, is a foreign corporation existing under the laws of the State of New York, doing business in New York, with its principal place of business located at 1165 Leslie Street, Toronto, ON M3C 2K8, Canada.

5

23.     Upon information and belief, Four Seasons, is authorized to conduct business and does conduct business in the State of New York, and operates hotels all over the world and all over the United States, including New York, and maintains a place of business at least two locations in the State of New York.

24.     Four Seasons is registered and authorized to do business and to work in New York State as well as other States in the United States, including California.

25.     Four Seasons also transacts significant business in New York.

26.     Upon information and belief, Four Seasons does conduct business and is authorized to do business in the State of New York.

27.     Upon information and belief Four Seasons also contracts to supply services in the State of New York.

28.     Upon information and belief Four Seasons regularly does or solicits business, or engages in other persistent course of conduct, or derives substantial revenue from services rendered in the State of New York.

29.     Four Seasons employs workers in the State of New York, and regularly conducts business in the State of New York.

30.     Upon information and belief, as of March 1, 2020, Four Seasons employed approximately 500 employees in New York State at The Hotel.

31.     Four Seasons employed Plaintiff and those similarly situated.

32.     Four Seasons managed The Hotel.

33.     Four Seasons operated The Hotel.

34.     Four Seasons made the decision to furlough the Plaintiffs on or about the Furlough date and those similarly situated.

6

35.    Four Seasons agreed to furlough the Plaintiffs and those similarly situated on or about the Furlough date.

36.    Four Season permanently laid off the Plaintiffs and those similarly situated.

37.    Four Seasons entered into a contractual agreement with Plaintiffs and those similarly situated.

HOTEL 57 SERVICES, LLC:

38.    Upon information and belief, Hotel 57 Services, LLC is a foreign corporation, existing under the laws of the State of New York, doing business in New York, with its principal place of business located at 57 East 57th Street, New York, New York.

39.    Upon information and belief, Hotel 57 Services, LLC is a domestic corporation, existing under the laws of the State of New York, doing business in New York, with its principal place of business located at 57 East 57th Street, New York, New York.

40.    Upon information and belief, Hotel 57 Services, LLC owns The Hotel.

41.    Upon information and belief, Hotel 57 Services, LLC operates The Hotel.

42.    Upon information and belief, at all relevant times, Hotel 57 Services, LLC employed the Plaintiffs and those similarly situated working at The Hotel.

43.    Upon information and belief, Hotel 57 Services, LLC is one of the owners of The Hotel.

44.    Upon information and belief, Hotel 57 Services, LLC transacts significant business in New York.

45.    Upon information and belief, Hotel 57 Services, LLC, is authorized to conduct business and does conduct business in the State of New York, and maintains a place of business at 57 East 57th Street, New York, New York.

46.     Upon information and belief, Hotel 57 Services, LLC is registered and authorized to do business and to work in New York State and transacts significant business in New York.

47.     Upon information and belief, Hotel 57 Services, LLC does conduct business and is authorized to do business in the State of New York.

48.     Upon information and belief Hotel 57 Services, LLC contracts to supply services in the State of New York.

49.     Upon information and belief Hotel 57 Services, LLC enters into contracts in the State of New York.

50.     Upon information and belief Hotel 57 Services, LLC regularly does or solicits business, or engages in other persistent course of conduct, or derives substantial revenue from services rendered in the State of New York.

51.     Upon information and belief, at all relevant times, Hotel 57 Services, LLC was and is an employer that regularly employs employees in the State of New York.

52.     Upon information and belief, at all relevant times, Hotel 57 Services, LLC employed Plaintiffs and those similarly situated working at the Hotel.

53.     Hotel 57 Services, LLC managed the Hotel.

54.     Hotel 57 Services, LLC operated the Hotel.

55.     Hotel 57 Services, LLC made the decision to furlough the Plaintiffs and those similarly situated on the Furlough date.

56.     Hotel 57 Services, LLC agreed to furlough the Plaintiffs and those similarly situated on the Furlough date.

57.     Hotel 57 Services, LLC permanently laid off the Plaintiffs and those similarly situated.

8

HOTEL 57 LLC:

58.    Upon information and belief, Hotel 57 LLC is a foreign corporation, existing under the laws of the State of New York, doing business in New York, with its principal place of business located at 57 East 57th Street, New York, New York.

59.    Upon information and belief, Hotel 57 LLC is a domestic corporation, existing under the laws of the State of New York, doing business in New York, with its principal place of business located at 57 East 57th Street, New York, New York.

60.    Upon information and belief, Hotel 57 LLC works to generate income for The Hotel.

61.    Upon information and belief, Hotel 57 LLC, is authorized to conduct business and does conduct business in the State of New York, and maintains a place of business at 57 East 57th Street, New York, New York.

62.    Upon information and belief, Hotel 57 LLC is registered and authorized to do business and to work in New York State and transacts significant business in New York.

63.    Upon information and belief, Hotel 57 LLC does conduct business and is authorized to do business in the State of New York.

64.    Upon information and belief Hotel 57 LLC contracts to supply services in the State of New York.

65.    Upon information and belief Hotel 57 LLC enters into contracts regularly in the State of New York.

66.    Upon information and belief Hotel 57 LLC regularly does or solicits business, or engages in other persistent course of conduct, or derives substantial revenue from services rendered in the State of New York.

9

67.    Upon information and belief Hotel 57 LLC is an employer that regularly employs employees in the State of New York.

TY WARNER HOTELS:

68.    Upon information and belief Ty Warner Hotels is a foreign corporation, existing under the laws of the State of New York, doing business in New York, with its principal place of business located at 280 Chestnut Avenue, Westmont, IL 60559.

69.    Upon information and belief Ty Warner Hotels is a domestic corporation existing under the laws of the State of New York, doing business in New York, with its principal place of business located at 280 Chestnut Avenue, Westmont, IL 60559.

70.    Upon information and belief, Ty Warner Hotels, is authorized to conduct business and does conduct business in the State of New York.

71.    Upon information and belief, Ty Warner Hotels operates The Hotel.

72.    Upon information and belief, Ty Warner Hotels owns The Hotel.

73.    Upon information and belief, Ty Warner Hotels maintains The Hotel.

74.    Upon information and belief Ty Warner Hotels also owns and operates a hotel in California.

75.    Upon information and belief Ty Warner Hotels is registered and authorized to do business and to work in New York State and also transacts significant business in New York.

76.    Upon information and belief, Ty Warner Hotels does conduct business and is authorized to do business in the State of New York.

77.    Upon information and belief Ty Warner Hotels contracts to supply services in the State of New York.

78.    Upon information and belief Ty Warner Hotels regularly does or solicits business, or engages in other persistent course of conduct, or derives substantial revenue from services rendered in the State of New York.

79.    Upon information and belief, at all relevant times herein, Ty Warner Hotels employed workers and conducted business in the State of New York.

TY WARNER:

80.    Upon information and belief Ty Warner is a citizen of Illinois and resides in Oak Brook, Illinois.

81.    Upon information and belief Ty Warner is the Chief Executive Officer of Defendants, Ty Warner Hotels, Hotel 57 Services, LLC, and Hotel 57 LLC.

82.    Upon information and belief Ty Warner is an Executive Officer of Ty Warner Hotels, Hotel 57 Services, LLC, and Hotel 57 LLC.

83.    Upon information and belief Ty Warner is the owner of The Hotel.

84.    Upon information and belief, Ty Warner conducts business in the State of New York.

85.    Upon information and belief, Ty Warner operates The Hotel.

86.    Upon information and belief, Ty Warner maintains The Hotel.

87.    Upon information and belief, Ty Warner generates substantial revenue from The Hotel.

88.    Upon information and belief Ty Warner also owns and operates a hotel in California.

89.    Upon information and belief Ty Warner transacts significant business in New York.

90.    Upon information and belief, Ty Warner does conduct business in the State of New York.

DEFENDANTS JOINTLY EMPLOYED PLAINTIFFS AND THOSE SIMILARLY SITUATED:

91.    Upon information and belief, as of February 2020, Defendants employed approximately 500 employees, including Plaintiffs and those similarly situated, at The Hotel.

92.    Four Seasons is an "employer" within the meaning of the WARN Act and NY WARN Act.

93.    Hotel 57 Services, LLC is an "employer" within the meaning of the WARN Act and NY WARN Act.

94.    Ty Warner Hotels is an "employer" within the meaning of the WARN Act and NY WARN Act.

95.    Ty Warner is an "employer" within the meaning of the WARN Act and NY WARN Act.

96.    Hotel 57 LLC is an "employer" within the meaning of the WARN Act and NY WARN Act.

97.    Upon information and belief, Defendants collectively controlled the operations of The Hotel, through their interrelation of operations; control over the employment opportunities and the employment characteristics of the employees of The Hotel, and control of hiring and/or firing of the employees of The Hotel, and most notably the hiring and/or selection of the general manager of The Hotel.

12

SA-433

98.     Upon information and belief, Defendants collectively controlled the terms and conditions of employment of the employees working at The Hotel, supervised or controlled work schedules, and set pay rates for employees working at The Hotel.

99.     At all relevant times, Defendants collectively also had and have control over day-to-day operations at The Hotel and as such are a single employer and have an interrelation of operations,  had direct control over the employees of The Hotel, authority over management, supervision, and oversight of the affairs, operation, and control of The Hotel, and had and have an active role in decision making at The Hotel.

100.     The Hotel also has a "Suite in the Sky" known as the "Ty Warner Penthouse" as well as the "Ty Bar" serving cocktails and rare spirits collection, as advertised on the Four Seasons website, displaying collective control over day-to-day operations of Defendants at The Hotel as well as the control that Defendant Ty Warner had in The Hotel.

101.     Further, in the Ty Warner Hotels and Resorts website, under the section Ty Warner properties lists, it lists The Hotel as a "Ty Warner property."

102.     Upon information and belief, Defendants collectively had de facto control of the decision to pay the No-Fault Separation Pay and were responsible for the employment practices at The Hotel, made the decision relating to the personnel policies, made the decision to refuse to open The Hotel so that Plaintiffs and those similarly situated could continue with their employment with The Hotel, and instead chose to place Plaintiffs and those similarly situated on indefinite furlough leading to the termination of employment of the Plaintiffs and similarly situated employees of The Hotel.

13

103. Defendants collectively were the decision-makers responsible for the employment practice giving rise to the decision to keep the Plaintiffs and similarly situated employees furloughed since the Furlough Date, resulting in their permanent layoff.

104. Defendants collectively were the decision-makers responsible for the employment practice giving rise to the decision to keep the Plaintiffs and similarly situated employees furloughed since the Furlough Date resulting in the termination of their employment. '

## STATEMENT OF FACTS:

105. On or about the Furlough Date, Four Seasons notified Selena Staley that she and her similarly situated coworkers would be placed on unpaid furlough.

106. On or about the Furlough Date Four Seasons notified Vivian Holmes that she and her similarly situated coworkers would be placed on unpaid furlough.

107. On or about the Furlough Date, Four Seasons notified Olive Ivey that that she and her similarly situated coworkers would be placed on unpaid furlough.

108. The Hotel is located at 57 East 57th Street, New York, New York 10022.

109. On the Furlough Date, there was a mass layoff of at least 25 employees, excluding part-time employees, constituting at least 33% of the employees at the single site of The Hotel.

110. On the Furlough Date, there was a plant closing, which was the permanent or temporary shut-down of a single site of employment where the shutdown resulted in an employment loss during a 30-day period where 25 or more employees, excluding any part time employees, wherein there was an effective cessation of production or of the work performed by a unit.

14

111.    On the Furlough Date, there was a mass layoff of at least 50 employees, excluding part-time employees, constituting at least 33% of the employees at the single site of The Hotel.

112.    On the Furlough Date, there was a plant closing, which was the permanent or temporary shut-down of a single site of employment where the shutdown resulted in an employment loss during a 30-day period where 50 or more employees, excluding any part time employees, wherein there was an effective cessation of production or of the work performed by a unit.

113.    The Hotel's temporary shutdown triggered the notice requirement because the minimum number of terminations and/or layoffs were exceeding six months or reductions in work hours constituted an employment loss under both the New York WARN Act and the Federal WARN Act.

114.    Even though the notice requirement was triggered, Defendants failed to provide the required notice.

115.    By keeping the Plaintiffs Staley, Holmes, and Ivey on furlough for more than six months, along with their similarly situated co-workers, Defendants effectively permanently laid off the Plaintiffs and those similarly situated.

116.    Defendants placed Plaintiffs and those similarly situated on temporary layoffs which exceeded six months, which is an employment loss under the WARN Act.

117.    Defendants placed Plaintiffs and those similarly situated on temporary layoffs which exceeded six months, which is an employment loss under the NY WARN Act.

118.    Contrary to both the WARN Act and the NY WARN Act, Defendants have incredibly claimed that Plaintiffs and those employees similarly situated, were somehow

15

furloughed for years, and in the case of at least the Plaintiffs, are somehow still on furlough, years after the Furlough date.

119.    Prior to their terminations of employment, Defendants did not provide any notice to any of the Plaintiffs, or to any of the other similarly situated employees that their employment would be terminated.

120.    Defendants have not provided any of the Plaintiffs the ability to go back to work and receive pay and benefits that they had prior to the Furlough date.

121.    Thus, Plaintiffs and other similarly situated employees were effectively permanently laid off on the Furlough Date.

122.    In addition, Defendants provided no information to any of the Plaintiffs or their co-workers concerning job training or re-employment services for which the employees might have been eligible, as is required under the WARN Act and NY WARN Act.

123.    None of the Plaintiffs or similarly situated employees received 90 days' advance written notice of their terminations of employment, as required under the NY WARN Act.

124.    None of the Plaintiffs or similarly situated employees received 60 days' advance written notice of their terminations of employment, as required under the WARN Act.

125.    Defendants have failed to comply with either the WARN Act or the NY WARN Act by not providing any of the required notice under the Acts to the Plaintiffs or those similarly situated

126.    Defendants claimed in December 2020 that The Hotel would reopen by the end of April 2021, but that did not happen.

127.    In December 2020, Defendants made no mention of the need for any repairs or maintenance which would preclude The Hotel from reopening.

16

128.    Then in February 2021, Defendants sent Plaintiffs and other similarly situated employees a memo informing them that due to local and state restrictions and the lack of demand, reopening in April 2021 was not feasible.

129.    In the February 2021 memo, Defendants further stated that re-opening The Hotel needed to be financially viable.

130.    In the February 2021 memo, Four Seasons assured Plaintiffs and those similarly situated that "… we will continue to closely monitor the market and demand situation.  We also will continue to monitor developments with the vaccines and overall pandemic.  Once the pandemic conditions improve and demand increases, our goal is to confirm a re-opening date with you approximately 60 – 90 days in advance of reopening the hotel."

131.    Defendants stated that the Plaintiffs and those similarly situated would be back at work when the consumer demand reached a certain threshold in order to reopen, but that did not happen.

132.    The February 2021 memo further stated that once the pandemic conditions improved and demand increased, their goal was to confirm a reopening date, but that did not happen.

133.    At no point in the February 2021 memo did Defendants mention a need for any infrastructure or maintenance work delaying the re-opening.

134.    The memo noted that other hotels in their competitive set in New York City were also postponing their re-opening dates.

135.    By June 2021, the other hotels in The Hotel's competitive set had all reopened.

136.    Then on June 25, 2021, Elizabeth Ortiz, Director of People and Culture for The Hotel sent a memo to Plaintiffs and other similarly situated employees announcing that The Hotel

17

would be undergoing substantial infrastructure and maintenance work which was expected to last well into 2022 and they would reassess reopening plans in early Spring 2022.

137.    The June 25, 2021 memo stated that recalling employees would be directly tied to the business rebounding.

138.    Notably the June 25, 2021 memo did not guarantee that all of the employees would have employment upon reopening. Despite that, Defendants still failed to provide any notice under either the WARN Act or the NY WARN Act that they would continue on furlough for more than six months, which constituted an unexcused extension, and as such was considered a termination of employment under both laws.

139.    However, no exception to NY WARN or the federal WARN Act applies and Defendants were required to provide adequate notice to those employees who were terminated from their employment.

140.    Further, exception applies or absolves Defendants of their obligation to provide notice of termination of employment under NY WARN Act and the WARN Act.

141.    In addition, no unforeseeable business exception applies or absolves Defendants of their obligation to provide notice of termination of employment under NY WARN Act and the WARN Act.

142.    Defendants cannot claim that the circumstances that led to the termination of employment of their New York employees was not reasonably foreseeable.

143.    Despite claiming that the Plaintiffs and those similarly situated employees were still on an indefinite furlough, Defendants did not permit the Plaintiffs or other similarly situated employees from seeking temporary employment to mitigate their hardship caused by Defendants

18

without waiving their right to the No-Fault Separation Pay or the ability to maintain their jobs upon the reopening of The Hotel.

144.    Upon information and belief, Defendants have purposefully stalled the reopening of The Hotel to their own financial benefit while simultaneously causing Plaintiffs and other similarly situated employees to choose between their own economic survival in the short term versus receiving their jobs back or their No-Fault Separation Pay at some unknown date in the future.

145.    Other Four Seasons have undergone complete renovations without shutting down the hotel.  As a matter of fact, The Hotel has undergone various renovations and has never before shut down the hotel to guests.

146.    According to a 2017 celebritynetworth.com article written about the "Ty Warner Penthouse at Four Seasons Hotel New York," the cost of the Ty Warner Penthouse was $50,000 a night for the penthouse and the entire hotel property of The Hotel had just undergone a $120 million dollar renovation, wherein "All 368 studios and suites were carefully curated by Ty Warner himself . . ."

147.    Upon information and belief, The Hotel finished a five-year renovation which included the guest rooms and business meeting rooms, and did not cause The Hotel to shut down at all.

148.    Upon information and belief, during that five-year renovation The Hotel also renovated a substantial part of the hotel, including but not limited to the front and back doors to the hotel, the spa, the banquet kitchen, room service kitchen, loading dock, lobby lounge, and elevators.

SA-440

149. Other hotels, including other Four Seasons hotels often undergo renovations, while staying open, sometimes undergoing renovations for years at a time.

150. Upon information and belief, Defendants are refusing to open The Hotel for reasons other than what they are presenting to the Plaintiffs or other similarly situated employees.

151. Upon information and belief, except for The Hotel and the Biltmore in Santa Barbara, which at least in part are owned and controlled by the Warner Defendants, all of the Four Seasons hotels have reopened since the pandemic began.

152. Upon information and belief, the excuse given for not opening The Hotel and Four Seasons Santa Barbara hotel was that each of these hotels was to undergo renovations necessitating the shutdown of those hotels.

153. Upon information and belief, Defendants have refused to provide Plaintiffs and others similarly situated with those benefits and/or No-Fault Separation Pay promised and required by the U.S. EmPact Employee Handbook for Four Seasons.

154. Upon information and belief, Defendant Four Seasons had a contractual agreement wherein they shared financial responsibility for the salaries and benefits for each of the Plaintiffs and each of the members of the similarly situated proposed Class.

155. Upon information and belief, Defendants had been trying to terminate the employment of workers from The Hotel in the past in order to reduce financial obligations.

156. Upon information and belief, Defendants refused to allow Plaintiffs and those similarly situated to get their jobs back, instead, continuing to keep them on furlough, resulting in their permanent layoffs, claiming that The Hotel could not be opened first due to COVID, then consumer demand and financial viability, and then for the first time because The Hotel had to undergo substantial renovations.

20

157.    Upon information and belief, that is not the actual reason for not reopening The Hotel, and the real reason was to save Defendants money by avoiding their contractual obligations to either pay the salaries of Plaintiffs and other similarly situated employees or pay their No-Fault Separation Pay.

158.    Upon information and belief, Defendants used the pandemic as an excuse to stop paying Plaintiffs and others similarly situated their salaries, referring to their permanent layoffs as a furlough in order to avoid providing the Plaintiffs and others similarly situated with benefits and pay that they are entitled to under their EmPact Agreement and the law.

159.    Upon information and belief, Defendants used the pandemic as an excuse to stop paying Plaintiffs and each of the members of the proposed Class, hoping that they would find new jobs before The Hotel reopened, to avoid ever paying them the required No-Fault Separation Pay.

160.    Upon information and belief, the cost of paying the salaries or No-Fault Separation Pay for all the Plaintiffs and other similarly situated employees would have been millions of dollars, which is the motivation behind Defendants' aforementioned conduct.

**CLASS ALLEGATIONS:**

161.    All Plaintiffs bring the federal WARN Act Claim (First Cause of Action), the NY WARN Act Claim (Second Cause of Action), the Breach of Contract Claim (Third Cause of Action), the Breach of Implied Covenant of Good Faith and Fair Dealing Claim (Fourth Cause of Action), the Tortious Interference with a Contract Claim (Fifth Cause of Action) and the Alter Ego Claim (Sixth Cause of Action)  on behalf of themselves and all others similarly situated as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3).

21

162. The "<u>Class</u>" is defined as all former employees of Defendants who worked for Defendants at The Hotel, and whose employment was furloughed on the Furlough Date, and as such whose employment was permanently laid off from Defendants as part of, or as the result of, being furloughed for more than six months and/or laid off as a result of a mass layoff and/or plant closing carried out by Defendants on the Furlough Date.

163. All Plaintiffs are members of the Class and all Plaintiffs seek to act as representatives of the proposed Class.

164. Plaintiffs reserve the right to modify the definition of the Class based on information that they or class counsel learn through discovery.

165. The proposed Class meets all of the requirements of Federal Rule of Civil Procedure 23, as follows:

<u>Numerosity</u>:

166. The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendants. Upon information and belief, Defendants terminated the employment of at least 200 full-time employees, on the Furlough Date from The Hotel.

167. Upon information and belief, the identity of all the members of the Class and the recent residence address of each of the Class members is contained in Defendants' books and records.

<u>Commonality</u>:

168. There are common questions of law and fact affecting the rights of the members of the Class, including, without limitation:

22

a. Whether the members of the Class were employees of Defendants who worked in a covered site of employment of Defendants;

b. Whether Defendants unlawfully terminated the employment of the members of the Class without cause on their part and without giving them 90 days advance written notice in violation of the NY WARN Act; and

c. Whether Defendants unlawfully terminated the employment of the members of the Class without cause on their part and without giving them 60 days advance written notice in violation of the federal WARN Act; and

d. Whether Defendants unlawfully failed to pay the Class members 60 days wages and benefits as required by the NY WARN Act and the federal WARN Act.

e. Whether Defendants unlawfully failed to pay the Class members and those similarly situated their No-Fault Separation Pay benefits as required by their contracts.

Typicality:

169.    The claims of Plaintiffs Staley, Holmes, and Ivey – the Named Plaintiffs – are typical of the claims of the Class members because they arise from the same course of conduct, *i.e.* Defendants' mass layoff and/or plant closure(s). Plaintiffs and the members of the proposed Class sustained the same or similar injuries arising out of and caused by Defendants' common course of conduct in violation of these claims. Plaintiffs' claims are thereby representative of, and co-extensive with, the claims of the proposed Class members.

23

Adequacy:

170.    The named representatives will fairly and adequately protect the interests of the proposed Class. There are no conflicts between the interests of the Plaintiffs and the other members of the proposed Class.

Rule 23(b)(3) Requirements:

171.    This action is maintainable as a class action under Rule 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the Class, because a class action is superior to other available methods for the fair and efficient adjudication of this litigation, where individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant, and damages suffered by individual Class members are small compared to the expense and burden of individual prosecution of this litigation.

172.    Concentrating all potential litigation concerning the rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the rights of all the members of the Class.

## AS AND FOR A FIRST CAUSE OF ACTION
### Violation of Federal Worker Adjustment and Retraining Notification Act
### (20 CFR Part 639)
### (On Behalf of All Plaintiffs and the Class Against Defendants.)

173.    Plaintiffs incorporate by reference the allegations set forth in the foregoing paragraphs of the Complaint as though set forth at length herein.

174.    Plaintiffs bring this action on behalf of themselves and the proposed Class against Defendants.

24

175.    Defendants employed 100 or more employees, excluding part-time employees.

176.    Plaintiffs and those similar situated were laid off for more than six months since the Furlough Date.

177.    Plaintiffs and those similarly situated were laid off for more than six months, resulting in their layoffs becoming permanent.

178.    Pursuant to the WARN Act, the employment of Plaintiffs and those similarly situated was retroactively terminated on the Furlough Date.

179.    Defendants were required by the WARN Act to give the Plaintiffs and the Class at least 60 days advance written notice of the terminations of their employments pursuant to the WARN Act, §§ 639.4 and 639.5 of the CFR.

180.    Defendants also failed to provide notice of:

    i.   The name and address of the employment site where the plant closing or mass layoff will occur, and the name and telephone number of a company official to contact for further information;

    ii.   A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;

    iii.   The expected date of the first separation and the anticipated schedule for making separations; and,

    iv.   The job titles of positions to be affected and the names of the workers currently holding affected jobs.

181.    Defendants terminated the employment of Plaintiffs and at least approximately 200 similarly situated employees as part of, or as the foreseeable result of, mass layoffs or plant closings ordered by Defendants on the Furlough Date by placing Plaintiffs on indefinite furlough

25

along with approximately 200 similarly situated employees on the Furlough Date, resulting in the employment loss of Plaintiffs and those similarly situated.

182. Because none of these employees were provided with their job back since the Furlough Date, Defendants effectively terminated the employment of all on the Furlough Date, without the required WARN Act notice.

183. At all relevant times, Defendants were each an individual or private business entity defined as "employer" under the WARN Act.

184. Defendants ordered a mass layoff or plant closing at the Facilities as defined by § 639.3 of the WARN Act, causing the termination of the employment of Plaintiffs and the Class.

185. Defendants are economically intertwined and are a single employer under the WARN Act.

186. Defendants failed to give the requisite notice required by the applicable law. The terminations of employment failed to give Plaintiffs and other similarly situated employees of The Hotel at least 60 days' advance notice, as required by the WARN Act.

187. Plaintiffs and the Class members suffered terminations of employment as defined by § 639.3 of the CFR, having their employment terminated by Defendants without cause on their part.

188. As a result of this violation, Plaintiffs and the Class members seek the payment of statutory remedies by Defendants under the WARN Act in the form of 60 days salary, commissions, bonuses, benefits, and health insurance premiums for 60 days following their respective terminations of employment.

189. Defendants failed to pay the Plaintiffs and each of the Class members their respective wages, salary, commissions, bonuses, and health insurance premiums for 60 days following their respective terminations.

SA-447

190.    Based upon the foregoing facts, Plaintiffs and each of the members of the proposed class were injured by Defendants' failure to give notice of the intended terminations of employment.

191.    Based upon the foregoing facts, Plaintiffs and each of the members of the proposed Class have sustained damages including but not limited to those damages afforded by the WARN Act, including but not limited to those damages listed above and costs and attorneys' fees.

### AS AND FOR A SECOND CAUSE OF ACTION
**Violation of New York State Worker Adjustment and Retraining Notification Act**
**(New York Labor Law § 860 et seq.)**
**(On Behalf of All Plaintiffs and the Class Against Defendants.)**

192.    Plaintiffs incorporate by reference the allegations set forth in the foregoing paragraphs of the Complaint as though set forth at length herein.

193.    Plaintiffs bring this action on behalf of themselves and the proposed Class against Defendants.

194.    Defendants were required by the NY WARN Act to give the Plaintiffs and the Class members at least 90 days advance written notice of their terminations pursuant to § 860-B of the NY WARN Act.

195.    Defendants terminated Plaintiffs' employment along with at least approximately 200 similarly situated employees as part of, or as the foreseeable result of, mass layoffs or plant closings ordered by Defendants on the Furlough Date.

196.    Defendants terminated Plaintiffs' employment along with at least approximately 200 similarly situated employees as part of, or as the foreseeable result of, mass layoffs or plant closings ordered by Defendants from in March 2020.

197.    On the Furlough Date, Defendants terminated the employment of at least approximately 200 employees working at The Hotel, including Plaintiffs Staley, Holmes, and Ivey.

198.    Because none of the Plaintiffs or those similarly situated employees were given their jobs back since the Furlough date, Defendants effectively terminated the employment of at least approximately 200 individuals as of the Furlough Date without any notice of termination of employment.

199.    At all relevant times, Defendants were individuals or private business entities defined as "employer" under the NY WARN Act and continued to operate as a business until Four Seasons decided to order a mass layoff or plant closing at the Facilities as defined by § 860-A(3),(4).

200.    Defendants failed to give the requisite notice required by the applicable law. The terminations failed to give Plaintiffs and other similarly situated employees of Defendants at least 90 days' advance notice of termination, as required by the NY WARN Act.

201.    Pursuant to the NY WARN Act, the employment of Plaintiffs and those similarly situated was retroactively terminated on the Furlough Date.

202.    Defendants were required by the NY WARN Act to give the Plaintiffs and the Class at least 90 days advance written notice of the mass layoff or employment loss pursuant to the NY WARN Act.

203.    Plaintiffs and the Class members suffered terminations of employment as defined by § 860-A(2) of the NY WARN Act, having their employment terminated by Defendants without cause on their part.

204.    As a result of this violation, Plaintiffs and the Class members seek the payment of statutory remedies by Defendants under the NY WARN Act in the form of salary, commissions,

28

bonuses, benefits, and health insurance premiums for 60 days following their respective terminations.

205.    Defendants failed to pay the Plaintiffs and each of the Class members their respective wages, salary, commissions, bonuses, and health insurance premiums and any other benefits that they were entitled to under the NY WARN Act for 60 days following their respective terminations of employment.

206.    Based upon the foregoing facts, Plaintiffs and the Class members were injured by Defendants' failure to give notice of the intended terminations of employment.

207.    Based upon the foregoing facts, Plaintiffs and each of the members of the proposed Class have sustained damages including but not limited to those damages afforded by the NY WARN Act, including but not limited to those damages listed above and costs and attorneys' fees.

**AS AND FOR A THIRD CAUSE OF ACTION**
**Breach of Contract**
**<u>(On Behalf of All Plaintiffs and the Class Against Four Seasons)</u>**

208.    Plaintiffs incorporate by reference the allegations set forth in the foregoing paragraphs of the Complaint as though set forth at length herein.

209.    Plaintiffs bring this action on behalf of themselves and the proposed Class against Defendants, Four Seasons.

210.    Prior to the Furlough Date, Plaintiffs and each of the members of the proposed Class had entered into valid contracts with Four Seasons and those contracts were still valid on the Furlough Date.

211.    The U.S. EmPact Employee Handbook was a valid contract between the Four Seasons and each of the Plaintiffs and each of the members of the proposed Class.

29

212.     Plaintiffs and each of the members of the proposed Class had materially performed their contractual obligations.

213.     Plaintiffs and each of the members of the proposed Class were each terminated from their employment for no-fault.

214.     Plaintiffs and each of the members of the proposed Class are entitled to No-Fault Separation Pay.

215.     Defendants Four Seasons have failed to pay Plaintiffs and each of the members of the proposed Class their No-Fault Separation Pay.

216.     Defendants Four Seasons have materially failed to perform its commitments under the contract with each of the Plaintiffs and each of the members of the proposed Class.

217.     Based upon the foregoing facts, Plaintiffs and the Class members were injured by Defendants Four Seasons.

218.     Based upon the foregoing facts, Plaintiffs and each of the members of the proposed Class have sustained damages including but not limited to their No-Fault Separation Pay and the natural and probable consequences of the breach.

## AS AND FOR A FOURTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of All Plaintiffs and the Class Against Four Seasons)

219.     Plaintiffs incorporate by reference the allegations set forth in the foregoing paragraphs of the Complaint as though set forth at length herein.

220.     Plaintiffs bring this action on behalf of themselves and the proposed Class against Defendants Four Seasons.

30

221.    Plaintiffs and each of the members of the proposed Class had valid contracts with Defendant Four Seasons.

222.    The U.S. EmPact Employee Handbook was a valid contract between the Four Seasons and each of the Plaintiffs and each of the members of the proposed Class.

223.    Plaintiffs and each of the members of the proposed Class had materially performed their contractual obligations.

224.    The employment of Plaintiffs and each of the members of the proposed Class were each terminated for no-fault.

225.    Plaintiffs and each of the members of the proposed Class are entitled to No-Fault Separation Pay.

226.    Defendant Four Seasons have failed to pay Plaintiffs and each of the members of the proposed Class their No-Fault Separation Pay.

227.    Defendant Four Seasons have materially failed to perform its commitments under the contract with each of the Plaintiffs and each of the members of the proposed Class.

228.    Defendant Four Seasons have advised each of the Plaintiffs and each of the members of the proposed Class that The Hotel intends to continue to furlough them.

229.    By claiming that the Plaintiffs and the members of the proposed Class will continue to be on furlough, and have already been on furlough since the Furlough Date, more than two years from now, Defendant Four Seasons is acting in bad faith.

230.    Defendant Four Seasons is refusing to call these multi-year periods of not paying Plaintiffs and the members of the proposed Class permanent layoffs to avoid their contractual obligations.

31

231.    Defendants Four Seasons has not performed their obligations under its contract with each of the Plaintiffs and the members of the proposed Class.

232.    Based upon the foregoing facts, Plaintiffs and the Class members were injured by Defendant Four Seasons.

233.    Based upon the foregoing facts, Plaintiffs and each of the members of the proposed Class have sustained damages including but not limited to their No-Fault Separation Pay and the natural and probable consequences of the breach.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Tortious Interference with Contract
### (On Behalf of All Plaintiffs and the Class Against the Warner Defendants)

234.    Plaintiffs incorporate by reference the allegations set forth in the foregoing paragraphs of the Complaint as though set forth at length herein.

235.    Plaintiffs bring this action on behalf of themselves and the proposed Class against the Warner Defendants.

236.    Plaintiffs and each of the members of the proposed Class had valid contracts with Four Seasons.

237.    The U.S. EmPact Employee Handbook was a valid contract between the Four Seasons and each of the Plaintiffs and each of the members of the proposed Class.

238.    Plaintiffs and each of the members of the proposed Class had materially performed their contractual obligations.

239.    The employment of Plaintiffs and each of the members of the proposed Class were each terminated for no-fault.

240.    Plaintiffs and each of the members of the proposed Class are entitled to No-Fault Separation Pay.

32

241.    The Warner Defendants had knowledge of these contracts.

242.    Upon information and belief, the Warner Defendants intentionally delayed opening The Hotel to avoid paying the salaries of Plaintiffs and each of the proposed members of the Class.

243.    Upon information and belief, the Warner Defendants delayed opening The Hotel because this was financially beneficial for them.

244.    Upon information and belief, the Warner Defendants caused the Plaintiffs and the proposed members of the Class to be permanently laid off from their employment at The Hotel.

245.    Upon information and belief, the Warner Defendants also prevented the payment to the Plaintiffs and each of the proposed members of the Class their No-Fault Separation Pay.

246.    Upon information and belief, the Warner Defendants intentionally procured Four Seasons' breach of their contracts with Plaintiffs and each of the members of the proposed Class.

247.    Four Seasons breached their contracts with Plaintiffs and each of the members of the proposed Class.

248.    Plaintiffs and each of the members of the proposed Class were damaged as a result of the breach.

249.    Upon information and belief, the Warner Defendants' conduct caused Plaintiffs and the Class Members' harm.

250.    Based upon the foregoing facts, Plaintiffs and each of the members of the proposed Class have sustained damages including but not limited to their No-Fault Separation Pay and the natural and probable consequences of the Warner Defendants tortious interference with contract.

## AS AND FOR A SIXTH CAUSE OF ACTION
### Alter Ego
### (On Behalf of All Plaintiffs and the Class Against Defendant Ty Warner)

251.    Plaintiffs incorporate by reference the allegations set forth in the foregoing paragraphs of the Complaint as though set forth at length herein.

252.    Ty Warner exercised complete domination of The Hotel.

253.    Ty Warner used his control of The Hotel to commit a wrong against Plaintiffs and each of the members of the proposed Class.

254.    Defendant Ty Warner was the alter-ego of each the Warner Defendants and was the instrumentality or conduit of one or more of the other Defendants in the pursuit of a single business venture such that disregard of the separate nature of the Defendants' corporate organization, or other association, is necessary to prevent an injustice upon Plaintiffs and each member of the class they seek to represent.

255.    Plaintiffs and each of the members of the proposed Class were injured as a result.

256.    By reason of the foregoing, Ty Warner and the Warner Defendants are jointly and severally responsible for the aforesaid indebtedness to Plaintiffs and each of the members of the proposed Class, and are, therefore, personally liable to Plaintiffs and each of the members of the proposed Class in an amount to be proven at trial.


## ALLEGATIONS REGARDING RELIEF


257.    Plaintiffs and the class they seek to represent have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief they seek in this action is the only means of securing complete and adequate relief. Plaintiffs and the

SA-455

class they seek to represent are now suffering, and will continue to suffer, irreparable injury from Defendants' conduct, acts, and omissions.

258.    Defendants' actions have caused and continue to cause Plaintiffs and all members of the class they seek to represent substantial losses.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

a.    Certify the Class under Federal Rule of Civil Procedure 23; appoint Plaintiffs as representatives of the Class; and appoint their attorneys as Class Counsel to represent the members of the Class.

b.    Declare that the practices complained of herein violate the Federal WARN Act, 20 CFR Part 639.

c.    Declare that the practices complained of herein violate the NY WARN Act, NYLL § 860 *et seq*.

d.    Award all damages permitted under the Federal WARN Act.

e.    Award all damages permitted under the NY WARN Act.

f.    Award all damages permitted under the Breach of Contract Claim against Defendant Four Seasons.

g.    Award all damages permitted under the Breach of Implied Covenant of Good Faith and Fair Dealing Claim against Defendant Four Seasons.

h.    Award all damages permitted under the Tortious Interference With Contract Claim against the Warner Defendants.

i.    Award Plaintiffs reasonable attorneys' fees and costs.

j.    Award such other and further relief as the Court deems equitable and just.

SA-456

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action for all claims.

PLAINTIFFS REQUEST TRIAL TO A JURY ON ALL CLAIMS ALLOWED BY LAW.

Dated: New York, New York
      August 9, 2022

                               */s/ Maya Risman*

Maya Risman, Esq.,
Risman & Risman, P.C.
299 Broadway, 17th Floor
New York, New York 10007
(212) 233-6400
mrisman@risman-law.com

Evan Brustein, Esq.
Brustein Law PLLC
299 Broadway, 17th Floor
New York, New York 10007
(212) 233-3900
evan@brusteinlaw.com

*Counsel for Plaintiffs and the proposed Class*

36

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
SELENA STALEY, VIVIAN HOLMES, and                     :
OLIVE IVEY, on behalf of themselves and all           :
others similarly situated,                            :
                                                      :
                                                      :     Case No.: 22-CV-6781 (JSR)
                                                      :
                  Plaintiffs,                         :
         v.                                           :
                                                      :
                                                      :
FSR INTERNATIONAL HOTELS INC. d/b/a                   :
FOUR SEASONS HOTELS AND RESORTS,                      :
HOTEL 57 SERVICES, LLC, HOTEL 57, LLC, TY :
WARNER HOTELS & RESORTS, LLC, and H.                  :
TY WARNER                                             :
                                                      :
                                                      :
                  Defendants.                         :
-------------------------------------------------------------- X

### DEFENDANTS' JOINT MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW

**SMITH, GAMBRELL & RUSSELL, LLP**          **STOKES WAGNER, ALC**

Marc B. Zimmerman                            Paul Wagner
Kathryn T. Lundy                             John Hunt
James J. Boland                              903 Hanshaw Road
1301 Avenue of the Americas, 21st Floor      Ithaca, NY 14850
New York, NY 10019                           (607) 257-5165
(212) 907-9700

*Attorneys for Defendants Hotel 57 Services, LLC,*     *Attorneys for Defendant FSR*
*Hotel 57, LLC, Ty Warner Hotels & Resorts, LLC*       *International Hotels, Inc.*
*and H. Ty Warner*

SA-458

## TABLE OF CONTENTS

ARGUMENT .............................................................................................................. 1

POINT I        PLAINTIFFS DID NOT PRESERVE THE ISSUE RASED BY
               THE COURT ............................................................................. 1

POINT II       PLAINTIFFS' SUPPLEMENTAL MEMORANDUM DOES
               NOT COMPLY WITH THE COURT'S ORDER ...................................... 2

CONCLUSION.......................................................................................................... 5

SA-459

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bledsoe v. Emery Worldwide Airlines, Inc.*,
  2009 WL 3127740 (S.D. Ohio Sept. 28, 2009), *aff'd*, 635 F.3d 836
  (6th Cir. 2011)..................................................................................................................4

*Farah v. Emirates and Emirates Severance Plan*,
  2024 WL 1374762 (S.D.N.Y. Mar. 31, 2024) ............................................................4

*Graphic Commc'ns Int'l Union, Loc. 31-N v. Quebecor Printing (USA) Corp.*,
  252 F.3d 296 (4th Cir. 2001) ......................................................................................4

*Hutson v. CAH Acquisition Co. 10, LLC*,
  2016 WL 4289473 (M.D.N.C. Aug. 15, 2016)............................................................4

*Jackson Hole Burger, Inc. v. Estate of Galekovic*,
  701 F. Supp. 3d 228 (S.D.N.Y. 2023).........................................................................1

*Local 1239, Intern. Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths,*
*Forgers and Helpers v. Allsteel, Inc.*,
  955 F. Supp. 78 (N.D. Ill. 1996) .................................................................................4

*Smith v. Wells Fargo Bank, N.A.*,
  666 Fed. App'x. 84 (2d Cir. 2016)...............................................................................1

*United States v. Hill*,
  462 Fed. App'x. 125 (2d Cir. 2012)..............................................................................1

**Regulations**

12 N.Y.C.R.R. § 921-3.1 .......................................................................................................4

20 C.F.R. § 639.7(a)(7).........................................................................................................4

The Court permitted the parties to submit supplemental briefing to address the discrete legal issue of whether additional notice is required under the federal and New York WARN Acts when the reason for the original notice (*i.e.*, the COVID-19 pandemic) ends, and whether such issue even was preserved by Plaintiffs.[1]  Defendants' Joint Supplemental Memorandum of Law[2] demonstrates the answers to both questions is "no"; Plaintiffs' Supplemental Memorandum of Law[3] ignores the Court's directive and completely fails to address either question.  Plaintiffs have entirely failed to comply with the Court's Order and their Supplemental Memorandum of Law therefore should be wholly disregarded.

## ARGUMENT

### POINT I

### PLAINTIFFS DID NOT PRESERVE THE ISSUE RASED BY THE COURT

Plaintiffs never advanced in this lawsuit any argument that the WARN Acts required any of Defendants to issue a new WARN Act notice to Plaintiffs merely because the "reason" for their employment loss purportedly changed.  *See* Defs. Supp. Memo. at Point I.  Despite being given the opportunity through this supplemental briefing to identify when, and how, they preserved the issue raised (for the first time) in this lawsuit by the Court, Plaintiffs failed even to address -- much less demonstrate -- how they have done so.[4]  Consequently, Plaintiffs have failed to preserve, and

---

[1] *See* September 6, 2024 Order (Dkt. 132; "Order") at p. 1.

[2] Dkt. 137 ("Defs. Supp. Memo.").

[3] Dkt. 136 ("Pls. Supp. Memo.").

[4] The Court should disregard any new argument on this issue advanced by Plaintiffs in their anticipated response to Defendants' Supplemental Memorandum of Law because Defendants will not have an adequate opportunity to respond.  *See Jackson Hole Burger, Inc. v. Estate of Galekovic,* 701 F. Supp. 3d 228, 232 (S.D.N.Y. 2023) (arguments raised for the first time on reply are waived), citing to, *United States v. Hill*, 462 Fed. App'x. 125, 127 n.2 (2d Cir. 2012); *Smith v. Wells Fargo Bank, N.A.,* 666 Fed. App'x. 84, 88 (2d Cir. 2016).

thereby waived, this legal theory and it should not be considered on this motion for summary judgment.

## POINT II

### PLAINTIFFS' SUPPLEMENTAL MEMORANDUM DOES NOT COMPLY WITH THE COURT'S ORDER

The Court identified a *single legal issue* upon which it requested "supplemental briefing":

[W]hether or not defendants FSR International Hotel Inc., Hotel 57 Services, LLC, Hotel 57, LLC, and Ty Warner Hotels & Resorts LLC [ ] were required to provide additional notice under the federal and state Worker Adjustment and Retraining Notification Acts ("WARN Acts") when layoffs continued following the conclusion of the COVID-19 pandemic.

Order at p. 1.

> So let's turn to what this call is about. So it seems to me that the resolution of the motions for summary judgment may be impacted by whether or not the Warner defendants, let's see, I have a typo, apparently, in my order. But in any event, whether the Warner defendants were required to provide additional notice if any meaningful delay that normally would trigger the issuing of a WARN notice required a new notice if the original reason for the delay had disappeared.

*See* Tr. at p. 51.

Plaintiffs fail even to address the Court's question -- not because they fundamentally misunderstood the Court's express directive, but because they can make no argument to refute the fact that the WARN Acts do not impose any obligation to provide employees additional notice should the reason for an employment loss change, or even cease to exist. Following an employer's proper notice to employees of an employment loss as defined in those statutes, the employer's obligations under the WARN Acts end. *See* Defs. Supp. Memo. at Point II.

2

SA-462

Instead of responding to the Court's inquiry, Plaintiffs take yet *another* bite at the apple by submitting the same arguments already asserted in opposition to Defendants' motions for summary judgment. Plaintiffs: (1) rehash their unsupportable theory that the WARN Acts require employers to provide laid off employees multiple, additional, WARN Act notice every six months during their layoff; and (2) challenge, yet again, the validity of Hotel 57 Services, LLC's August 5, 2020 notice -- even though the Court specifically advised the parties to look beyond that issue.

```
        THE COURT:  Again, and forgive me for coming back to
the issue that I'm asking about, but, to be frank, I think it's
the issue that most troubles me.  Which is, assuming I'm going
to hear from your adversary in a minute as to why he thinks
your WARN notice was not timely, adequate, or whatever, but
assuming he's wrong and everything you did in your original
WARN notice was fine, nevertheless, does the continued delay in
the reopening require a new WARN notice because the reason for
the original WARN notice has now dissipated?
```

Tr. p. 13.[5] The Court did not invite the parties to supplement their briefing on these (or any other) issues and Plaintiffs' arguments in their Supplemental Memorandum of Law should be disregarded.

---

[5] The Warner Defendants respectfully refer the Court to their Memorandum of Law in Support of their Motion for Summary Judgment (Dkt. 99 at Point I(B)(1) and (2) and Reply Memorandum of Law (Dkt. 131 at Point II(A)(1) and (2)) and FSR International Hotels, Inc. respectfully refers the Court to its Memorandum of Law in Support of its Motion for Summary Judgment (Dkt. 100 Point IV(C) and Reply Memorandum of Law (Dkt. 130 at Points C and D)) in which they previously refuted Plaintiffs' arguments herein. Again and again, Plaintiffs rely on conjecture and inadmissible evidence to concoct theories wholly unsupported by the WARN Acts. The Court should reject Plaintiffs' attempt to use this supplemental briefing as a sur-reply, even though Plaintiffs *still* fail to raise any triable issue of material fact to preclude summary judgment.

Importantly, Plaintiffs continue to advance their own unsupported conspiracy theory that the "real reason" for Plaintiffs' employment loss in early 2020 was something other than the COVID-19 pandemic -- notwithstanding the indisputable evidence of myriad New York Executive Orders and worldwide travel restrictions that, by any measure, shut down the hospitality industry in New York and everywhere else.  Notably, Plaintiffs previously confined this theory *only* to their claim for no-fault separation pay -- not their WARN Act claims.  *See* Amd. Compl. (Dkt. 47) at ¶¶ 28, 29); Defs. Supp. Memo. at p. 5.  Although Plaintiffs' argument (again) does not address the Court's question, it does reveal their manifest misunderstanding of the WARN Acts, which (as Defendants actually demonstrate in response to the Court's question) do not require *anything* from an employer beyond notice to employees of an employment loss to satisfy its obligations under the statutes.

The WARN Acts are indifferent to the reasons for an employment loss under the statutes. Indeed, the WARN Act regulations specifically provide there is no violation of the statute when "events subsequently change".  20 C.F.R. § 639.7(a)(7);[6] *see also* Defs. Supp. Memo. at Point II.

---

[6] None of the cases cited by Plaintiffs address whether new notice is required when the reason for the employment loss changes or ends.  They merely set forth ordinary concepts (not present here) that: (1) the WARN Acts require additional notice to employees of a new employment loss (*see Graphic Commc'ns Int'l Union, Loc. 31-N v. Quebecor Printing (USA) Corp.,* 252 F.3d 296, 299 (4th Cir. 2001) (new employment loss requires new WARN Act notice); *Bledsoe v. Emery Worldwide Airlines, Inc.*, 2009 WL 3127740, at *6 (S.D. Ohio Sept. 28, 2009), *aff'd*, 635 F.3d 836 (6th Cir. 2011) (employees on temporary layoff with right of recall require new WARN Act notice for new employment loss); *Farah v. Emirates and Emirates Severance Plan*, 2024 WL 1374762, at *8 (S.D.N.Y. Mar. 31, 2024) (notice of employment loss required once temporary layoff extends for more than 6 months, thereby constituting an employment loss (*citing* 12 N.Y.C.R.R. § 921-3.1); and (2) postponement of a scheduled employment loss (before it occurs) for more than 60 days requires new notice of the new employment loss (*see Hutson v. CAH Acquisition Co. 10, LLC*, 2016 WL 4289473, at *3-4 (M.D.N.C. Aug. 15, 2016) (new notice required when termination date in initial notice passed without termination); *Local 1239, Intern. Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers v. Allsteel, Inc.,* 955 F. Supp. 78 (N.D. Ill. 1996) (postponement of date of plant closing required additional notice).

4

SA-464

Plaintiffs experienced only *one* employment loss when they were temporarily furloughed in 2020, and therefore no additional notice beyond the August 5, 2020 notice of that employment loss was required by the WARN Acts.

## CONCLUSION

For all the reasons set forth herein, in Defendants' prior submissions in support of their motions for summary judgment and during oral argument, Defendants respectfully submit their motions for summary judgment should be granted, in their entirety.

Dated: New York, New York
September 18, 2024

SMITH, GAMBRELL & RUSSELL, LLP

/s/ Marc B. Zimmerman
Marc B. Zimmerman
Kathryn T. Lundy
James J. Boland
1301 Avenue of the Americas, 21st Floor
New York, NY 10019
(212) 907-9700

*Attorneys for Defendants Hotel 57 Services, LLC, Hotel 57, LLC, Ty Warner Hotels & Resorts, LLC and H. Ty Warner*

STOKES WAGNER, ALC

/s/ Paul Wagner
Paul Wagner
John Hunt
903 Hanshaw Road
Ithaca, NY 14850
(607) 257-5165

*Attorneys for Defendant FSR International Hotels, Inc.*

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SELENA STALEY, VIVIAN HOLMES, and          Case No. 22-CV-6781 (JSR)
OLIVE IVEY, on behalf of themselves and
all others similarly situated,

                         Plaintiffs,

         -- against --

FOUR SEASONS HOTELS AND RESORTS,
HOTEL 57 SERVICES, LLC, HOTEL 57, LLC,
TY WARNER HOTELS & RESORTS LLC,
and H. TY WARNER,

                         Defendants,

**PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT SUPPLEMENTAL
MEMORANDUM CONCERNING THEIR OBLIGATION TO PROVIDE
MULTIPLE WARN NOTICES**

                              RISMAN & RISMAN, P.C.
                              299 Broadway, 17th Floor
                              New York, New York 10007
                              (212) 233-6400

                              BRUSTEIN LAW PLLC
                              299 Broadway, 17th Floor
                              New York, New York 10007
                              (212) 233-3900

                              BROMBERG LAW OFFICE,
                              P.C.
                              352 Rutland Road, #1
                              Brooklyn, New York 11225
                              (212) 248-7906

SA-466

**Table of Contents**

Table of Authorities.................................................................................................iii

Preliminary Statement............................................................................................. 1

Argument ................................................................................................................. 1

    I.    Plaintiffs sufficiently preserved their claims for Defendants' failure to send multiple WARN notices ................................................................................................... 1

        A.    Throughout this litigation. Plaintiffs preserved, and have not waived, their claims for failure to send multiple WARN notices ................................................................. 2

    II. The WARN Acts require additional notice to employees for successive employment losses  6

        A.    Defendants finally concede that the WARN Acts require multiple notices for multiple employment losses................................................................................................. 6

        B.    Defendants misapprehend the requirement to state a basis for an employment loss under the WARN Acts ...................................................................................... 7

        C.    Defendants focus on the notice sections of the WARN Acts, but ignore other sections which speak to changes in circumstances................................................................ 8

        D.    The WARN Acts require advanced notice be given to "employees who may reasonably be expected to experience loss............................................................11

Conclusion ............................................................................................................ 12

**Table of Authorities**

**Page(s)**

**Cases**

*Arce v. Walker*,
   139 F.3d 329 (2d Cir. 1998)...............................................................................................1

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................................2

*Bell Atlantic Co. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................................2

*Bledsoe v. Emery Worldwide Airlines, Inc.*,
   No. 3:02CV069, 2009 WL 3127740 (S.D. Ohio Sept. 28, 2009), *aff'd*, 635
   F.3d 836 (6th Cir. 2011) .................................................................................................10

*Dluhos v. Floating & Abandoned Vessel, Known as N.Y.*,
   162 F.3d 63 (2d Cir. 1998).................................................................................................1

*Graphic Commc'ns Int'l Union, Loc. 31-N v. Quebecor Printing (USA) Corp.*,
   252 F.3d 296 (4th Cir. 2001) ...................................................................................8, 9, 10

*Keiler v. Harlequin Ent.*,
   751 F. 3d 64 (2d Cir. 2014)................................................................................................2

*Leeper v. Hamilton Cnty. Coal, LLC*,
   939 F.3d 866 (7th Cir. 2019) ......................................................................................9, 10

*Nagel v. Sykes Enterprises, Inc.*,
   383 F. Supp. 2d 1180 (D.N.D. 2005)................................................................................8

*North Star Steel Co. v. Thomas*,
   515 U.S. 29, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995)......................................................2

*Pratt v. City of N.Y.*,
   929 F. Supp. 2d 314 (S.D.N.Y. 2013)...............................................................................1

*Solis v. 53rd St. Partners LLC*,
   No. 19CIV11708PGGSLC, 2021 WL 9667808 (S.D.N.Y. Jan. 15, 2021) ...............................2

**Statutes**

N.Y. Labor Law § 860, *et seq.* ..................................................................................... *passim*

Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, *et seq.*.................. *passim*

iii

SA-468

**Other Authorities**

20 CFR § 639.2 ................................................................................................11

20 CFR § 639.3 ................................................................................................11

20 CFR § 639.3(e) ...........................................................................................11

20 CFR § 639.6 ................................................................................................12

20 CFR § 639.7(a) .............................................................................................8

20 CFR § 639.7(c) .............................................................................................8

20 CFR § 639.9 .................................................................................................7

54 Fed.Reg. 16042, 16043 (1989) ...................................................................8

12 NYCRR 921-1.1(a) ................................................................................11, 12

12 NYCRR 921-2.1(f)(4) ................................................................................12

CPLR 213(2) .....................................................................................................2

**Preliminary Statement**

Plaintiffs have preserved and have not waived their claims for failure to send multiple WARN notices. Plaintiffs have also raised genuine issues of material fact as to whether Defendants were required to send multiple WARN notices in compliance with the WARN Acts.

**Argument**

I.    **Plaintiffs sufficiently preserved their claims for Defendants' failure to send multiple WARN notices**

To credibly argue that Plaintiffs somehow waived their claims for Defendants' failure to provide multiple WARN notices, Defendants need to disregard Plaintiffs' First Amended Complaint, the oral arguments before both this Court and the Second Circuit Court, their own motions seeking summary judgment, and Plaintiffs' opposition papers to both of those motions as well as Defendants' own reply papers.

Tellingly, Defendants' focus on Plaintiffs' original complaint rather than on the First Amended Complaint[1]—even though the Amended Complaint "ordinarily supersedes the original, and renders it of no legal effect"[2]— showing that Defendants are grasping at straws to make a meritless argument. Nevertheless, Defendants dwell in their Joint Supplemental Memorandum (ECF#137) on Plaintiffs' initial complaint, which was superseded by the filing of Plaintiffs' Amended Complaint (ECF#48) on December 19, 2022, and is therefore of no force and effect.

---

[1] Defendants misrepresent the allegations in the Amended Complaint, which as discussed in I(A) had extensive references to Plaintiffs' claims for failure to provide multiple WARN notices.

[2] *Dluhos v. Floating & Abandoned Vessel, Known as N.Y.*, 162 F.3d 63, 68 (2d Cir. 1998) (quotation marks omitted); *see also Arce v. Walker*, 139 F.3d 329, 332 n.4 (2d Cir. 1998) ("It is well established that an amended complaint ... supersedes the original and renders it of no legal effect." (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977))); *Pratt v. City of N.Y.*, 929 F. Supp. 2d 314, 319 n.3 (S.D.N.Y. 2013) ("[T]he general rule is that an amended complaint supersedes an original complaint and renders it without legal effect." (citing *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000); and *Harris v. City of N.Y.*, 186 F.3d 243, 249 (2d Cir. 1999))).

1

Moreover, since the Amended Complaint was filed well within the statutes of limitation for the federal WARN Act, for the N.Y. WARN Act, and for breach of contract, all of which are six years, Defendants did not and cannot move for summary judgment on this basis.[3]

    **A.**    **Throughout this litigation. Plaintiffs preserved, and have not waived, their claims for failure to send multiple WARN notices**

Defendants falsely claim that "Plaintiffs never advanced a legal theory of purported WARN Act violations for the alleged failure to provide notice after the reasons for Four Seasons Hotel New York's (the "Hotel") closure to outside guests purportedly changed"[4] and further claim that the Court and not Plaintiffs raised this theory, for the first time during the September 6, 2024 hearing.[5] in direct contradiction to the record here.[6]

Obviously, in Plaintiffs' Amended Complaint and throughout this litigation, Plaintiffs have sufficiently alleged multiple WARN Act notices were required and that there were multiple violations. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7][8] A complaint need not contain detailed or elaborate factual allegations, and instead requires only allegations sufficient to raise entitlement to relief above a speculative level.[9] In any event, Plaintiffs have clearly met that burden here.

---

[3] *See Solis v. 53rd St. Partners LLC,* No. 19CIV11708PGGSLC, 2021 WL 9667808, at *3 (S.D.N.Y. Jan. 15, 2021), *report and recommendation adopted,* No. 19CIV11708PGGSLC, 2022 WL 12399506 (S.D.N.Y. Oct. 21, 2022); *North Star Steel Co. v. Thomas,* 515 U.S. 29, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995); CPLR 213(2) (breach of contract).

[4] Defendants' Joint Supplemental Memorandum of Law (ECF#137) at 3.

[5] *Id.* at 4 (emphasis in original).

[6] ECF #48, at ¶ 240 ("the basis for the furlough had changed and did not qualify as an exception…")

[7] *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[8] *Iqbal*, 556 U.S. at 678.

[9] *See Keiler v. Harlequin Ent.*, 751 F. 3d 64, 68 (2d Cir. 2014).

Further, in the Warner Defendants' Memorandum in Support of their Motion for Summary Judgment, they claim: "Plaintiffs' allegations that multiple or successive WARN Act notices are required are legally baseless. The WARN Acts do not place such additional obligations on employers."[10] Similarly, FSR states in a footnote in its Memorandum in Support of its Motion for Summary Judgment, as follows:

> Plaintiffs' allegations that WARN Act notices should have been issued every six (6) months is baseless. *See* Amd. Compl. ¶ 172. The WARN Acts do not require employers to provide affected employees with multiple notices , . . But at most, Plaintiffs experienced only one alleged employment loss, no matter how many times they contend the Hotel failed to provide notice. The Plaintiffs are attempting to rewrite WARN to allow multiple measures of damages based on the same alleged employment loss.[11]

As such, it is baffling to watch as Defendants now disingenuously argue that Plaintiffs failed to preserve a claim that Defendants responded to in their initial memoranda in support of summary judgment. In the FSR Reply Memorandum, FSR states that "Plaintiffs twist themselves into knots trying to support their novel idea that WARN notices should have been sent every six months of the furlough, citing to provisions of the federal and New York regulations that require additional notice when a layoff previously expected to be temporary extends beyond six months…"[12] The Warner Defendants also addressed the theory of multiple violations of the WARN Acts in their Reply Memorandum, arguing that: "Plaintiffs demonstrate their complete misunderstanding of the WARN Acts by continuing to press on with a frivolous argument that notices are required to be given every six months."[13]

---

[10] Warner Defendants' Memorandum in Support (ECF#99) at 2.
[11] FSR's Memorandum in Support (ECF#100) at 18 n.3.
[12] FSR's Reply Memorandum in Support (ECF #130) at 6.
[13] Warner Defendants' Reply Memorandum in Support (ECF #131, at 9)

3

When asked where in the Amended Complaint Plaintiffs preserved the claim for failure to

provide multiple WARN notices, Plaintiffs' attorney, Evan Brustein, Esq., stated as follows:

> MR. BRUSTEIN: Understood.  The second thing was during oral arguments you
> asked where we referenced these arguments. I have them in front of me on the
> call... Docket 48 which was the operative complaint, two of the paragraphs that
> specifically address it are Paragraphs 244 and 245... It's referenced in other places
> as well. And then with respect to the opposition, I mention the Warner opposition,
> pages 10 and 12. But also in the FSR opposition brief we raised it in pages 15 to
> 17 as well.[14]

As explained above, the allegations are "referenced in other places [throughout the

Amended Complaint] as well."[15] Here are a few of the other instances where the claims appear:[16]

> 4.    As Defendants continued to dangle the prospect of a return to work in
> front of Plaintiffs and others similarly situated, Defendants had an obligation
> under the WARN Acts to provide Plaintiffs and others similarly situated with
> updated notices related to their furlough and employment in compliance with the
> WARN Acts each time the furlough exceeded another six months.
>
> 172.    Under the WARN Acts, based upon Defendants repeated representations
> that Plaintiffs and others similarly situated would be brought back to work,
> Defendants were required to give new timely and proper WARN notices each time
> Defendants reasonably foresaw that an additional six-month extension would be
> required.
>
> 243.    Under the WARN Acts, furloughs extending longer than six months
> without proper notice in compliance with the WARN Acts, is a violation that
> requires payment of salary and benefits for 60 days.
>
> 323.    As a result of this violation, Plaintiffs and the Class members seek the
> payment of statutory remedies by Defendants under the WARN Act in the form of
> 60 days salary, commissions, bonuses, benefits, and health insurance premiums
> for 60 days for each of the violations of the WARN Act.
>
> 339.    As a result of this violation, Plaintiffs and the Class members seek the
> payment of statutory remedies by Defendants under the NY WARN Act in the
> form of salary, commissions, bonuses, benefits, and health insurance premiums

---

[14] Transcript (ECF#136-1) at 58-59.

[15] *Id.*

[16] The Amended Complaint (ECF #48) also referenced multiple WARN Acts violations
throughout including at ¶¶ 18, 29, 178, 182, 183, 240, 241, 292, 324, 335, 337, and 341.

4

for 60 days following their respective terminations, and each violation of the NY WARN Act.[17]

Furthermore, as noted by Mr. Brustein in the section of the transcript quoted above, in their memoranda in opposition to Defendants' Motions for Summary Judgment, Plaintiffs defended their position at ECF#119 (Memo in Opposition to Warner) at 10-12 and ECF#121 (Memo in Opposition to FSR) at 15-17. Thus, despite being faced with 19 paragraphs reflecting the claim in the Amended Complaint and six pages of argument in Plaintiffs' memoranda in opposition, Defendants persist in claiming that Plaintiffs somehow waived the ability to claim that Defendants violated the WARN Acts multiple times.

Moreover, on appeal to the Second Circuit, without prompting, one of the attorneys for Defendant FSR International Hotels, Inc., Paul Wagner, Esq., specifically cited Plaintiffs' claims in the Amended Complaint for multiple failures of notice and used those WARN Act claims as a basis to argue that this case should be forced into arbitration. At the 9-minute-and-34-second mark during oral argument, Mr. Wagner said the following:

> But Your Honor, look more deeply into the complaint and the Amended Complaint. This is not just a breach of contract claim. This has multiple WARN Act claims under state and federal law. And interestingly, if you go to, and I'll give you the actual paragraph number, you go to paragraphs 316 and 333 of the Amended Complaint, they allege, and allegations matter, as in that threshold question of arbitrability, they allege four separate terminations of employment for each of the plaintiffs.[18]

Thus, even though Defendants know that Plaintiffs preserved the claims and Defendants even referred the Second Circuit panel to specific paragraphs in the Amended Complaint in which the

---

[17] ECF#48.

[18] The recording of the oral argument is available on the Second Circuit's website at the following link: https://ww3.ca2.uscourts.gov/decisions/isysquery/077d9e06-1750-48ce-a59a-ce819b8a80e0/1/doc/23-770%2C%2023-771.mp3
For the convenience of the Court, Plaintiffs' attorneys can burn the recording to a flash drive or a CD-R and submit a copy to the Court if that is preferable to the Court.

claims appeared, Defendants now seek to mislead this Court into believing that the claims were

not preserved.

Plaintiffs also preserved these claims in their memoranda in opposition and supplemented

them further in the memorandum filed on September 16, 2024 (ECF#136). As such, Defendants

cannot claim that they lacked notice of Plaintiffs' claims as Defendants have repeatedly

addressed these very claims throughout this litigation.

## II.    The WARN Acts require additional notice to employees for successive employment losses

### A.    Defendants finally concede that the WARN Acts require multiple notices for multiple employment losses

Defendants bury the lede that the WARN Acts require multiple notices in a footnote.

Defendants finally concede that "[o]f course, new notice under the WARN Acts are required

where (inapplicable to this lawsuit) a new employment loss occurs…"[19] While Defendants claim

that multiple notices are not required here, they cite to no case law to support that conclusion.

Defendants also appear to have abandoned their relate-back argument, which they relied on

during oral arguments, in apparent recognition of the fact that there is no such defense. Now

Defendants incredibly argue that as long as a layoff is "temporary," no further obligations under

the WARN Acts exist. Defendants even claim that under the WARN Acts, Defendants can

continue Plaintiffs' "temporary furloughs" for "20 years" without providing any additional

notices, even if the Defendants no longer have a legitimate reason for continuing the furloughs.[20]

However, this interpretation directly contradicts the purpose and spirit of the WARN Acts.

The WARN Act specifically states that employers should not be able to "evade" the

requirements or purpose of the WARN Act. Twenty CFR §§ 639.3, 639.5, and 639.10 each make

---

[19] Defendants' Joint Supplemental Memorandum (ECF#137), at 7 n.8.
[20] *Id*. at 8.

6

reference to preventing employers from evading their obligations. This is because the purpose of the WARN Acts is to protect workers and to require employers to provide their employees with information about employment losses, so employees have the information necessary to make informed decisions about their families' futures.

### B. Defendants misapprehend the requirement to state a basis for an employment loss under the WARN Acts

Defendants incorrectly claim that the WARN Acts "never" require the employer to state the basis for an employment loss. However, it is only when an employer complies with the WARN Acts by providing the statutorily required advance notice of an employment termination, that stating the basis is not required. But there are other instances when the WARN Acts require a brief statement about the basis for an employment loss, like the circumstances herein. For example, in order to rely on an exception to the advance notice, "the employer must provide as much notice as possible in advance of the plant closing, mass layoff, relocation, or covered reduction in work hours to all required parties, and also include a statement of the reason for reducing the notice period and a factual explanation of the basis for claiming entitlement to such reduced notice period."[21] Here, Defendants did not provide the statutorily required advance notice, but still tried to claim that the unforeseen business exception applies to both WARN Acts.[22] As Defendants have claimed the unforeseen business exception, Defendants were required to provide a brief statement explaining the basis for the unforeseen business exception and continued to have those obligations.

---

[21] NYCRR 921-6.1; *see also* 20 CFR § 639.9.
[22] *See* Warner Defendants' Memorandum in Support of Summary Judgment (ECF#99), at 17-19 and Defendant FSR's Memorandum in Support of Summary Judgment (ECF#100), at 14-18.

7

Defendants' citation to 20 CFR § 639.7(a)(7) is completely inapplicable,[23] as 20 CFR § 639.7(a) does not stand for the proposition that only one notice is required, as evidenced by Defendants' admission, albeit in a footnote, that multiple notices can be required.[24] Similarly, Defendants incorrectly claim that 20 CFR § 639.7(c) allows Defendants to not provide additional notices under the WARN Acts.[25] Not only is this directly contradicted by Defendants' own cited cases which establish that multiple notices can be required, when situations change, but also by the Department of Labor.[26] "In its notice of final rulemaking, the Department of Labor added that 'technical violations of the notice requirements not intended to evade the purposes of WARN ought to be treated differently than either the failure to give notice or the giving of notice intended to evade the purposes of the Act.' 54 Fed.Reg. 16042, 16043 (1989)."[27] As such, claiming a layoff, which lasted 20 years was "temporary" to avoid giving multiple WARN notices would appear to be exactly the type of action the WARN Acts were intended to prevent.

### C. Defendants focus on the notice sections of the WARN Acts, but ignore other sections which speak to changes in circumstances

Defendants attempt to evade the requirements of the WARN Acts by claiming that the Plaintiffs' furloughs which have now exceeded 54 months are merely "temporary." Even looking at the cases cited by the Defendants, courts have held that employees can sustain successive employment losses, which require multiple WARN notices. For example, in *Graphic Commc'ns Int'l Union, Loc. 31-N v. Quebecor Printing (USA) Corp.*,[28] the Fourth Circuit held that:

> The WARN Act clearly contemplates that an employee may suffer multiple employment losses, necessitating separate notices. As recited *supra,* "employment

---

[23] 20 CFR § 639.7(a) only has four subsections: 1 - 4.

[24] *See* Defendants' Joint Supplemental Memorandum (ECF#137), at 7 n.8.

[25] *See Id.*, at 8 n.10.

[26] *See Id.*, at 7 n.8.

[27] *Nagel v. Sykes Enterprises, Inc.,* 383 F. Supp. 2d 1180, 1197 (D.N.D. 2005).

[28] *Graphic Commc'ns Int'l Union, Loc. 31-N v. Quebecor Printing (USA) Corp.*, 252 F.3d 296 (4th Cir. 2001).

loss" is statutorily defined as "(A) an employment termination other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding six months, or (C) a reduction in hours of work of more than 50 percent during each month of any six-month period." 29 U.S.C. § 2101(a)(6). Thus, assuming that termination is not the initial employment action, an employee can suffer an "employment loss" for any or all of an "employment termination," "a layoff exceeding six months," or "a reduction in hours" of the magnitude and duration specified.[29]

This is significant because the Fourth Circuit does not limit the subsequent type of "employment loss" that an employee can suffer. Rather, the circuit held that as long as the initial employment action is not a termination, an employee can still suffer "a layoff exceeding six months." Put another way, an employee can suffer an employment loss for a layoff exceeding six months, followed by a successive employment loss, which could either be a termination or another layoff exceeding six months, as Plaintiffs claim to have repeatedly occurred here. While Defendants argue that each successive six-month layoff relates back to the initial "temporary layoff" and therefore the WARN Acts place no further requirements on the employer, such a reading would allow Defendants to evade the purpose of the law. Defendants admit that a permanent layoff requires another WARN notice. But by Defendants' purported logic, instead of claiming that a layoff, which had exceeded 20 years was a permanent layoff, requiring an additional WARN notice, employers could simply state at the outset that a layoff was temporary and wash their hands of any obligations to their employees or the WARN Acts. This type of post-hoc justification was rejected by the Seventh Circuit in *Leeper v. Hamilton Cnty. Coal, LLC*,[30] a case relied on by Defendants in their supplemental memorandum. In *Leeper*, the court held that:

> …the Act delineates distinct categories in its definition of "employment loss." *See Phason*, 479 F.3d at 529. A retrospective analysis that blurs the distinctions between the categories is inconsistent with the Act's text and structure. Accordingly, if an objective observer would conclude that an employee suffered a

---

[29] *Id*. at 299.

[30] in *Leeper v. Hamilton Cnty. Coal, LLC*, 939 F.3d 866 (7th Cir. 2019).

9

permanent cessation of his employment relationship, a § 2101(a)(6)(A) "employment termination" occurred. The employer's subsequent decision to offer the employee his old job cannot retroactively transform that once-permanent firing into a temporary layoff.[31]

Instead, the analysis turns on whether the employees remained "affected employees" or not.[32] As explained in Plaintiffs' Supplemental Memorandum, Defendants' actions of continuing to hold themselves out as Plaintiffs' employers, created new obligations under the WARN Acts for new notices each time the "temporary layoffs" exceeded another six months.[33]

Courts have repeatedly held employers liable for failing to give subsequent WARN notifications when temporary layoffs became permanent. Here, Defendants incredibly and, without any legal authority, want this Court to believe that a "temporary layoff" exceeding 240 months would not require any additional notices, in direct contradiction to *Quebecor, which* required an employer to provide a second WARN notice less than four months after the first WARN notice. To agree with Defendants' purported reading of the WARN Acts would enable employers to mislead their employees into believing they were on temporary layoffs without any knowledge of how long the layoff was likely to be or how likely the employees were to be recalled, thereby preventing the employees from making informed decisions about their families' financial futures. The only reading of the WARN Acts that is consistent with the WARN Acts' purpose, is to consider each time a layoff exceeded six months to be an independent "employment loss" requiring new notices, so that affected employees could determine if it was worth waiting another six months to possibly be recalled or seek new employment. To prevent Defendants or other employers from evading their obligations under the WARN Acts, the WARN

---

[31]*Id*. at 870-871.

[32] *Bledsoe v. Emery Worldwide Airlines, Inc.*, No. 3:02CV069, 2009 WL 3127740, at *6 (S.D. Ohio Sept. 28, 2009), *aff'd*, 635 F.3d 836 (6th Cir. 2011).

[33] *See* Plaintiffs' Supplemental Memorandum (ECF#136), at 3-5.

10

Acts must be read to require new notices for each successive employment loss, whether it is a "temporary layoff" followed by a termination or it is 40 separate "temporary layoffs" each exceeding six months over more than 20 years as the Defendants claim to be able to do. While Defendants claim that there is no change in circumstance for a "20-year layoff," that flies in the face of common sense as the WARN Acts are meant to warn employees about their financial futures.  Whether the change in circumstances is due to COVID-19, hotel renovations, employer greed, or as Defendants appear to claim, no reason at all, does not change the need to provide employees with proper notice of each employment loss.[34] Plaintiffs submit that it is clear that proper WARN notice was never given, and that Defendants were required to give multiple WARN notices.  As Defendants have moved for summary judgment on this issue and failed to establish that the 54-month layoffs are all part of one single employment loss, their motions for summary judgment must be denied.

**D.   The WARN Acts require advanced notice be given to "employees who may reasonably be expected to experience loss**

Defendants incorrectly argue that "[a]n employer's obligations under the WARN Acts are triggered by an 'employment loss' as defined in the statutes – and nothing else."[35] The WARN Acts' obligations are actually triggered by an anticipated employment loss, which is why the WARN Acts require ADVANCE notice.[36] Advance notice must be given to affected employees, who are defined as "employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer."[37] The distinction about the timing that triggers obligations under the WARN Acts is at the heart of the

---

[34] 20 CFR § 639.3.
[35] *See* Defendants' Joint Supplemental Memorandum (ECF#137), at 5.
[36] 20 CFR § 639.2; 12 NYCRR 921-1.1(a)
[37] 20 CFR § 639.3(e); 12 NYCRR 921-1.1(a).

SA-480

dispute. "Notice is required to be given to employees who may reasonably be expected to experience an employment loss."[38] "An employer eligible for a reduction in notice required under this rule pursuant to the provisions of Subpart 921-6 of this Part shall include with its notice a statement of the reasons for reducing the notice provided and a factual explanation of the basis for claiming entitlement to such reduced notice period."[39]

While Defendants claim that WARN obligations are only triggered after an employment loss, they have it backwards. The purpose of WARN is to provide notice in ADVANCE of an employment loss. Here, Defendants not only failed to provide advance notice, but they never provided WARN notice at all. Defendants admit that "it is undisputed that Plaintiffs experienced an employment loss under the WARN Acts…"[40] Therefore, Defendants were required to provide a brief statement explaining the basis for reducing the notification period. As explained in Plaintiffs' supplemental memorandum, the Defendants failed to provide any statement explaining the basis for reducing the notification period. Notably absent from either Defendants' summary judgment motions, their replies, or even their joint supplemental memorandum is any attempt to claim that such a brief statement was ever made because it was not. As such, for this reason alone, Defendants' motions for summary judgment on the WARN Acts Claims must fail.

<b>Conclusion</b>

For all of the above reasons as well as the other portions of Plaintiffs' summary judgment oppositions and supplemental brief, Plaintiffs submit that the Court should deny Defendants' motions for summary judgment.

Dated: September 16, 2024                               /s/ *Brian Bromberg*
           New York, New York                          Brian Bromberg

---

[38] 20 CFR § 639.6; 12 NYCRR 921-1.1(a)
[39] 12 NYCRR 921-2.1(f)(4)
[40] *See* Defendants' Joint Supplemental Memorandum (ECF#137), at 7.

*/s/ Evan Brustein*
Evan Brustein

*Maya Risman*
Maya Risman

SA-482

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SELENA STALEY, VIVIAN HOLMES, and                     :
OLIVE IVEY, on behalf of themselves and               :
all others similarly situated,                        :    Case No. 22-cv-6781 (JSR)
                                                      :
                        Plaintiffs,                   :
                                                      :
            v.                                        :
                                                      :
HOTEL 57 SERVICES, LLC,                               :
                                                      :
                        Defendant.                    :
----------------------------------------------------------------X

**JOINT PRETRIAL CONSENT ORDER**

Pursuant to Fed. R. Civ. P. 26(a)(3) and this Court's Individual Rules of Practice, Plaintiffs

Selena Staley, Vivian Holmes and Olive Ivey (collectively the "Plaintiffs") and Defendant Hotel

57 Services, LLC jointly submit this Pretrial Consent Order.

**(I)  Joint Overview of the Case**

This case involves the closure of the Four Seasons Hotel New York to outside guests on

March 20, 2020, following the designation of COVID-19 as a global pandemic.

The Four Seasons Hotel New York soon reopened in April 2020 to provide housing to

medical professionals assisting in the COVID-19 pandemic until June 30, 2020. The Four Seasons

Hotel New York did not reopen to any guests again until November 2024.

This case stems from claims by the Plaintiffs on behalf of themselves and the Class that

Hotel 57 Services, LLC violated the federal WARN Act and the New York WARN Act

(collectively the "WARN Acts").  Plaintiffs allege that the August 5, 2020 letters sent by Hotel 57

Services, LLC  were not proper notices under the WARN Acts.  The Plaintiffs further allege that

Hotel 57 Services, LLC  did not provide proper notice under either of these acts at any point during

SA-483

their more than four and a half year furloughs, even with changing circumstances, thereby violating the WARN Acts multiple times.   Hotel 57 Services, LLC denies it violated these acts and submits that the WARN Acts notice it sent to the Plaintiffs and the Class on August 5, 2020 properly identified the reasons for Plaintiffs and the Class's single layoff from March 2020 to November 2024 and, as such, satisfied and complied with its statutory obligations under the WARN Acts in good faith.

(II)    **Particularized Description of Each Party's Claims**

   A.    **Plaintiffs' Claims**

Plaintiffs bring claims against Hotel 57 Services LLC a/k/a the Four Seasons Hotel New York for violating the federal WARN Act and the New York WARN Act on approximately eight separate occasions beginning with the initial violation in approximately March 2020 and continuing until the Four Seasons Hotel New York reopened in November 2024.  During this time frame, even though the circumstances changed for not reopening the hotel, Defendant failed to provide any proper notices and/or comply with the WARN Acts.

   B.    **Hotel 57 Services, LLC Claims**

Hotel 57 Services, LLC  has not asserted any claims, counterclaims, cross-claims or third-party claims but has asserted the following affirmative defense to Plaintiffs' claims:

Based upon the express language of the WARN Acts, Hotel 57 Services, LLC  had reasonable grounds for believing and did believe, in good faith, that it fully complied with the WARN Acts requirements by sending Plaintiffs and Class members a notice pursuant to the WARN Acts on August 5, 2025. Hotel 57 Services, LLC  had no reason to believe, and did not believe, that it had any continuing obligations under the WARN Acts to send any updated notices relating to the single plant closure and layoff that occurred at the Four Seasons Hotel New York,

for which Hotel 57 Services, LLC provided the August 5, 2020 WARN Acts notices. Specifically, until the Court's March 31, 2025 Summary Judgment Order, Hotel 57 Services, LLC had no reason to believe, and did not believe, that the WARN Acts required additional notices relating to a single plant closure or layoff when employees were placed on furlough rather than terminated, the notice was provided after the furlough due to unforeseen business circumstances as permitted by the WARN Acts, and during the course of the furlough the circumstances described in the notice change and the furlough continues for reasons unrelated to the unforeseen business circumstances described in the initial notice. (Regardless, Hotel 57 Services, LLC denies the circumstances describe in the August 4, 2020 WARN Act Notice changed during the furlough and maintains the August 5, 2020 WARN Act Notice was adequate).

(III)    **Facts on Which the Parties Agree and Other Stipulations**

A.    **Stipulations**

None.

B.    **Agreed-Upon Statement of Facts**

The parties agree on the following facts:

1.    Four Seasons Hotel New York is located at 57 East 57th Street New York, NY

2.    Hotel 57 Services, LLC is a signatory to an employment contract with non-union employees (including Plaintiffs and each of the class members) titled U.S. EmPact Employee Handbook, revised February, 2018 (the "EmPact Agreement").

3.    Plaintiffs each are parties to the EmPact Agreement.

4.    On March 20, 2020, the Four Seasons Hotel New York suspended its operations with respect to outside guests.

5.    Hotel 57 Services, LLC laid-off more than 400 employees beginning in March

SA-485

2020.

6.    On April 2, 2020, the Four Seasons Hotel New York reopened to house COVID-19 first responders in New York City.

7.    On June 30, 2020, the Four Seasons Hotel New York discontinued housing COVID-19 first responders.

8.    The Four Seasons Hotel New York re-opened to outside guests on November 15, 2024.

**(IV)    Parties' Contentions Concerning the Disputed Facts**

**A.    Plaintiffs' Contentions**

Plaintiffs claim that Hotel 57 Services LLC did not comply with the WARN Acts by failing to provide timely and proper notices to the Plaintiffs and the Class about the Four Seasons Hotel New York's more than four-and-a-half-year closure, despite multiple changes in circumstances, which required additional notices be provided.

Plaintiffs contend that the Four Seasons Hotel New York concealed the different reasons that the Four Seasons Hotel New York remained closed from the Plaintiffs and class members, preventing them from being able to make informed decisions about their futures and for their families.    Plaintiffs submit that there is no defense or excuse for Hotel 57 Services LLC not having provided proper warnings to its employees.    As the WARN Acts are meant to protect employees, the Plaintiffs submit that finding multiple violations by Hotel 57 Services LLC not only is in keeping with the intention of the Acts, but will also help compensate the Plaintiffs and the Class for the lack of notice, pay and benefits that they should have received for the Defendant's conduct.

B.    **Hotel 57 Services, LLC's Contentions**

Hotel 57 Services, LLC maintains that it fully complied with its obligations under the WARN Acts by and through its August 5, 2020 WARN Act Notice. Hotel 57 Services, LLC also maintains that notwithstanding that it had no statutory or other legal obligation to do so, Hotel 57 Services, LLC went to great lengths to communicate with, compensate, and provide voluntary, unconditional payments to furloughed employees during their layoff. Among other things, Hotel 57 Services, LLC provided appropriate updates on the Four Seasons Hotel New York's closure, its operations and its hopes for re-opening. Hotel 57 Services, LLC also paid wages to many employees who continued to work after the Four Seasons Hotel New York closed to outside guests, and paid some employees who were permitted to assist at other Four Seasons hotels on an initiative called "Task Force." Hotel 57 Services, LLC also voluntarily and unconditionally paid furloughed employees for things such as holiday pay and birthday pay, and in addition, although under no obligation to do so, Hotel 57 Services, LLC voluntarily and unconditionally paid many employees $500 per week from July 2022 until the Four Seasons Hotel New York reopened in November 2024.

It is Hotel 57 Services, LLC's contention that: (1) the August 5, 2020 WARN Act Notices fully complied with the statutory requirements of the WARN Acts for notices provided to affected employees; (2) the August 5, 2020 WARN Act Notices accurately identified the unforeseen business circumstances requiring the Four Seasons Hotel New York's closure (and Plaintiffs and the class members' layoff), which were not only the COVID-19 pandemic itself and the immediate and continually emerging and evolving health and safety issues that existed, but also the "continued major economic downturn stemming from the COVID-19 virus pandemic and consequent travel and tourism disruptions"; (3) the "travel and tourism disruptions" stemming

SA-487

from the COVID-19 virus pandemic have existed ever since the Four Seasons Hotel New York closed to outside guests in March 2020, still exist today, and were the reason that the Hotel remained closed until it reopened in November 2025. Hotel 57 Services, LLC maintains that even if the jury were to find that "new circumstances" caused the Four Seasons Hotel New York to remain closed that were not previously identified in the August 5, 2020 WARN Notices, which Hotel 57 Services, LLC maintains is not the case, at all times, Hotel 57 Services, LLC acted in good faith and reasonably believed that it had fully complied with its statutory obligations under the WARN Acts.

Moreover, even if Plaintiffs are able to demonstrate at trial that Hotel 57 Services, LLC failed to fully comply with the WARN Acts resulting from the single, temporary shutdown of its operations at the onset of the COVID-19 pandemic, it is Hotel 57 Services, LLC's contention that (1) Plaintiffs have not established, and cannot establish, that every member of the Class suffered a legally-cognizable injury-in-fact as a result of not receiving any of the alleged additional WARN Act notices Plaintiffs contend should have been provided, which deprives the Court of jurisdiction over the claims of those class members based on additional notices; (2) the express terms of the WARN Acts do not provide a statutory right of action for a failure to provide additional notices relating to a single plant closure or layoff, nor do the Acts provide a monetary (or other) remedy for a failure to provide additional notices relating to a single plant closure or mass layoff; (3) Plaintiffs have not established and cannot prove damages for themselves or any Class member with admissible evidence; and (4) Plaintiffs are not entitled to attorneys' fees and/or costs, nor are any other any other damages permitted under the pertinent laws.

SA-488

(V)    **Statement of Relief Sought**

Plaintiffs are seeking damages pursuant to the WARN Acts for approximately eight violations for themselves and each of the Class members, as detailed in Plaintiffs' Trial Exhibit 1.  Plaintiffs are also attorneys' fees and costs, all applicable interest, and any other damages permitted under the pertinent laws.

(VI)    **Witness Lists**

> i.   Plaintiffs' Witness Order
> (*indicates a witness who has also been designated by Hotel 57 Services, LLC as a witness)
> 1. Antoine Chahwan*
> 2. Cathy Hwang*
> 3.  Frank Galasso
> 4. Rudolf Tauscher
> 5.  Elizabeth Ortiz*
> 6. Vivian Holmes*
> 7. Selena Staley*
> 8. Michal Dedera
> 9. Elizbeth Wedge
> 10. H. Ty Warner*
> 11. Olive Ivey*
>
> ii.   Hotel 57 Services, LLC's Additional Witnesses[1]
> 1. Paul Wagner
> 2. Greg Rice
> 3. Joseph A. Krock, Ph.D

(VII)  **Exhibit Lists**

Plaintiffs' exhibit list, along with  Hotel 57 Services, LLC particular objections thereto, is attached as Exhibit 1.   Hotel 57 Services, LLC's exhibit list, along with Plaintiffs' particular objections thereto, is attached as Exhibit 2.

---

[1] **Plaintiffs maintain their objections to these witnesses, which they have raised in their Motions *in Limine*.**

(VIII) **Estimated Length of Trial**

The parties estimate this jury trial will take approximately 6 - 8 days.

Dated:  New York, New York
        August 4, 2025


By:___/s/ Evan Brustein_____       By:/s/ Kathryn T. Lundy_____
Evan Brustein                                 Marc B. Zimmerman
Brustein Law PLLC                             Kathryn T. Lundy
299 Broadway, Suite 800                       James J. Boland
New York, NY 10007                            Carly M. Allen
(212) 233-3900                                SMITH, GAMBRELL & RUSSELL, LLP
                                              1301 Avenue of the Americas, 15th Floor
Brian Bromberg                                New York, NY 10019
Bromberg Law Office, P.C.                     (212) 907-9700
295 Madison Ave., 22nd Floor
New York, NY 10017                            *Attorneys for Defendant Hotel 57 Services,*
(212) 248-7906                                *LLC*

Maya Risman
Risman & Risman, P.C.
233 Broadway
Ste. 2707
New York, NY 1029
(212) 233-6400

*Attorneys for Plaintiffs Selena Staley, Vivian*
*Holmes and Olive Ivey*



The Court has reviewed the Joint Pretrial Consent Order and finds that there is good

cause to enter it.  According, IT IS SO ORDERED.


Dated: _____2025


                                              _____
                                              Hon. Jes. S. Rakoff
                                              United States District Judge

SA-490

# EXHIBIT 1

SA-491

** *Hotel 57 Services, LLC's Objections Are Subject To The Pending Motions In Limine*

| EX. | DESCRIPTION | BATES NO. | OBJECTIONS, IF ANY (LIST FRE) | EXPECTS TO OFFER | MAY OFFER |
|-----|-------------|-----------|-------------------------------|------------------|-----------|
| 001 | Table: Class Damages - Full Chart | | 403; 602; 802; 901 | X | |
| 002 | June 25, 2021 Town Hall Recording | Staley 262 | 401; 402; 403; 802; 901 | X | |
| 003 | March 19, 2020 letter from Rudy Tauscher to staff | WD1 | | X | |
| 004 | April 9, 2020 letter from Elizabeth Ortiz to staff | WD2 -5 (same as WD_002729-2732) | | X | |
| 005 | April 30, 2020 letter from Elizabeth Ortiz to staff | WD6 | | X | |
| 006 | May 22, 2020 from Rudy Tauscher to staff | WD7 | | X | |
| 007 | June 26, 2020 staff newsletter; Including update from Rudy Tauscher, dated June 22, 2020 | WD15 | | X | |
| 008 | July 10, 2020 staff newsletter | WD16 | | X | |
| 009 | July 10, 2020 staff letter From Alexandra Erbiti | WD8 | | X | |
| 010 | August 11, 2020 staff letter From Rudy Tauscher | WD9 | | X | |
| 011 | August 14, 2020 staff newsletter Including letter from Rudy Tauscher, | WD881-882 | | X | |

SA-492

| EX. | DESCRIPTION | BATES NO. | OBJECTIONS, IF ANY (LIST FRE) | EXPECTS TO OFFER | MAY OFFER |
|---|---|---|---|---|---|
| | Dated August 11, 2020 | | | | |
| 012 | August 21, 2020 staff newsletter | WD883-884 | | X | |
| 013 | August 28, 2020 staff newsletter | WD885-886 | | X | |
| 014 | September 17, 2020 staff letter From Rudy Tauscher | WD10 | | X | |
| 015 | October 16, 2020 staff newsletter | WD20 | | X | |
| 016 | November 19, 2020 staff email From Elizabeth Ortiz | Staley1 | | | X |
| 017 | December 3, 2020 staff letter From Rudy Tauscher | WD11 | | X | |
| 018 | December 11, 2020 staff newsletter | WD893-894 | | | X |
| 019 | February 8, 2021 staff letter From Four Seasons New York Leadership Team | WD12 | | X | |
| 020 | March 19, 2021 staff newsletter | WD895-898 | | | X |
| 021 | March 25, 2021 staff letter From Elizabeth Ortiz | WD13 | | X | |
| 022 | June 25, 2021 staff letter From Elizabeth Ortiz | WF14 | | X | |
| 023 | July 9, 2021 staff newsletter | Staley82-85 | | | X |
| 024 | November 2021 staff newsletter | Staley 94-95 | | X | |
| 025 | Rudy Tauscher Email, dated 2/27/20 | WD902 | 401, 402 | | X |
| 026 | Rudy Tauscher Email, dated 3/16/20 | WD9121 | 401, 402 | | X |

SA-493

| EX. | DESCRIPTION | BATES NO. | OBJECTIONS, IF ANY (LIST FRE) | EXPECTS TO OFFER | MAY OFFER |
|---|---|---|---|---|---|
| | | | | | |
| 027 | February 8, 2020 staff letter From Four Seasons New York Leadership Team | Staley 213 | | X | |
| 028 | Rudy Tauscher Email dated 3/19/20 | WD8174 | 106; 401, 402; 403 | X | |
| 029 | FSNY March 28, 2020 Communications | WD2198-2201 | 106; 401, 402; 802; 901 | X | |
| 030 | Elizabeth Ortiz 5/12/20 NY Forward Email | WD2111-2162 | 401, 402; 802; 901 | X | |
| 031 | Michal Dedera Email, dated 5/26/20 | WD6339-6342 | 401, 402; 802; 901 | X | |
| 032 | Todd Swaggerty Email, dated 4/17/20 | WD4367-4368 | 106; 401, 402; 802; 901 | X | |
| 033 | Bethania Gonzalez Email, dated 5/5/20 | WD7568-7569 | 106; 401, 402; 802; 901 | X | |
| 034 | Michal Dedera Email, dated 5/6/ | WD7650 | 106; 401, 402; 802; 901 | X | |
| 035 | Thomas Rosati Email, dated 5/26/20 | WD6291-WD6292 | 106; 401, 402; 802; 901 | X | |
| 036 | Rudy Tauscher Email, dated 6/1/ | WD899 | 106; 401, 402; 802; 901 | X | |
| 037 | Cathy Hwang Email, dated 6/1/2 | WD6549-6550 | 106; 401, 402; 802; 901 | | X |
| 038 | [Intentionally Omitted] | | | X | |
| 039 | Cathy Hwang Email, dated 7/7/2 | WD5932 | 106; 401, 402; 802; 901 | X | |
| 040 | Alexandra Erbiti Email, dated 8/7/20 | WD935 | 106; 401, 402; 802; 901 | | X |
| 041 | [Intentionally Omitted] | | | X | |

SA-494

| EX. | DESCRIPTION | BATES NO. | OBJECTIONS, IF ANY (LIST FRE) | EXPECTS TO OFFER | MAY OFFER |
|---|---|---|---|---|---|
| 042 | Cathy Hwang Email, dated 8/18/20 | WD1720 | 106; 401, 402; 802; 901 | X | |
| 043 | Cathy Hwang Invite, dated 8/26/20 | WD9100 | 106; 401, 402; 802; 901 | | X |
| 044 | Antoine Chahwan Email, dated 8/26/20 | WD9097 | 106; 401, 402; 403; 802; 901 | X | |
| 045 | Antoine Chahwan Invite, dated 8/26/20 | WD9101 | 106; 401, 402 | X | |
| 046 | Antoine Chahwan Email, dated 8/28/20 | WD9094 | 401, 402; 802; 901 | X | |
| 047 | FSNY Staffing Closure | WD9095-9096 | 401, 402; 802; 901 | | X |
| 048 | Steve Thompson Email, dated 11 | WD1641-1643 | 401, 402; 802; 901 | X | |
| 049 | Sharon Brambru Invite, dated 4/26/21 | WD9079 | 106; 401, 402; 802; 901 | | X |
| 050 | Elizabeth Ortiz Email, dated 6/9/21 | WD8781-8782 | | X | |
| 051 | Elizabeth Ortiz Email, dated 6/25/21 | WD8970-8971 | | X | |
| 052 | [Intentionally Omitted] | | | X | |
| 053 | Elizabeth Ortiz Invite, dated 6/25/21 | WD9083 | | | X |
| 054 | Union Severance Agreement | Staley304 | 401, 402; 403; 802; 901 | X | |
| 055 | Elizabeth Ortiz Email, dated 3/31/22 | WD9110 | | X | |
| 056 | Elizabeth Ortiz Email, dated 7/25/22 | Staley 316-317 | 401, 402; 403 | X | |
| 057 | Elizabeth Ortiz Email, dated 8/9/ | Staley 318-319 | 401, 402 | X | |
| 058 | Elizabeth Ortiz Email, dated 11/10/23 | Staley 320-323 | 401, 402; 802 | X | |
| 059 | Elizabeth Ortiz Email, | Staley 324-325 | 401, 402; 802 | X | |

SA-495

| EX. | DESCRIPTION | BATES NO. | OBJECTIONS, IF ANY (LIST FRE) | EXPECTS TO OFFER | MAY OFFER |
|---|---|---|---|---|---|
|  | dated 10/24/24 |  |  |  |  |
| 060 | Keisha Smith Email, dated 3/11/ | Staley 326-327 | 401, 402; 403; 802; 901 | X |  |
| 061 | Keisha Smith Email, dated 4/4/2 | Staley 328 | 401, 402; 403; 802; 901 | X |  |
| 062 | Elizabeth Wedge Email, dated 4/17/25 | Staley 329 | 401, 402; 403 | X |  |
| 063 | Elizabeth Wedge Email, dated 5/19/25 | Staley 330-332 | 106; 401, 402; 403 | X |  |
| 064 | Michal Dedera Email, dated 5/28/25 | Staley 333-337 | 401, 402; 403 | X |  |
| 065 | Hotel 57 Services LLC's Responses to Plaintiffs' Amended Deposition Notice Topics 1-31 | Hwang 30(b)(6) Depo Ex 17 | 401, 402; 403; 802; 901 | X |  |
| 066 | [Intentionally Omitted] |  |  | X |  |
| 067 | EmPact Agreement | Civil Docket Sheet Doc No. 43-1 |  | X |  |
| 068 | Declaration of Cathy Hwang, dated November 15, 2022 | Civil Docket Sheet Doc No. 30 | 401, 402; 403; 901 | X |  |
| 069 | [Intentionally Omitted] |  |  | X |  |
| 070 | Warner Plea Agreement 1:13-CR-731 NDIL | Doc No. 15 | 401, 402; 403; 802; 901 | X |  |
| 071 | Warner Change of Plea Transcript 1:13-CR-731 NDIL | Doc No. 25 | 401, 402; 403; 802; 901 | X |  |
| 072 | WARN Notice to AFL-CIO, dated 3/26/20 | WD1127 |  | X |  |
| 073 | WARN Notice to NYC Workfor dated 3/26/20 | WD1104-1106 |  | X |  |
| 074 | August 5, 2020 letters to non-un employees | Plaintiffs' Ex. 14 at |  | X |  |

SA-496

| EX. | DESCRIPTION | BATES NO. | OBJECTIONS, IF ANY (LIST FRE) | EXPECTS TO OFFER | MAY OFFER |
|---|---|---|---|---|---|
| | | Ortiz Dep. | | | |
| 075 | Excel Spreadsheet | WD8170 | | X | |
| 075a | PDF of 075 | | | X | |
| 076 | Excel Spreadsheet | WD9858 | | X | |
| 076a | PDF of 076 | | | X | |
| 077 | Excel Spreadsheet | WD9857 | | | X |
| 078 | Civil Docket Sheet for 22-CV-93 | 8 pages | 401, 402; 403; 802; 901 | X | |
| 079 | Documents from Hotel 57 LLC, et al v FSR International Hotels, Inc., et al. 22-CV-9331 | Chahwan Dep. Ex. 26 | 401, 402; 403; 802; 901 | X | |
| 080 | NYC's Four Seasons hotel in standoff with Beanie Babies mogul - and could stay shut for years | Staley0350-357 https://nypost.com/2( ycs-four-seasons-hot standoff-with-beanie mogul/ | 401, 402; 403; 802 | X | |
| 081 | New York's ultra-exclusive Four Seasons hotel which Still hasn't reopened post-COVID could stays closed for Another FOUR YEAF because Beanie Babies Billionaire is refusing to pay franchise fees | Staley0358-368 https://www.dailyma /article-11273169/N Four-Seasons-hotel-r post-COVID-stay-cl YEARS.html | 401, 402; 403; 802 | X | |
| 082 | Billion-Dollar Babies | Staley 338-349 https://airmail.news/ 10-29/billion-dollar- | 401, 402; 403; 802 | X | |
| 083 | HMA Lawsuit Documents | Marked Warner Dep Ex 01 | 401, 402; 403; 802; 901 | X | |
| 084 | Email chain dated 6/4/20 Between Bethania Gonzalez and Frank Galsso | WD6719 (Marked Warner Dep Ex 06) | 401, 402, 802, 901 | X | |
| 085 | Email from Thomas Rosati | WD9824 | 401, 402, 802, 901 | X | |

SA-497

| EX. | DESCRIPTION | BATES NO. | OBJECTIONS, IF ANY (LIST FRE) | EXPECTS TO OFFER | MAY OFFER |
|---|---|---|---|---|---|
| | To Hwang and others | (Marked Warner Dep Ex 09) | | | |
| 086 | Conditions Report - 4/8/2021 | WD9825-9837 (Marked Dep Ex 10) | | X | |
| 087 | Email introduced at Hwang's 30(b)(1) Deposition | WD9119-9120 | 802, 901 | X | |
| 088 | Reopening Communications Guidance and Materials: Public Relations and Social Media/ "*Lead With Care*" | WD9374-9427 Marked as Exhibit 14 at Hwang's 30(b)(1) Depo | 401, 402; 403; 802, 901 | X | |
| 089 | Hwang Declaration in Support of Warner's Notice of Removal | Exhibit 7 at Hwang's 30(b)(1) Depo | 401, 402; 403; 802 | X | |
| 090 | 3/26/2020 – Appears to be WARN Notice to Union Employ | WD_001193 and Marked as Exhibit 18 at Hwang's 30(b)(6) Depo | 401, 402; 403 | X | |
| 091 | Plaintiffs' Second Amended Not of Deposition of Hotel 57 Servic LLC under 30(b)(6 | Marked at 30(b)(6) Depo at Ex 12 | 403; 802, 901 | X | |
| 092 | Declaration of Cathy Hwang dated 11 15 2022 | Marked at 30(b)(6) Depo at Ex 8 | 401, 402; 403; 901 | X | |
| 093 | Email introduced at Hwang's 30(b)(1) Deposition | WD9113-9114 | 106, 802, 901 | X | |
| 094 | Email introduced at Hwang's 30(b)(1) Deposition | WD9108-9109 | 802, 901 | X | |
| 095 | Email introduced at Hwang's 30(b)(1) Deposition | WD9122 | 802, 901 | X | |
| 096 | Email introduced at Hwang's 30(b)(1) Deposition | WD9102-9103 | 106, 802, 901 | X | |
| 097 | Email introduced at Hwang's 30(b)(1) Deposition | WD5545 | 802 | X | |
| 098 | Email introduced at Hwang's 30(b)(1) Deposition | WD3078-3085 | 401, 402; 802, 901 | X | |

SA-498

| EX. | DESCRIPTION | BATES NO. | OBJECTIONS, IF ANY (LIST FRE) | EXPECTS TO OFFER | MAY OFFER |
|---|---|---|---|---|---|
| 099 | Arbitration Litigation Document | Hwang Depo Ex 4 | 401, 402; 403; 802 | X | |
| 100 | Four Seasons Hotel New York – Communications Plan | WD8977-8982 | 802; 901 | X | |
| 101 | Press Release: "Four Seasons Hotel New York and Four Seasons Res the Biltmore Santa Barbara Announce Reopening Plans" | Staley0369 | | X | |
| 102 | Press Release: "Now Open: Four Seasons Hotel New York Ushers in a New Era of Elevated Luxury in Midtown Manhattan," dated 11/15/2024 | Staley0370-372 https://press.fourseas ntent/fourseasons_pr ntView.html?pageTo nt/fourseasons_press ws/newyork/2024/nc | | X | |
| 103 | [Intentionally omitted] | | | | |
| 104 | List of Opt-Outs | ECF# 162 at Page 14 of 14 | | X | |
| 105 | [Intentionally omitted] | | | X | |
| 106 | Table: Class Damages - Just Compiling WARN Act Damages | | 403; 602; 802; 901 | X | |
| 107 | Table: Class Damages - Just Multiple WARN Act Violation | | 403; 602; 802; 901 | X | |
| 108 | WARN Class Damages - Information from WD Disclosures | | 403; 602; 802; 901 | X | |
| 109 | May 15, 2020 Staff Newsletter | Staley 0086 | | X | |
| 110 | October 5, 2020 letter from Rudy Tauscher to staff | Staley 0058 | | X | |
| 111 | December 24, 2020 letter from Rudy Tauscher to staff | Staley 220 | | X | |
| 112 | 30(b)(1) Hwang Dep Transcript, Excerpt pp. 197 - 199 | | 106; 401, 402; 403; 602; 802 | X | |
| 113 | Warner Dep Transcript, Excerpt pp. 173 - 174 | | 106; 401, 042; 602; 802 | X | |

EXHIBIT 2

**Defendant Hotel 57 Services, LLC's Trial Exhibit List**    *In addition to the below objections, Plaintiffs maintain the objections raised in their motions *in Limine*

| DEF. TRIAL EX. NO. | DESCRIPTION | BEGBATES | ENDBATES | OBJECTIONS |
|---|---|---|---|---|
| DX1 | Employee Roster March 2020 | WARNERDEF_008176 | WARNERDEF_008176 | 402, 403, 611a(3) |
| DX2 | EmPact Agreement | Staley v FSR0107 | Staley v FSR0167 | n/a |
| DX3 | Holmes EmPact Agreement Acknowledgment | WARNERDEF_000122 | WARNERDEF_000122 | n/a |
| DX4 | Staley EmPact Agreement Acknowledgment | WARNERDEF_000111 | WARNERDEF_000114 | n/a |
| DX5 | Ivey EmPact Agreement Acknowledgment | WARNERDEF_000090 | WARNERDEF_000090 | n/a |
| DX6 | EmPact Agreement (Defendants' Exhibit 58 at Plaintiffs' Depositions) | | | 402, 403, 611a(1), 611a(2) |
| DX7 | 3/19/20 Ltr to All Employees | WARNERDEF_009115 | WARNERDEF_009117 | 801, 802 |
| DX8 | 3/24/20 Ltr to Employees (Defendants' Exhibit 73 | Staley v. FSR0212 | Staley v. FSR0212 | 801, 802 |
| DX9 | 3/26/20 Notice to NYC Workforce Development | WARNERDEF_001104 | WARNERDEF_001106 | 801, 802 |
| DX10 | 3/26/20 Notice to Peter Ward, President, New York Hotel & Motel Trades Council, AFL-CIO | WARNERDEF_001107 | WARNERDEF_001126 | 801, 802 |
| DX11 | 4/9/20 Ltr to All Employees (Defendants' Exhibit | Staley v FSR0204 | Staley v FSR0207 | 801, 802 |
| DX12 | 4/9/20 Ltr to All Employees (Defendants' Exhibit 74 at Plaintiffs' Depositions) | Staley v FSR0204 | Staley v FSR0207 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX13 | 4/9/20 Ltr to All Employees | | | 402, 403, 611a(1), |
| DX14 | 4/30/20 Ltr to All Employees (Defendants' Exhibit | Staley v FSR0054 | Staley v FSR0054 | 801, 802, |
| DX15 | 4/30/20 Ltr to All Employees | WARNERDEF_000833 | WARNERDEF_000833 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX16 | 4/30/20 Ltr to All Employees (Defendants' Exhibit 75 at Plaintiffs' Depositions) | Staley v. FSR00208 | Staley v. FSR00208 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX17 | 5/15/2020 Communication to Employees (Defendants' Exhibit 35 at Plaintiffs' Depositions) | Staley v. FSR0086 | Staley v. FSR0087 | 801, 802, |
| DX18 | 5/22/20 Ltr to All Employees (Defendants' Exhibit | Staley v FSR0055 | Staley v FSR0055 | 801, 802, |
| DX19 | 5/22/20 Ltr to All Employees | WARNERDEF_001018 | WARNERDEF_001018 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX20 | 5/22/20 Ltr to All Employees (Defendants' Exhibit 76 at Plaintiffs' Depositions) | Staley v. FSR0219 | Staley v. FSR0219 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX21 | Solid Rock Deck re: Advanced Technology and Operations Protocol To Be Considered In Response to Covid-19 (June 2020) | SOLIDROCK0001 | SOLIDROCK0031 | 402, 403, 801, 802, 901, 902, 701, 702, 611a(1), 611a(2) |
| DX22 | 6/22/20 Ltr to All Employees (Defendants' Exhibit | Staley v FSR0056 | Staley v FSR0056 | 801, 802 |

SA-499

SA-500

| DEF. TRIAL EX. NO. | DESCRIPTION | BEGBATES | ENDBATES | OBJECTIONS |
|---|---|---|---|---|
| DX23 | 6/22/20 Ltr to All Employees | WARNERDEF_000696 | WARNERDEF_000696 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX24 | 6/22/20 Ltr to All Employees (Defendants' Exhibit 77 at Plaintiffs' Depositions) | Staley v. FSR0216 | Staley v. FSR0216 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX25 | 6/25/20 Internal Memo to Olive (Ivey) Rodriguez re: Benefits During Furlough (Defendants' Exhibit | WARNERDEF 000084 | WARNERDEF 000085 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX26 | 7/10/20 Correspondence to All Employees (Defendants' Exhibit 70 at Plaintiffs' Depositions) | WARNERDEF 00008 | WARNERDEF 00008 | 402, 403, 801, 802, |
| DX27 | 7/10/20 Correspondence to All Employees | WARNERDEF 000680 | WARNERDEF 000680 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX28 | 7/15/20 Internal Memo to Vivian Holmes re: Benefits Coverage During Furlough (Defendants' | Staley v FSR0017 | Staley v FSR0018 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX29 | 7/15/20 Internal Memo to Vivian Holmes re: Benefits Coverage During Furlough | WARNERDEF 000116 | WARNERDEF 000117 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX30 | 7/30/20 E-mail Re: Benefits Cost Share Program | WARNERDEF 001147 | WARNERDEF 001148 | 801, 802 |
| DX31 | 8/5/20 WARN Act Notices | WARNERDEF 000936 | WARNERDEF 001017 | n/a |
| DX32 | 8/5/20 WARN Act Notice to Olive Ivey (Defendants' Exhibit 69 at Plaintiffs' Depositions) | WARNERDEF 000083 | WARNERDEF 000083 | n/a |
| DX33 | 8/5/20 WARN Act Notice to Vivian Holmes (Defendants' Exhibit 39 at Plaintiffs' Depositions) | Staley v FSR0002 | Staley v FSR0002 | n/a |
| DX34 | 8/5/20 WARN Act Notice to Vivian Holmes (Defendants' Exhibit 40 at Plaintiffs' Depositions) | Staley v. FSR0016 | | 402, 403, 611a(1), 611a(2) |
| DX35 | 8/5/20 WARN Act Notice to Selena Staley (Defendants' Exhibit 78 at Plaintiffs' Depositions) | Staley v FSR0214 | Staley v FSR0214 | n/a |
| DX36 | 8/11/20 Ltr to All Employees (Defendants' Exhibit | Staley v FSR0057 | Staley v FSR0057 | 801, 802, |
| DX37 | | | | |
| DX38 | 8/28/20 document titled Questions Follow Up from All Employee Town Hall Call (Defendants' Exhibit | Staley v. FSR0088 | Staley v. FSR0089 | 801, 802, |
| DX39 | 8/11/20 Ltr to All Employees | WARNERDEF 0006685 | WARNERDEF 000685 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX40 | 9/17/20 Ltr to All Employees (Defendants' Exhibits | Staley v. FSR0221 | Staley v. FSR0221 | 801, 802 |
| DX41 | 9/17/20 Ltr to All Employees (Defendants' Exhibit 79 at Plaintiffs' Depositions) | Staley v. FSR0221 | Staley v. FSR0221 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX42 | 9/17/20 Ltr to All Employees | WARNERDEF 000684 | WARNERDEF 000684 | 801, 802 |
| DX43 | 10/2/20 Email from M. Dedera re: Resignation | WARNERDEF 009851 | WARNERDEF 009852 | 801, 802 |
| DX44 | 10/5/20 Ltr to All Employees (Defendants' Exhibit | Staley v FSR0058 | Staley v FSR0058 | 801, 802 |
| DX45 | 10/5/20 Ltr to All Employees | WARNERDEF 009302 | WARNERDEF 009302 | 402, 403, 611a(1), 611a(2), 801, 802, |

SA-501

| DEF. TRIAL EX. NO. | DESCRIPTION | BEGBATES | ENDBATES | OBJECTIONS |
|---|---|---|---|---|
| DX46 | 11/19/20 E-mail from E. Ortiz re: Mini Survey (Defendants' Exhibit 45 at Plaintiffs' Depositions) | Staley v. FSR0001 | Staley v. FSR0001 | 801, 802 |
| DX47 | 12/3/20 Ltr to All Employees (Defendants' Exhibits | Staley v FSR0211 | Staley v FSR0211 | 801, 802 |
| DX48 | 12/3/20 Ltr to All Employees (Defendants' Exhibit 80 at Plaintiffs' Depositions) | Staley v FSR0211 | Staley v FSR0211 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX49 | 12/3/20 Ltr to All Employees | WARNERDEF_000690 | WARNERDEF_000690 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX50 | 1/5/21 E-mail from Hind Alami re: Resignation | WARNERDEF_009847 | WARNERDEF_009847 | 801, 802 |
| DX51 | 2/8/21 (inadvertently dated 2/8/20) Ltr to All Employees (Defendants' Exhibit 47 at Plaintiffs' | Staley v FSR0213 | Staley v FSR0213 | 801, 802 |
| DX52 | 2/8/21 (inadvertently dated 2/8/20) Ltr to All Employees | WARNERDEF_000692 | WARNERDEF_000692 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX53 | 3/22/21 Notice of Resignation from J. Rabb | WARNERDEF_009846 | WARNERDEF_009846 | 801, 802 |
| DX54 | 3/25/21 Ltr to All Employees (Defendants' Exhibit | Staley v FSR0060 | Staley v FSR0060 | 801, 802 |
| DX55 | 3/25/21 Ltr to All Employees (Defendants' Exhibit 81 at Plaintiffs' Depositions) | Staley v. FSR0218 | Staley v. FSR0218 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX56 | 3/25/21 Ltr to All Employees | WARNERDEF_000682 | WARNERDEF_000682 | 402, 403, 611a(1), |
| DX57 | 4/8/21 Solid Rock Conditions Report | WARNERDEF_009825 | WARNERDEF_009837 | n/a |
| DX58 | 4/13/21 Email from E. Alvarez re: Resignation | WARNERDEF_009854 | WARNERDEF_009854 | 801, 802 |
| DX59 | 4/22/21 Ltr of resignation from Lisa Lajes-Perez | WARNERDEF_009838 | WARNERDEF_009838 | 801, 802 |
| DX60 | 4/22/21 E-mail from E. Ortiz to O. Rodriguez re: Congratulations on your Task Force Assignment | WARNERDEF_000907 | WARNERDEF_000908 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX61 | 4/29/21 Ltr to All Employees re: Important COBRA | Staley v FSR0065 | Staley v FSR0065 | 801, 802 |
| DX62 | 4/29/21 Ltr to All Employees re: Important COBRA Subsidy Information | WARNERDEF_000086 | WARNERDEF_000086 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX63 | 5/7/21 Ltr to Vivian Holmes re: COBRA Information (Defendants' Exhibit 49 at Plaintiffs' | Staley v FSR0069 | Staley v FSR0080 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX64 | 5/24/21 Ltr to O. Ivey re: Philadelphia Task Force Assignment | WARNERDEF_000132 | WARNERDEF_000132 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX65 | 6/9/21 Virtual Town Hall Meeting Invitation from | WARNERDEF_008781 | WARNERDEF_008782 | 402, 403, 801, 802, |
| DX66 | 6/25/21 Virtual Townhall Invitation from E. Ortiz | WARNERDEF_008970 | WARNERDEF_008971 | 801, 802 |
| DX67 | 6/25/21 E-mail from E. Ortiz | WARNERDEF_008966 | WARNERDEF_008966 | 801, 802 |
| DX68 | 6/25/21 Ltr to All Employees (Defendants' Exhibit 50 at Plaintiffs' Depositions) | Staley v FSR0061 | Staley v FSR0061 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX69 | 6/25/21 Ltr to All Employees | WARNERDEF_008967 | WARNERDEF_008967 | 801, 802 |
| DX70 | 7/9/2021 FSNY communication (Defendants' Exhibit 51 at Plaintiffs' Depositions) | Staley v. FSR0082 | Staley v. FSR0085 | 801, 802 |
| DX71 | 9/30/21 E-mail from T. Nahai re: Resignation | WARNERDEF_009839 | WARNERDEF_009839 | 801, 802 |

SA-502

| DEF. TRIAL EX. NO. | DESCRIPTION | BEGBATES | ENDBATES | OBJECTIONS |
|---|---|---|---|---|
| DX72 | Undated November Monthly Communication (Defendants' Exhibit 52 at Plaintiffs' Depositions) | Staley v. FSR0062 | Staley v. FSR0064 | 801, 802 |
| DX73 | 3/31/22 E-mail from E. Ortiz to C. Hwang re: Non- | WARNERDEF_009110 | WARNERDEF_009110 | 801, 802 |
| DX74 | 2/17/24 E-mail from E. Miles re: Formal | WARNERDEF_009879 | WARNERDEF_009879 | 801, 802 |
| DX75 | 7/19/24 Ltr re: Reopening Update; Interest in Recall | WARNERDEF_009870 | WARNERDEF_009870 | 801, 802 |
| DX76 | 7/19/24 Ltr to Selena Staley re: Reopening Update; | WARNERDEF_009871 | WARNERDEF_009871 | 801, 802 |
| DX77 | 7/19/24 Ltr to Vivian Holmes re: Reopening | WARNERDEF_009872 | WARNERDEF_009872 | 801, 802 |
| DX78 | 8/30/24 Notice of Recall to Olive Rodriguez | WARNERDEF_009867 | WARNERDEF_009867 | 801, 802 |
| DX79 | 11/15/24 Notice of Recall to Selena Staley | WARNERDEF_009875 | WARNERDEF_009875 | 801, 802 |
| DX80 | 11/15/24 Notice of Recall to Vivian Holmes | WARNERDEF_009876 | WARNERDEF_009876 | 801, 802 |
| DX81 | 12/7/24 E-mail from E. Lettier re: Four Seasons | WARNERDEF_009873 | WARNERDEF_009874 | 801, 802, |
| DX82 | Vivian Holmes' 2020 W-2 and Earning Summary (Defendants' Exhibit 53 at Plaintiffs' Depositions) | Staley v. FSR0050 | Staley v. FSR0051 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX83 | Vivian Holmes' 2021 W-2 and Earning Summary (Defendants' Exhibit 54 at Plaintiffs' Depositions) | Staley v. FSR0020 | Staley v. FSR0021 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX84 | Vivian Holmes Earnings Statement (6/18/22 - 6/24/22) (Defendants' Exhibit 55 at Plaintiffs' | Staley v. FSR0027 | Staley v. FSR0027 | 801, 802 |
| DX85 | Olive Ivey's 2020 W-2 and Earning Summary (Defendants' Exhibit 63 at Plaintiffs' Depositions) | Staley v. FSR0245 | Staley v. FSR0246 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX86 | Olive Ivey's 2021 W-2 and Earning Summary (Defendants' Exhibit 64 at Plaintiffs' Depositions) | WARNERDEF_000152 | WARNERDEF_000152 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX87 | Olive Ivey Earning Statement (7/16/22-7/22/22) (Defendants' Exhibit 65 at Plaintiffs' Depositions) | Staley v. FSR0254 | Staley v. FSR0254 | 801, 802 |
| DX88 | Selena Staley Earning Statements (2/29/20 - 12/31/20) (Defendants' Exhibit 83 at Plaintiffs' | Staley v. FSR0188 | Staley v. FSR0197 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX89 | Selena Staley Earning Statements (10/9/21 - 12/24/21) (Defendants' Exhibit 84 at Plaintiffs' | Staley v. FSR0224 | Staley v. FSR0234 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX90 | Selena Staley Earning Statements (4/9/22 - 11/25/22) (Defendants' Exhibit 85 at Plaintiffs' | Staley v. FSR0168 | Staley v. FSR0202 | 801, 802 |
| DX91 | Selena Staley 2020 W-2 and Earning Summary (Defendants' Exhibit 86 at Plaintiffs' Depositions) | Staley v. FSR0237 | Staley v. FSR0238 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX92 | Selena Staley 2021 W-2 and Earning Summary (Defendants' Exhibit 87 at Plaintiffs' Depositions) | Staley v. FSR0239 | Staley v. FSR0240 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX93 | Selena Staley 2021 W-2 and Earning Summary (Defendants' Exhibit 88 at Plaintiffs' Depositions) | Staley v. FSR0241 | Staley v. FSR0244 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX94 | Excel Spreadsheet re: $500/Week Voluntary Payments through 11/7/24 | WARNERDEF_009857 | WARNERDEF_009857 | 402, 403, 611a(1), 611a(2), 1002, 1006 |

SA-503

Case 1:22-cv-06781-JSR   Document 181-2   Filed 08/04/25   Page 5 of 6

| DEF. TRIAL EX. NO. | DESCRIPTION | BEGBATES | ENDBATES | OBJECTIONS |
|---|---|---|---|---|
| DX95 | Excel Spreadsheet for Non-Union Employees re: $500/Week Voluntary Payments | WARNERDEF 001166 | WARNERDEF 001186 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX96 | Plaintiffs' Rule 26(A)(1)(a) Initial Disclosures dated December 26, 2022 (Defendants' Exhibit 20 at | | | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX97 | Plaintiffs' Initial Disclosures | Staley v. FSR0001 | Staley v. FSR0261 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX98 | Plaintiffs' First Supplemental Disclosures dated December 29, 2022 | | | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX99 | Plaintiff's Supplemental Disclosure Letter to supplement Initial Disclosures dated February 24, | | | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX100 | Plaintiffs' Responses and Objections to Warner Defendants First Set of Interrogatories dated | | | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX101 | Vivian Holmes' Verification to First Set of Interrogatories dated December 29, 2022 | | | 402, 403, 611a(1), 611a(2) |
| DX102 | Olivey Ivey Verification to First Set of Interrogatories dated December 29, 2022 | | | 402, 403, 611a(1), 611a(2) |
| DX103 | Selena Staley Verification to First Set of Interrogatories Dated December 29, 2022 | | | 402, 403, 611a(1), 611a(2) |
| DX104 | Declaration of Vivian Holmes dated December 5, 2022 (Defendants' Exhibit 57 at Plaintiffs' | | | 402, 403, 611a(1), 611a(2) |
| DX105 | Declaration of Vivian Holmes dated February 6, 2023 | | | 402, 403, 611a(1), 611a(2) |
| DX106 | Declaration of Vivian Holmes dated May 7, 2024 | | | 402, 403, 611a(1), 611a(2) |
| DX107 | Declaration of Olive Ivey dated May 7, 2024 | | | 402, 403, 611a(1), 611a(2) |
| DX108 | Declaration of Selena Staley dated May 7, 2024 | | | 402, 403, 611a(1), 611a(2) |
| DX109 | Declaration of Vivian Holmes, with exhibits dated August 5, 2024 | | | 402, 403, 611a(1), 611a(2) |
| DX110 | Complaint dated August 9, 2022 (Defendants' Exhibit 5 at Plaintiffs' Depositions) | Dkt. No. 1 | | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX111 | First Amended Complaint dated December 16, 2022 (Defendants' Exhibit 6 at Plaintiffs' | Dkt. No. 48 | | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX112 | Defendants' Exhibit 29 from Plaintiffs' Deposition | Staley v. FSR0001 | FSR0089 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX113 | December 13, 2016 Ltr to Vivian Holmes re: Employee of the Month (Defendants' Exhibit 30 | Staley v. FSR0281 | Staley v. FSR0281 | n/a |

| DEF. TRIAL EX. NO. | DESCRIPTION | BEGBATES | ENDBATES | OBJECTIONS |
|---|---|---|---|---|
| DX114 | Undated Note to Vivian Holmes (Defendants' Exhibit 31 at Plaintiffs' Depositions) | Staley v. FSR0269 | Staley v.FSR0270 | n/a |
| DX115 | March 20, 2020 Ltr to Vivian Holmes (Defendants' Exhibit 32 at Plaintiffs' Depositions) | Staley v. FSR0028 | Staley v. FSR0028 | n/a |
| DX116 | U.S. Empact-Employee handbook cover (Defendants' Exhibit 56 at Plaintiffs' Depositions) | Staley v. FSR0032 | Staley v. FSR0032 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX117 | May 17 Text Exchange between Olive Ivey and E. Ortiz (Defendants' Exhibit 66 at Plaintiffs' | WARNERDEF 000651 | WARNERDEF 000653 | 402, 403, 611a(1), 611a(2), 801, 802, |
| DX118 | 9/8/21 Ltr to DOL Request Hearing (Defendants' Exhibit 82 at Plaintiffs' Depositions) | Staley v. FSR0222 | Staley v. FSR0222 | n/a |
| DX119 | Notice on the Continuation of the National Emergency Concerning the Coronavirus Disease | Dkt. No. 93-6 | | 402, 403, 611a(1), 611a(2) |
| DX120 | New York Executive Orders | Dkt No. 93-7 | | 402, 403, 611a(1), 611a(2) |
| DX121 | August 3, 2023 Four Seasons press release | Dkt. No. 93-8 | | n/a |
| DX122 | Court's Opinion & Order dated March 31, 2025 | Dkt. No. 149 | | n/a |

| | EXPERT EXHIBITS | | | |
|---|---|---|---|---|
| TRIAL | DESCRIPTION | | | OBJECTIONS |
| DX123 | curriculum vitae of Joseph A. Krock, Ph.D. | Ex. A to Supplemental Report of J. Krock dated 7/21/25 | | 402, 403, 801, 801, 611a(1), 611a(2) |
| DX124 | Exhibit B to Supplemental Report of J. Krock dated 7/21/25 and all documents identified therein. | Ex. B to Supplemental Report of J. Krock dated 7/21/25 | | 402, 403, 801, 801, 611a(1), 611a(2) |
| DX125 | Joseph A. Krock, Ph.D.'s calculations | Ex. C to Supplemental Report of J. Krock dated 7/21/25 | | 402, 403, 801, 801, 611a(1), 611a(2), 701, 702, 1006 |
| DX126 | Joseph A. Krock, Ph.D.'s calculations excluding four opt-outs | Ex.D to Supplemental Report of J. Krock dated 7/21/25 | | 402, 403, 801, 801, 611a(1), 611a(2), 701, 702, 1006 |

SA-504